**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, LEOVIGILDO SALOM, KELVIN VI LUAN TRAN, and RIAZ E. AHMED,<br><br>Defendants. | Case No. 1:24-cv-08032-AS<br><br>CLASS ACTION |
| PEDRO GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, KELVIN VI LUAN TRAN, RIAZ E. AHMED, and LEOVIGILDO SALOM,<br><br>Defendants. | Case No. 1:24-cv-09445-AS<br><br>CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION**
**OF PEDRO GONZALEZ FOR APPOINTMENT AS LEAD PLAINTIFF,**
**APPROVAL OF HIS SELECTION OF LEAD COUNSEL, AND CONSOLIDATION**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

ARGUMENT ................................................................................................................... 5

    A.     Mr. Gonzalez Is The Most Adequate Plaintiff .................................................... 5

        1.     Mr. Gonzalez's Motion is Timely ............................................................ 6

        2.     Mr. Gonzalez Believes He Has The Largest Financial Interest In The Relief Sought By The Class ............................................................................... 7

        3.     Mr. Gonzalez Otherwise Satisfies The Requirements Of Rule 23 ......... 8

    B.     Mr. Gonzalez Selected Well-Qualified Lead Counsel To Represent The Class ........... 10

    C.     Consolidation is Warranted ............................................................................... 11

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chilton v. Chiumento Grp.*,
    365 F. App'x 298 (2d Cir. 2010) ...................................................................................5

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*,
    No. 20-cv-9132 (AJN), 2021 WL 396343 (S.D.N.Y. Feb. 4, 2021) ........................................7

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).........................................................................................2, 7

*Husson v. Garrett Motion Inc.*,
    No. 20-cv-7992 (JPC), 2021 WL 211541 (S.D.N.Y. Jan. 21, 2021)...................................8, 9

*Taylor v. Barnes & Noble, Inc.*,
    No. 14-cv-108 (KMW) (FM), 2014 WL12769396 (S.D.N.Y. July 16, 2014) ........................11

*Villella v. Chem. & Mining Co. of Chile Inc.*,
    No. 15-cv-2106 (ER), 2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015).......................................1

**Rules**

Fed. R. Civ. P. 6(a)(1)(C) ................................................................................................6

Fed. R. Civ. P. 23(a)(4).....................................................................................................9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)...................................................................................6

15 U.S.C. § 78u-4(a)(3)(B)(i) ......................................................................................2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...............................................................................2, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ............................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)..............................................................................8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ...........................................................................10

15 U.S.C. § 78u-4(a)(3)(B)(v) .........................................................................................10

Pedro Gonzalez respectfully submits this memorandum of law in support of his motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of his selection of Bleichmar Fonti & Auld LLP ("BFA") as Lead Counsel for the putative Class; (3) for consolidation of the above-captioned securities class actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); and (4) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

There are currently two related securities class actions pending against The Toronto-Dominion Bank ("TD" or the "Company") and certain of its senior officers (collectively, "Defendants"). Mr. Gonzalez filed the second of these actions. Both actions allege Defendants defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5). Specifically, the actions allege that Defendants misrepresented TD's Bank Secrecy Act ("BSA") and anti-money laundering ("AML") controls, processes, and procedures.

The complaints in the related actions assert different class periods. For purposes of appointing a Lead Plaintiff, the longest alleged class period governs. *See Villella v. Chem. & Mining Co. of Chile Inc.*, No. 15-cv-2106 (ER), 2015 WL 6029950, at *5 n.5 (S.D.N.Y. Oct. 14, 2015) (citation omitted). Here, the longest alleged class period is March 7, 2022 through October 9, 2024 ("Class Period") as asserted in *Gonzalez v. The Toronto-Dominion Bank*, No. 1:24-cv-09445 (S.D.N.Y.).

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

For the reasons set forth below, Mr. Gonzelez is the "most adequate plaintiff" by virtue of, among other things, the approximately $314,000 in losses that he incurred on his investments in TD securities during the Class Period, as assessed under the U.S. Supreme Court's ruling in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  Mr. Gonzalez also satisfies the relevant requirements of Rule 23 because his claims are typical of all members of the Class, and he will fairly and adequately represent the Class.  Indeed, Mr. Gonzalez is a sophisticated investor who has already taken active steps to protect the interests of the putative Class in this case and fully understands the Lead Plaintiff's obligations to the Class under the PSLRA.  He is clearly willing and able to undertake the responsibilities entailed in acting as Lead Plaintiff to guarantee vigorous prosecution of this action.  *See* Declaration of Joseph A. Fonti ("Fonti Decl."), Ex. A.

