**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, LEOVIGILDO SALOM, KELVIN VI LUAN TRAN, and RIAZ E. AHMED,<br><br>   Defendants. | Case No.: 1:24-cv-08032-AS<br><br>Hon. Arun Subramanian |
| PEDRO GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, KELVIN VI LUAN TRAN, RIAZ E. AHMED, and LEOVIGILDO SALOM,<br><br>   Defendants. | Case No.: 1:24-cv-09445-AS<br><br>Hon. Arun Subramanian |

**JAMES TIESSEN'S MEMORANDUM OF LAW IN OPPOSITION TO THE
<u>COMPETING MOTION FOR LEAD PLAINTIFF</u>**

**TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.    ARGUMENT............................................................................................................ 3

    A.    The Court Should Reject the *Gonzalez* Class Period.............................................. 3

    B.    Mr. Tiessen Is the Presumptive Lead Plaintiff........................................................ 7

        1.  Mr. Tiessen Has the Largest Financial Interest. ................................................ 7

        2.  Mr. Tiessen Meets the Typicality and Adequacy Requirements of Rule 23. ... 8

III.   CONCLUSION......................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,*
 258 F.R.D. 260 (S.D.N.Y. 2009) ......................................................................................8

*Brady v. Top Ships Inc.,*
 324 F. Supp. 3d 335 (E.D.N.Y. 2018) ..............................................................................8

*In re Centerline Holding Co. Sec. Litig.,*
 08 Civ. 505 (SAS), 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5, 2008).....................3

*In re Comverse Tech., Inc. Sec. Litig.,*
 No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028  (E.D.N.Y. Mar. 2, 2007).........................7

*Faris v. Longtop Fin. Techs. Ltd.,*
 No. 11 Civ. 3658 (SAS), 2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011) ...........8

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
 903 F.2d 176 (2d Cir. 1990)...............................................................................................6

*Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.,*
 594 U.S. 113 (2021)............................................................................................................5

*Maliarov v. Eros Int'l PLC,*
 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) ...................7

*Topping v. Deloitte Touche Tohmatsu CPA,*
 95 F. Supp. 3d 607 (S.D.N.Y. 2015)..................................................................................7

*Villare v. Abiomed, Inc.,*
 19 Civ. 7319 (ER) 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June 29, 2020)...............3, 6

*Winer Family Trust v. Queen,*
 503 F.3d 319 (3d Cir. 2007)...............................................................................................6

## I.    PRELIMINARY STATEMENT

Plaintiff James Tiessen should be appointed lead plaintiff in this securities fraud class action. His loss of approximately $2,000 stems directly from Defendants' alleged misrepresentations about the "asset cap" imposed upon The Toronto-Dominion Bank ("TD"), which is the crux of this action. The only other shareholder seeking appointment of lead plaintiff, Plaintiff Pedro Gonzalez, invested long before these misrepresentations occurred and cannot plausibly show causally related damages. Appointing Mr. Gonzalez as the lead plaintiff would expose the class to a handful of different (albeit related) unique defenses that could jeopardize the action entirely.

Mr. Tiessen is a retired financial advisor and sophisticated businessman who has been trading in securities for more than twenty years. He purchased TD stock on the New York Stock Exchange during the class period alleged in the initial first-filed complaint styled *Tiessen v. The Toronto-Dominion Bank, et al.*, No. 1:24-cv-08032 (S.D.N.Y.). The *Tiessen* class period runs from February 29, 2024 to October 9, 2024, inclusive (the "*Tiessen* Class Period"). During the *Tiessen* Class Period, Defendants made several statements concealing the impending non-monetary penalty that would ultimately cap TD's ability to hold U.S. assets at $434 billion. When news of the asset cap emerged after the class period ended, it sent TD's stock price plummeting. The decline was predominantly (if not exclusively) related to the "asset cap" because that was the only new information about the regulatory penalties to enter the market at that time. Analyst reports evidence this fact. *See* Supplemental Declaration of Adam M. Apton, Exhibits A & B (analyst reports from RBC and Desjardins).