Further, Mr. Gonzalez has selected BFA, a law firm with substantial experience successfully prosecuting securities class actions, to serve as Lead Counsel for the Class.  Accordingly, Mr. Gonzalez respectfully requests that the Court appoint him Lead Plaintiff and otherwise grant his motion.

## FACTUAL BACKGROUND

TD is the sixth largest bank in North America, serving more than 27.5 million customers.  Its subsidiary, T.D. Bank, N.A., is the tenth largest bank in the United States, providing banking

products and services to over 10 million individual and commercial customers through more than 1,100 bank branches. ¶24. All citations to ¶__ refer to the complaint Mr. Gonzalez filed on December 11, 2024 in *Gonzalez*, ECF No. 1, unless otherwise indicated.

During the Class Period, Defendants repeatedly misrepresented TD's BSA and AML controls, processes, and procedures. ¶3. For instance, Defendants assured investors the Company was "committed to taking all reasonable and appropriate steps to detect and deter persons engaged in money laundering from utilizing TD products or services to do so." *Id.* TD also touted its "Risk Governance Structure" through which the Company's Audit Committee purportedly "[o]versaw the execution and ongoing effectiveness" of TD's AML controls to ensure that money laundering is "appropriately identified and mitigated." *Id.* (alteration in original). And in 2023, when investors started to learn that TD's regulators were investigating the adequacy of the Company's AML procedures, Defendants minimized and downplayed the extent of the problems with TD's AML controls. *Id.*

In truth, from January 2014 to October 2023, "pervasive" and "systemic deficiencies" plagued TD's AML controls. ¶4. Despite these "known" and "glaring deficiencies," Defendants "chose profits over compliance" and "failed to appropriately fund and staff [TD's] AML program, opting to postpone and cancel necessary AML projects" to keep costs down because "senior executives" required TD's annual budget not increase. *Id*. As a result, from January 2018 to April 2024, TD failed to monitor most of its transactions which allowed criminals to launder hundreds of millions of dollars using the Company's products and services. *Id*.

Investors began to learn the truth on May 2, 2024, when *The Wall Street Journal* reported that a Department of Justice ("DOJ") investigation into TD's AML controls focused on "how Chinese crime groups and drug traffickers" used the Company to launder money from the sale of

fentanyl and that "[t]he investigation was launched after agents uncovered an operation . . . that laundered hundreds of millions of dollars in proceeds" through TD.  ¶5 (alteration in original). The report also revealed that Canadian regulators fined TD $6.7 million for failing to file required suspicious activity reports related to money laundering.  *Id*.  On this news, the price of TD stock declined $3.42 per share, or 5.9%, from $58.08 per share on May 2, 2024, to $54.66 per share on May 3, 2024.  ¶6.

Then, on October 9, 2024, *The Wall Street Journal* reported that TD would plead guilty to criminal charges that it failed to build proper AML systems, that it faced $3 billion in penalties, and that the Office of the Comptroller of the Currency ("OCC") was expected to impose an asset cap that would bar the Company from growing above a certain level in the U.S. ¶7.  The next day, October 10, 2024, TD published a press release revealing that it had entered consent orders with certain regulators, including the OCC, as well as plea agreements with DOJ related to its AML controls.  ¶8.  TD further revealed that, among other requirements, the Company would pay $3.09 billion in fines and penalties, and that the OCC had imposed an asset cap on the Company's U.S. banking subsidiaries.  *Id.*

Also on October 10, 2024, DOJ and the OCC published their own press releases announcing their respective actions against TD.  ¶9.  DOJ explained that between January 2014 and October 2023, TD "had long-term, pervasive, and systemic deficiencies in its U.S. AML policies . . . but failed to take appropriate remedial action" because "senior executives at TD Bank enforced a budget mandate, referred to internally as a 'flat cost paradigm,' requiring that TD Bank's budget not increase year-over-year."  *Id.*  DOJ also stated that regulators and the Company's own internal audit group "repeatedly identified concerns about its transaction monitoring program," yet "from 2014 through 2022" the "transaction monitoring program

4

remained effectively static." *Id.* As a result, from January 1, 2018, to April 12, 2024, TD "intentionally did not automatically monitor all domestic automated clearinghouse (ACH) transactions, most check activity, and numerous other transaction types, resulting in 92% of total transaction volume [roughly $18.3 trillion of transaction activity] going unmonitored," allowing criminals to launder hundreds of millions of dollars. *Id.*

In the OCC's press release, Acting Comptroller of the Currency Michael J. Hsu said, "TD Bank's persistent prioritization of growth over controls allowed its employees to break the law and facilitate the laundering of hundreds of millions of dollars." Further, the OCC stated TD "had a systemic breakdown in its processes to identify and report suspicious activity, and a pattern or practice of noncompliance with the suspicious activity report filing requirement" and "violated currency transaction reporting requirements on numerous occasions." ¶10. On this news, the price of TD stock declined $4.07 per share, or 6.4%, from $63.51 per share on October 9, 2024, to $59.44 per share on October 10, 2024. ¶11.