Mr. Gonzalez, however, would have this Court believe otherwise and stands to irreparably prejudice the class by pursuing a considerably longer, nonsensical class period. On December 11,

2024, approximately 10 days before the lead plaintiff deadline set by this Court and the PSLRA, Mr. Gonzalez filed an additional complaint asserting a class period spanning from March 7, 2022, through October 9, 2024 (the "*Gonzalez* Class Period"). The motive behind Mr. Gonzalez's attempt to start the class period is clear. He purchased roughly 98% of his overall holdings on March 24, 2022 and zero shares during the *Tiessen* Class Period. Therefore, absent a gross expansion of the class period, Mr. Gonzalez could not recover anything if the action were successful (let alone seek appointment as lead plaintiff).

Mr. Gonzalez's necessity to expand the class period creates an awful dilemma. If appointed lead plaintiff, he would place his own self-interest in a recovery over the interest of the class at large by pursuing the longer *Gonzalez* Class Period instead of the initial *Tiessen* Class Period. This is extremely problematic given the class period cannot start as early as Mr. Gonzalez would like. Indeed, the misrepresentation upon which Mr. Gonzalez relies to start the class period in March 2022 merely references TD's commitment to anti-money laundering ("AML") compliance policies. TD subsequently discloses its AML regulatory problems in its quarterly shareholder report for the third quarter of 2023. *See* Supp. Apton Decl., Exhibits C & D. Thus, to the extent TD's March 2022 statements concealed anything, the truth concerning those statements was revealed long before the end of the class period effectively breaking the causal chain between Mr. Gonzalez's purchases and his alleged damages.

Mr. Tiessen's financial interest in the action is grounded in the allegations and securely covered by the theory of liability presently in the pleadings. Mr. Gonzalez's is not. His efforts to manipulate the class period should be rejected and the case should be allowed to proceed under Mr. Tiessen's watch as the lead plaintiff with his attorneys at Levi & Korsinsky, LLP as lead counsel.

II.   **ARGUMENT**

   A.   **The Court Should Reject the *Gonzalez* Class Period.**

Mr. Gonzalez filed his additional complaint 10 days before the PSLRA lead plaintiff deadline. Whereas the *Tiessen* Class Period from the first-filed action started on February 29, 2024, the *Gonzalez* Class Period begins nearly two years earlier on March 7, 2022. An extended class period that is wholly implausible as pleaded from the face of the complaint cannot, and will not, be adopted as the governing class period for purposes of determining the movant with the largest financial interest in the litigation. *See In re Centerline Holding Co. Sec. Litig.,* 08 Civ. 505 (SAS), 2008 U.S. Dist. LEXIS 36406, at *12-14 (S.D.N.Y. May 5, 2008) (refusing to adopt longer class period where facts in complaint failed to plausibly support theory of liability). "[N]umerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Villare v. Abiomed, Inc*., 19 Civ. 7319 (ER), 2020 U.S. Dist. LEXIS 114684, at *9 (S.D.N.Y. June 29, 2020).

In this instance, it is quite clear that Mr. Gonzalez's class period is implausible. Mr. Gonzalez purchased 12,900 shares of TD stock on March 24, 2022. Dkt. No. 22-4. These purchases comprised roughly 98% of his overall holdings. *See id*. Consequently, for Mr. Gonzalez, it was imperative that he extend the class period backwards in time to include these purchases. He has attempted to do this by alleging a misrepresentation made on March 7, 2022. *See Gonzalez* Complaint, ¶27. This misrepresentation, however, is divorced from the corrective disclosure at the end of the Class Period, thereby creating a massive vulnerability for the Class if allowed to proceed.