## ARGUMENT

### A. Mr. Gonzalez Is The Most Adequate Plaintiff

Mr. Gonzalez respectfully submits that he is entitled to be appointed Lead Plaintiff because he is the movant "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that has "the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption). As set forth

below, Mr. Gonzalez believes he is the "most adequate plaintiff" and should be appointed as Lead Plaintiff.

### 1.  Mr. Gonzalez's Motion is Timely

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  According to Rule 6 of the Federal Rules of Civil Procedure, when "computing any time period . . . in any statute that does not specify a method of computing time . . . the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).

On October 22, 2024, Plaintiff James Tiessen filed the first of the related actions which alleged that Defendants defrauded investors during the period of February 29, 2024, through October 9, 2024.  *See Tiessen*, ECF No. 1 ¶1.  On the same day, counsel for Mr. Tiessen published notice of the pendency of the action on *Globe Newswire*, which alerted investors to the pendency of the action and that the deadline to seek Lead Plaintiff status was December 23, 2024.  *See* Fonti Decl. Ex. B.  December 23 is the first day that is not a legal holiday, Saturday, or Sunday after the expiration of the PSLRA's 60-day notice period which fell on December 21, 2024, consistent with Federal Rule 6(a)(1)(C).

On November 25, 2024, the Court entered an order stating, in part, "Plaintiff's counsel notified the Court that the required notice was published on October 22, 2024.  Dkt. 7.  Members of the purported class therefore have until December 21, 2024 to move the Court to serve as lead plaintiffs." *Tiessen*, ECF No. 8.

On December 11, 2024, Mr. Gonzalez filed a substantially similar action against Defendants which expanded the start of the Class Period from February 29, 2024, to March 7, 2022.  *See Gonzalez*, ECF No. 1 ¶¶1, 5.  Also on December 11, 2024, counsel for Mr. Gonzalez,

BFA, published a notice on *AccessWire* alerting investors to the expanded class period. *See* Fonti Decl. Ex. C.

On December 20, 2024, the Court entered an Order stating, in part, that "Pursuant to Fed. R. Civ. P. 6(a), the deadline to move the Court to serve as lead plaintiff is extended to December 23, 2024." *Tiessen*, ECF No. 16 at 2. As such, through the filing of this motion, Mr. Gonzalez's application is timely.

**2.      Mr. Gonzalez Believes He Has The Largest Financial Interest In The Relief Sought By The Class**

Mr. Gonzalez believes that he has the largest financial interest in the relief sought by the class and thus should be appointed Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Mr. Gonzalez incurred a recoverable loss of approximately $314,000 on his investments in TD securities during the Class Period as assessed under the Supreme Court's ruling in *Dura*. "Though *Dura* concerned a motion to dismiss a securities class action, courts [in this District] nonetheless apply *Dura* when considering [the] financial interest for the purposes of appointing a lead plaintiff." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, No. 20-cv-9132 (AJN), 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021) (collecting cases). This is because "courts should consider only those losses that will actually be recoverable in the class action . . . and make determinations of largest financial interest only based on the facts alleged in the complaint." *Id.* (internal quotations & citations omitted).

Charts setting forth calculations of Mr. Gonzalez's financial interest are provided as Exhibit D to the Fonti Decl. Mr. Gonzalez's PSLRA certification and financial interest calculation provide all the trading information necessary to calculate his financial interest under all possible metrics and does not presuppose that there is only one valid methodology. Mr.

7

Gonzalez filed his PSLRA-required Certification when he filed his complaint.  *See Gonzalez*, ECF No. 1 at 25.  It is provided again as Exhibit E to the Fonti Decl. for convenience.