The March 7, 2022 misrepresentation appeared in an investor proxy statement concerning TD's upcoming annual meeting. In pertinent part, the proxy stated that "the Audit Committee,

'[r]eceived updates from the internal audit, finance, compliance and global anti-money laundering functions to satisfy itself that there are adequate resources with experience and knowledge in each of the key oversight functions' and '[o]versaw the execution and ongoing effectiveness of the anti-money laundering/anti-terrorist financing/economic sanctions/anti-bribery and anti-corruption program (AML program), including the related risk assessment.'" *Id*. Mr. Gonzalez claims this statement was materially misleading because "from January 2014 to October 2023," "'pervasive' and 'systemic deficiencies' plagued TD's AML controls." *Id*. at ¶39. That is the only misrepresentation alleged by Mr. Gonzalez prior to his purchases of TD stock on March 24, 2022.

This misrepresentation says nothing about the nature, type, or severity of the penalties TD was potentially facing for its AML regulatory violations, which is what caused investor losses in this action. On October 10, 2024, TD revealed the "asset cap" as part of its penalty for its AML misconduct. Analysts widely reported that the "asset cap" was the "new" information causing TD's stock price to plummet. *See* Supp. Apton Decl. at Exhibits A & B. For example, Dejardins reported in pertinent part as follows: "The total monetary penalty of ~US$3.09b is largely in line with the provision of US $3.05b. And management does not expect further monetary penalties. ***What's new? TD's US retail operation is subject to an asset cap of US$434b*** (level as of September 30, 2024) and must comply by March 31, 2025" (emphasis added). *See id*. at Exhibit A. Similarly, RBC reported in pertinent part that: "TD reached a resolution on its U.S. BSA/AML issues, which included both monetary and non-monetary penalties, of which ***the most pertinent in our view is the asset cap that will restrain TD's growth efforts in the U.S. for a long time to come***. We lower our rating to Sector Perform from Outperform and our price target to $82 from $88" (emphasis added).

4

To the extent TD's March 2022 statements misled Mr. Gonazlez by failing to disclose ongoing AML regulatory misconduct, any misconceptions about TD's compliance would have been cleared up by August 2023 when TD disclosed ongoing regulatory investigations concerning its AML compliance. In its quarterly report for the third quarter of 2023, TD disclosed that: "The Bank has been responding to formal and informal inquiries from regulatory authorities and law enforcement concerning its Bank Secrecy Act/anti-money laundering compliance program, both generally and in connection with specific clients, counterparties or incidents in the US, including in connection with an investigation by the United States Department of Justice. The Bank is cooperating with such authorities and is pursuing efforts to enhance its Bank Secrecy Act/anti-money laundering compliance program. While the ultimate outcomes of these inquiries and investigations are unknown at this time, the Bank anticipates monetary and/or non-monetary penalties to be imposed." *See id*. at Exhibit C. Analysts took note of the disclosure and focused on it during conferences and reporting. *See id*. at Exhibit D (National Bank of Canada reporting that "TD's shareholder report mentions regulator inquiries into its 'Bank Secrecy/ Anti-money laundering compliance program'. These inquiries could lead to fines, which TD could easily afford to pay. However, we believe the potential reputational hit, along with potentially higher compliance costs and capital requirements (via higher Operational RWA) are important considerations.").

Any break in the chain of causation could jeopardize Mr. Gonzalez's ability (and, in turn, the class's ability) to rely on the "presumption" of reliance for class certification purposes or trial. *See Goldman Sachs Grp., Inc. v. Ark. Teacher Ret. Sys.*, 594 U.S. 113, 123 (2021) (reversing class certification where mismatch existed between misrepresentation and corrective disclosure). Given that TD's regulatory issues were known well in advance of the end of the Class Period, it stands

to reason that damages suffered after the Class Period ended could not have been caused by statements concealing the regulatory issues. Mr. Gonzalez's proposed class period undermines any viable theory of falsity, scienter, or loss causation. Yet if entrusted with overseeing the prosecution of this action, he would pursue his proposed class period to the detriment of the class at large. This conflict disqualifies Mr. Gonzalez from serving as the lead plaintiff in this action. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see also Winer Family Trust v. Queen*, 503 F.3d 319, 323-25 (3d Cir. 2007) (plaintiff lost standing to pursue claims after court dismissed claims based on misrepresentations occurring in first part of class period)