To the best of Mr. Gonzalez's knowledge, there is no other applicant seeking Lead Plaintiff appointment that has a larger financial interest in this litigation.  Accordingly, Mr. Gonzalez believes that he has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3.    Mr. Gonzalez Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mr. Gonzalez otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  "[I]n deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met."  *Husson v. Garrett Motion Inc.*, No. 20-cv-7992 (JPC), 2021 WL 211541, at *3 (S.D.N.Y. Jan. 21, 2021).  Here, Mr. Gonzalez unquestionably satisfies both requirements.

Mr. Gonzalez's claims are typical of the claims of other investors in TD securities. "Typicality is satisfied if each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability."  *Id.* (citation omitted).  Here, Mr. Gonzalez's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are nearly identical.  Like all other Class members, Mr. Gonzalez: (1) invested in TD securities during the Class Period; (2) invested at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market.  *See id.*  (typicality met when movant "appear[s] to seek the same relief

8

and advance the same legal theories as other class members"). As such, Mr. Gonzalez is a typical Class representative.

Mr. Gonzalez likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy means that there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants, the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy." *Garrett Motion*, 2021 WL 211541, at *3 (internal quotations omitted). Mr. Gonzalez satisfies these elements because his substantial financial stake in the litigation provides the ability and incentive to vigorously represent the Class's claims. What's more, Mr. Gonzalez is a sophisticated investor who has already taken active steps to protect absent Class members by filing *Gonzalez*, which helps ensure the putative Class's claims will be adequately represented.

Further, Mr. Gonzalez's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Gonzalez and other Class members, and there is no collusion among the litigants. *See id.* (adequacy found when "[t]here is nothing in the record that suggests the [movant has] conflicts with other class members").

Mr. Gonzalez has also demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. As discussed more fully below, BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

9

**B. Mr. Gonzalez Selected Well-Qualified Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

BFA is among the foremost securities class action law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Fonti Decl. Ex. F. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129 million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, in this District, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Sec. Litig.*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

### C. Consolidation is Warranted

There are two related actions pending in this District against Defendants:

| Case | Civil No. | Date Filed |
|------|-----------|------------|
| *Tiessen v. The Toronto-Dominion Bank* | 1:24-cv-08032 | October 22, 2024 |
| *Gonzalez v. The Toronto-Dominion Bank* | 1:24-cv-09445 | December 11, 2024 |

On December 20, 2024, the Court issued an order stating that it "is inclined to consolidate the cases pursuant to Rule 42 of the Federal Rules of Civil Procedure for all purposes. Any party who objects to such consolidation shall file a letter brief, not to exceed three single-spaced pages, by December 30, 2024." *Tiessen*, ECF No. 16 at 1.

Mr. Gonzalez supports consolidation. The cases present substantially similar factual and legal issues because they each allege claims under Sections 10(b) and 20(a) of the Exchange Act, against the same defendants, relating to an overlapping period of time, and are premised on substantially similar types of misstatements. Rule 42(a) grants broad discretion to courts to consolidate cases that involve common questions of law or fact, as here; the actions need not be identical. *See Taylor v. Barnes & Noble, Inc.*, No. 14-cv-108 (KMW) (FM), 2014 WL12769396, at *2-4 (S.D.N.Y. July 16, 2014). While *Gonzalez* starts the class period earlier than *Tiessen*, this difference does not render consolidation inappropriate because it "do[es] not outweigh the interest of judicial economy served by consolidation." *Id*. at *4.

### CONCLUSION

For the reasons discussed above, Mr. Gonzalez respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the putative Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated: December 23, 2024                    Respectfully submitted,

                                            **BLEICHMAR FONTI & AULD LLP**

                                             _/s/ Joseph A. Fonti_
                                            Joseph A. Fonti (Lead Trial Counsel)
                                            300 Park Avenue, Suite 1301
                                            New York, New York 10022
                                            Telephone: (212) 789-1340
                                            Facsimile: (212) 205-3960
                                            jfonti@bfalaw.com

                                            -and-

                                            Ross Shikowitz
                                            75 Virginia Road
                                            White Plains, New York 10603
                                            Telephone: (914) 265-2991
                                            Facsimile: (212) 205-3960
                                            rshikowitz@bfalaw.com

                                            -and-

                                            Adam C. McCall (_pro hac vice_ forthcoming)
                                            1330 Broadway, Suite 630
                                            Oakland, California 94612
                                            Telephone: (212) 789-2303
                                            Facsimile: (415) 445-4020
                                            amccall@bfalaw.com

                                            _Counsel for Plaintiff and Proposed Lead
                                            Plaintiff Pedro Gonzalez, and Proposed Lead
                                            Counsel for the Putative Class_