Mr. Gonzalez's class period appears to be a product of gamesmanship. "[N]umerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Abiomed,* 2020 U.S. Dist. LEXIS 114684, at *9. In *Abiomed*, plaintiff/movant Barry, attempted to expand the class period hours before the PSLRA deadline, and in doing so inflated Barry's losses by almost $200,000. *Id*. at *13. Judge Ramos concluded that the longer class period proposed at the eleventh hour should not be used for purposes of the lead plaintiff analysis, due to concerns that the expansion was merely a product of gamesmanship. *Id*.

Mr. Gonzalez's actions are the same, if not worse, than Barry in *Abiomed*. Expanding the class period backwards by nearly two years less than two weeks before the 60-day PSLRA deadline to gain standing that otherwise would not exist due to the absence of any purchases in the original class period smacks of manipulation. Mr. Gonzalez's gamesmanship to manipulate the class period

6

in the eleventh hour should not be tolerated or rewarded. Courts in this District have consistently expressed their reluctance "to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *10-12 (S.D.N.Y. Apr. 5, 2016). Here, as in *Eros*, a complaint expanding the class period was filed well into the 60-day PSLRA timeframe which meant individuals who would otherwise "be able to meet the requirements of a lead plaintiff motion" under the expanded disclosure date would be "precluded from filing such motions given the expiration of the PSLRA's time limit for doing so." *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)). "The specter of gamesmanship on these facts causes the Court to question whether [Plymouth] will 'fairly and adequately protect the interests of the class.'" *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

### B.    Mr. Tiessen Is the Presumptive Lead Plaintiff.

#### 1.    *Mr. Tiessen Has the Largest Financial Interest.*

Courts in the Second Circuit typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); Courts will also consider other factors when determining a movant's financial interest, if necessary, such as retained shares, and funds expended. Under these factors, Mr. Tiessen possesses a "financial interest" in the outcome of the case and, when excluding Mr. Gonzalez, his financial

7

interest is the largest. He purchased and retained 300 shares, expending nearly $19,000, and suffering an out-of-pocket loss of over $2,000. *See* Dkt. No. 19-2.

### 2. *Mr. Tiessen Meets the Typicality and Adequacy Requirements of Rule 23.*

In addition to possessing the greatest financial interest, Mr. Tiessen satisfies the adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS), 2011 U.S. Dist. LEXIS 112970, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that [he] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class." *Id*. (ellipsis omitted).

Mr. Tiessen's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members. Likewise, Mr. Tiessen's certification pursuant to the federal securities laws, (Dkt. No. 19-1), his Declaration detailing his motivation and intention to oversee this litigation (Dkt. No. 19-4), and his selection of experienced and capable counsel in Levi & Korsinsky (Dkt. No. 19-5), demonstrate that he does not have interests antagonistic to the class and will adequately represent the interests of the proposed class. Accordingly, Mr. Tiessen has made a preliminary showing that he satisfies the adequacy and typicality requirements of Rule 23.

As Mr. Tiessen has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, he is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

## III.    CONCLUSION

For the foregoing reasons, Mr. Tiessen respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.


Dated: January 6, 2025                               Respectfully Submitted,

                                                     **LEVI & KORSINSKY, LLP**

                                                     By: */s/ Adam M. Apton*
                                                     Adam M. Apton (AS-8383)
                                                     33 Whitehall Street, 17th Floor
                                                     New York, New York 10004
                                                     Tel: (212) 363-7500
                                                     Fax: (212) 363-7171
                                                     Email: aapton@zlk.com

                                                     *Attorneys for Plaintiff James Tiessen*
                                                     *and [Proposed] Lead Counsel for the Class*