## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, LEOVIGILDO SALOM, KELVIN VI LUAN TRAN, and RIAZ E. AHMED,<br><br>Defendants. | Case No. 1:24-cv-08032-AS<br><br>CLASS ACTION |
| PEDRO GONZALEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>THE TORONTO-DOMINION BANK, BHARAT B. MASRANI, KELVIN VI LUAN TRAN, RIAZ E. AHMED, and LEOVIGILDO SALOM,<br><br>Defendants. | Case No. 1:24-cv-09445-AS<br><br>CLASS ACTION |

**PEDRO GONZALEZ'S MEMORANDUM OF LAW IN OPPOSITION TO
THE COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 3

    A.    Mr. Gonzalez Should Be Appointed Lead Plaintiff........................................................ 3

        1.    The Longest, Most Inclusive Class Period Governs.................................................4

            a.    Courts Strongly Disfavor Adopting The Shorter Class Period....................4

            b.    Both *Tiessen* And *Gonzalez* Allege The Same Theory Of Liability............6

        2.    Mr. Gonzalez Has The Largest Financial Interest .....................................................9

        3.    Mr. Gonzalez Otherwise Satisfies The Requirements Of Rule 23 .........................9

        4.    Mr. Tiessen Cannot Trigger the Presumption.........................................................11

    B.    The Court Should Approve Mr. Gonzalez's Selection of Counsel............................... 11

CONCLUSION....................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*,
258 F.R.D. 260 (S.D.N.Y. 2009) ........................................................................................6

*Bosch v. Credit Suisse Grp. AG*,
2022 WL 4285377 (E.D.N.Y. Sept. 12, 2022) .................................................................3, 11

*Bousso v. Spire Global, Inc.*,
2024 WL 4873311 (E.D. Va. Nov. 21, 2024)......................................................................5

*In re CMED Sec. Litig.*,
2012 WL 1118302 (S.D.N.Y. Apr. 2, 2012).......................................................................6

*Cohen v. Luckin Coffee Inc.*,
2020 WL 3127808 (S.D.N.Y. June 12, 2020) ...................................................................3

*Crass v. Yalla Grp. Ltd.*,
2021 WL 5181008 (S.D.N.Y. Nov. 8, 2021).......................................................................1

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)..................................................................................5

*Eichenholtz v. Verifone Holdings, Inc.*,
2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ...............................................................2, 5

*In re Elan Corp. Sec. Litig.*,
2009 WL 1321167 (S.D.N.Y May 11, 2009) .....................................................................4

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ........................................................................................6

*Grand Lodge of Pa. v. Peters*,
2007 WL 1812641 (M.D. Fla. June 22, 2007).....................................................................5

*Hom v. Vale, S.A*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .................................................................2, 4, 6

*Husson v. Garrett Motion Inc.*,
2021 WL 211541 (S.D.N.Y. Jan. 21, 2021) .................................................................3, 9, 10

*Kangas v. Illumina, Inc.*,
2024 WL 1587463 (S.D. Cal. Apr. 11, 2204).....................................................................5

*Lucas v. U.S. Oil Fund, LP*,
　2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020)................................................................4, 8

*Marcus v. J.C. Penney Co.*,
　2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ...............................................................2, 5

*Munch v. Sprout Social, Inc.*,
　2024 WL 4753734 (N.D. Ill. Nov. 12, 2024) ..................................................................5, 8

*Nixon v. CVS Health Corp.*,
　2024 WL 4987425 (S.D.N.Y. Dec. 5, 2024) ......................................................................6

*Villare v. Abiomed Inc.*,
　2020 WL 3497285 (S.D.N.Y. June 29, 2020) ....................................................................8

*Villella v. Chem. & Mining Co. of Chile Inc.*,
　2015 WL 6029950 (S.D.N.Y. Oct. 14, 2015)......................................................................4

**Rules**

Fed. R. Civ. P. 23(a)(4)...................................................................................................10

**Statutes**

15 U.S.C. § 78u-4 (a)(2)(A)(iv) ........................................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .......................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)..................................................................................9

15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II).............................................................................2, 3, 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..............................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(v) ..........................................................................................11

Pedro Gonzalez respectfully submits this brief in opposition to the competing motion for appointment as Lead Plaintiff and for approval of selection of counsel.  ECF No. 17.  Unless otherwise noted, citations to ECF No. __ are to the *Tiessen* docket, capitalized terms are defined in Mr. Gonzalez's opening brief at ECF No. 21, and emphasis is added.

## PRELIMINARY STATEMENT

Mr. Gonzalez should be appointed Lead Plaintiff because he is the "most adequate plaintiff" under the PSLRA and "has the largest financial interest in the relief sought by the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  One other movant filed a motion seeking Lead Plaintiff appointment: James Tiessen.  ECF No. 17.  Mr. Gonzalez's loss is ***more than two-hundred times*** larger than Mr. Tiessen's, which is the critical element courts consider when assessing financial interest, as demonstrated in the table below.  *See Crass v. Yalla Grp. Ltd.*, 2021 WL 5181008, at *5 (S.D.N.Y. Nov. 8, 2021) ("[C]ourts have consistently held that . . . the magnitude of the loss suffered, is the most significant [factor]").  Similarly, Mr. Gonzalez asserts, by far, the largest financial interest when considering each of the so-called "*Lax* factors" that courts in this District apply to measure financial interest: (1) total number of shares purchased; (2) number of net shares purchased; (3) total net funds expended; and (4) approximate losses suffered.  *Id.*

| Movant | Shares Purchased | Net Shares Purchased | Net Funds Expended | Claimed Loss |
|---|---|---|---|---|
| Pedro Gonzalez | 13,160 | 1,660 | $405,734.97 | $313,773.52 |
| James Tiessen | 300 | 300 | $18,148.50 | $1,512.56 |

Mr. Gonzalez also satisfies the adequacy and typicality requirements of Rule 23.  As set forth in the Declaration Mr. Gonzalez filed with his motion, he is a sophisticated investor with nearly forty years of investment expertise and is familiar with overseeing counsel.  ECF No. 22-1 ¶2.  He also has already taken active steps to protect the interests of absent Class members by

pleading a more expansive Class Period in *Gonzalez*, which ensures that as many putative Class members as possible will be able to recover in this litigation. *See id* ¶3.

Because Mr. Gonzalez has the largest financial interest in the litigation and has made a *prima facie* showing of typicality and adequacy, he is entitled to a strong presumption that he is the most adequate plaintiff. The PSLRA states that this presumption can only be rebutted "upon proof" that Mr. Gonzalez is inadequate or atypical. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II). No such "proof" exists, and there are no grounds to challenge Mr. Gonzalez's typicality or adequacy.

In a footnote, Mr. Tiessen claims that he "opposes adopting the extended class period claimed in the *Gonzalez* Action, given that it arises in part from events outside the relevant period in the *Tiessen* Action and necessarily entails different theories of liability." *See* ECF No. 18 at 9 n.2. This contention is a red herring. Mr. Tiessen fails to cite a single case to support this point, and his position is contrary to virtually every court to have considered the issue, which explicitly recognize that the longest, most inclusive Class Period governs at the Lead Plaintiff stage because it "encompasses more potential class members and damages." *See e.g., Hom v. Vale, S.A*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016). The cases also assert the same theory of liability, as Mr. Tiessen recognized elsewhere in his motion as well as in a prior submission to the Court. *See* ECF Nos. 15 at 1, 18 at 5-6.

In fact, Mr. Tiessen's arguments in favor of the truncated period asserted in *Tiessen* cast serious doubt on his ability to represent the interests of the proposed Class, as he seeks to excise likely many thousands of Class members that invested in TD during the broader period asserted in *Gonzalez*. *See Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) (rejecting argument in favor of truncated class period as misguided and "inimical to the interests of the class members [movant] purportedly represent[s]"); *Marcus v. J.C. Penney Co.*,

2

2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (advocating for a shorter class period is "troubling," "self-serving behavior [that] is precisely the type of rebuttable evidence provided in the PSLRA that would prohibit this Court from appointing [movant] lead plaintiff"). That Mr. Tiessen, who incurred a loss of just $1,500, would seek to harm the interests of thousands upon thousands of TD investors, suggests that he may not have sufficient financial incentive to oversee and control this litigation and his lawyers. *See Bosch v. Credit Suisse Grp. AG*, 2022 WL 4285377, at *5 (E.D.N.Y. Sept. 12, 2022) (refusing to appoint movant as Lead Plaintiff because its "extremely modest stake (at most, $621) is unlikely to provide the kind of incentive for close supervision of counsel that the PSLRA contemplates"). As such, Mr. Gonzalez is entitled to be appointed Lead Plaintiff.

## ARGUMENT

### A. Mr. Gonzalez Should Be Appointed Lead Plaintiff

The PSLRA establishes a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To trigger this presumption, the movant that has the largest financial interest need only make a "preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *Husson v. Garrett Motion Inc.*, 2021 WL 211541, at *3 (S.D.N.Y. Jan. 21, 2021).

Once the presumption attaches, it can only be rebutted with "proof" the presumptive Lead Plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *7 (S.D.N.Y. June 12, 2020) (requiring "proof that the presumptive lead plaintiff is subject to unique defenses").

3

Mr. Gonzalez is the presumptive Lead Plaintiff and no "proof" exists to rebut that presumption. Accordingly, Mr. Gonzalez is entitled to appointment as Lead Plaintiff.

### 1.    The Longest, Most Inclusive Class Period Governs

Lacking the "proof" necessary to rebut the presumption in favor of Mr. Gonzalez, Mr. Tiessen states in a footnote that he "opposes" the application of the broader Class Period in *Gonzalez* because it "arises in part from events outside the relevant period in the *Tiessen* Action and necessarily entails different theories of liability." ECF No. 18 at 9 n.2. Mr. Tiessen is wrong; his contention is unsupported by any cited caselaw and is inconsistent with prior representations he made to the Court. *Compare id.* with ECF No. 15 at 1 (stating that *Gonzalez* alleged "substantially similar claims as those asserted in [] *Tiessen*"); ECF No. 18 at 6 (arguing the cases should be consolidated because they "present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct" and "arise from the same facts and circumstances"). It is also contrary to the vast majority of cases that establish a strong preference for the longer class period.

### a.    Courts Strongly Disfavor Adopting The Shorter Class Period

Courts in this District and throughout the country uniformly adopt the longest class period when considering motions for lead plaintiff appointment. *See Lucas v. U.S. Oil Fund, LP*, 2020 WL 5549719, at \*4 (S.D.N.Y. Sept. 16, 2020) ("Where there are two potential class periods, courts addressing lead plaintiff motions generally apply the longer class period."). Courts "rely on the more inclusive class [period] for determining lead plaintiff because it encompasses more potential class members." *Vale*, 2016 WL 880201, at \*4; *see also Villella v. Chem. & Mining Co. of Chile Inc.*, 2015 WL 6029950, at \*5 n.5 (S.D.N.Y. Oct. 14, 2015) (utilizing a class period nearly four years longer than alleged in the first-filed complaint "as it encompasses more putative class members"); *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at \*1 (S.D.N.Y May 11, 2009) ("it is

appropriate to use [the] more inclusive period" for determining lead plaintiff); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2006) ("I find that the use of the longer, most inclusive class period . . . is proper"); *Bousso v. Spire Global, Inc.*, 2024 WL 4873311, at *3 (E.D. Va. Nov. 21, 2024) (applying the longest class period when calculating financial interest "makes good sense" and is "based on the assumption that the class, as referenced in [the PSLRA], should be defined as the broadest, most inclusive class"); *Munch v. Sprout Social, Inc.*, 2024 WL 4753734, at *6 (N.D. Ill. Nov. 12, 2024) (applying the longest class period "consistent with the general rule that courts usually adopt the most inclusive class period"); *Kangas v. Illumina, Inc.*, 2024 WL 1587463, at *3 (S.D. Cal. Apr. 11, 2024) (the approach of applying the longest class period "is guided by the belief that the class should be defined as the broadest, most inclusive potential class at the lead plaintiff stage").

In fact, courts are "wary of arguments advocating a shorter class period instead of the longest potential class period" because it "would have the effect of reducing the class size and limiting the potential amount of damages" and was likely only advocated because "it was in the best interest of that particular plaintiff only." *Eichenholtz*, 2008 WL 3925289, at *2 (rejecting argument in favor of truncated class period as "inimical to the interests of the class members [movant] purportedly represent[s]"); *see also J.C. Penney*, 2014 WL 11394911, at *7 (rejecting argument in favor of shorter class period as "troubling," "self-serving behavior"). Further, courts routinely refuse to make determinations regarding the merits of competing class periods at this early stage of the litigation. *See Grand Lodge of Pa. v. Peters*, 2007 WL 1812641, at *2 (M.D. Fla. June 22, 2007) ("[Movant] asks this court to delve into the merits of the claims and to define the class period at this early stage of the proceedings before a class has been certified or those issues have been fully briefed. This it cannot do.").

For these reasons, virtually every court to consider the issue has applied the most inclusive class period for purposes of determining the financial interests of competing Lead Plaintiff movants. *See Vale*, 2016 WL 880201, at *4 (finding the use of the longer, more inclusive class period proper when "the two actions bring the same legal causes of action, against nearly identical defendants, and allege substantially similar allegations"); *Nixon v. CVS Health Corp.*, 2024 WL 4987425, at *1 n.2 (S.D.N.Y. Dec. 5, 2024) ("The Court will use the longer class period . . . because it encompasses more putative class members"); *In re CMED Sec. Litig.*, 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) ("The Court will use the longest-noticed class period . . . as it encompasses more putative class members); *In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, 258 F.R.D. 260, 269 (S.D.N.Y. 2009) (determining financial interest using "the longest class period identified"). Mr. Tiessen's own cited authority recognizes as much. *See In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012) ("[f]or the purpose of determining a lead plaintiff, . . . the use of the longer, most inclusive class period . . . is proper, as it encompasses more potential class members") cited at ECF No. 18 at 9.

### b.  Both *Tiessen* And *Gonzalez* Allege The Same Theory Of Liability

Mr. Tiessen does not cite a single case where a court refused to adopt a broader class period because of differences in theories of liability. Mr. Tiessen then makes the conclusory assertion that "courts typically do not simply adopt expanded class periods if it appears to be 'frivolous' or the result of 'gamesmanship.'" ECF No. 18 at 9 n.2. However, Mr. Tiessen does not, because he cannot, credibly explain how the allegations supporting the expanded Class Period in *Gonzalez* are frivolous or the product of gamesmanship. Indeed, the expanded period is not only supported by the allegations in *Gonzalez*, but by the complaint Mr. Tiessen himself filed in *Tiessen*. The theories asserted in the cases are the same.

6

The crux of both complaints is that Defendants misrepresented the effectiveness of TD's AML controls, including concealing and minimizing the extent of the deficiencies in AML controls. *See, e.g., Gonzalez*, ECF No. 1 ¶3; *Tiessen*, ECF No. 1 ¶¶2-3. *Gonzalez* begins the Class Period on March 7, 2022, which is when TD stated that it "is committed to taking all reasonable and appropriate steps to detect and deter persons engaged in money laundering from utilizing TD products or services to do so," and "[r]eceived updates from the internal audit, finance, compliance and global anti-money laundering functions to satisfy itself that there are adequate resources with experience and knowledge in each of the key oversight functions." *Gonzalez*, ECF No. 1 ¶¶26-27.

Both *Gonzalez* and *Tiessen* plead facts supporting securities fraud claims based on alleged misrepresentations starting at least as early as March 7, 2022. For instance, both actions allege that, according to the DOJ, "[f]or years, TD Bank starved its compliance programs" of resources and, as a result, "92% of total transaction volume [at TD went] unmonitored ***from Jan. 1, 2018, to April 12, 2024.***" *Gonzalez*, ECF No. 1 ¶52; *Tiessen*, ECF No. 1 ¶38. What's more, the actions similarly allege that TD failed to update its AML transaction monitoring "***from at least 2014 through late 2022.***" *Id.* And as alleged in *Tiessen*, "***[s]ince at least 2020***, the Bank processed hundreds of millions of dollars worth of transactions with clear indicia of highly suspicious activity" but "failed to take appropriate and timely corrective action." *Tiessen*, ECF No. 1 ¶39. Building on *Tiessen*'s allegations, *Gonzalez* further alleges that DOJ found TD "had long-term, pervasive, and systemic deficiencies in its U.S. AML policies . . . but failed to take appropriate remedial action" because "senior executives" required that "TD Bank's budget not increase year-over-year" and that "***[o]ver the last decade,***" federal regulators and the Company's own internal audit group "repeatedly identified concerns about [TD's] transaction monitoring program," yet

*"from 2014 through 2022"* the "transaction monitoring program remained effectively static." *Gonzalez*, ECF No. 1 ¶9.

Given the similarities between the complaints, Mr. Tiessen's own counsel recognized the propriety of the expanded Class Period asserted in *Gonzalez*. In at least 23 press releases published in the two weeks after the filing of *Gonzalez*, Mr. Tiessen's counsel publicly advised those who invested in TD "*between March 7, 2022 and October 9, 2024*" (i.e., the broader period asserted in *Gonzalez*) and who "suffered a loss in TD stock *during the relevant time frame*" to contact Mr. Tiessen's counsel "about a potential recovery." *See* Fonti Decl. Ex. A. It is disingenuous for Mr. Tiessen's counsel to advertise the broader period asserted in *Gonzalez* when seeking out potential clients, and then after recognizing their client lacks the largest financial interest, to then claim that the truncated period in *Tiessen* should apply to the detriment of the proposed Class.

The only case Mr. Tiessen cites to support the application of the abbreviated class period in *Tiessen* is distinguishable. *See* ECF No. 18 at 9 n.2. In *Villare v. Abiomed Inc.*, 2020 WL 3497285 (S.D.N.Y. June 29, 2020), the court declined to apply the broader class period because the relevant complaint "*proffers no factual allegations* that defendants' statements made [prior to the start of the shorter class period] were false or misleading." *Villare*, 2020 WL 3497285, at *5. That is not the case here, as discussed above. *See Lucas*, 2020 WL 5549719, at *4 (adopting longest class period where the "[c]omplaint alleges facts that plausibly suggest that the class period should start" at the beginning of the longer class period); *Sprout Social,* 2024 WL 4753734, at *5 (adopting longest class period were the "complaint contains plausible allegations that investors were misled as early as the beginning of the [longest] class period").

Under these circumstances, the Court should consider the more inclusive *Gonzalez* Class Period when comparing the movants' financial interests.

### 2.    Mr. Gonzalez Has The Largest Financial Interest

Using the controlling class period alleged in *Gonzalez*, Mr. Gonzalez has, by far, the largest financial interest in the relief sought by the Class.  As demonstrated in the table above, Mr. Gonzalez's financial interest is exponentially larger than Mr. Tiessen's as assessed under every metric courts typically utilize to determine financial interest.  *See supra* at 1.  Mr. Gonzalez incurred a loss of approximately $314,000 on his investments in TD securities during the Class Period, ***more than 200 times more*** than Mr. Tiessen's *de minimis* claimed loss of $1,512.56.  *See* ECF Nos. 19-2, 22-4.  What's more, Mr. Gonzalez purchased nearly ***4,300% more shares***, over ***450% more net shares***, and expended approximately ***2,135% more net funds*** than Mr. Tiessen. *Id.*  Therefore, there can be no credible question that Mr. Gonzalez asserts the largest financial interest in this litigation.

### 3.    Mr. Gonzalez Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Mr. Gonzalez otherwise satisfies the requirements of Rule 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  To overcome the strong presumption entitling Mr. Gonzalez to appointment as Lead Plaintiff, the PSLRA requires proof that the presumptive Lead Plaintiff is inadequate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case, and any arguments to the contrary should be rejected.  "[I]n deciding a motion to serve as lead plaintiff, the moving plaintiff must make only a preliminary showing that the adequacy and typicality requirements under Rule 23 have been met." *See Garret Motion*, 2021 WL 211541, at *3.

Mr. Gonzalez's claims are typical of the claims of other investors in TD securities.  Like all other Class members, Mr. Gonzalez: (1) invested in TD securities during the Class Period; (2) invested at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market.

9

*Id.* (typicality met when movant "appear[s] to seek the same relief and advance the same legal theories as other class members").

Mr. Gonzalez is also adequate because he is capable of "fairly and adequately protect[ing] the interests of the class." Fed. R. Civ. P. 23(a)(4). He is a former Vice President of a mining and engineering firm, is an experienced investor that has been investing in the financial markets for nearly forty years, and is familiar with overseeing counsel. *See* ECF No. 22-1, ¶2. And Mr. Gonzalez has been actively involved in this matter and has already taken steps to protect absent Class members by filing *Gonzalez*, which helps ensure the putative Class will receive the best possible result. *See* ECF No. 22-1, ¶¶3-9.

Further, Mr. Gonzalez's interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Mr. Gonzalez and other Class members. *See Garret Motion*, 2021 WL 211541, at *3 (adequacy found when "[t]here is nothing in the record that suggests the [movant has] conflicts with other class members"). To the contrary, the interests of Mr. Gonzalez and absent Class members are squarely aligned because all suffered damages from their transactions in TD securities that were artificially inflated by Defendants' misconduct.

Mr. Gonzalez has also demonstrated his adequacy through his selection of BFA as Lead Counsel to represent the Class in this action. BFA is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively. *See* ECF Nos. 21, 22-6. As such, Mr. Gonzalez is perfectly typical and adequate to represent the Class.

10

### 4.    Mr. Tiessen Cannot Trigger the Presumption

Because Mr. Gonzalez has the largest financial interest in this case and otherwise satisfies the requirements of Rule 23, the competing motion filed by Mr. Tiessen should be denied. What's more, the *de minimis* loss of roughly $1,500 claimed by Mr. Tiessen taken together with his arguments advocating for the abbreviated class period asserted in *Tiessen* suggests that he is not adequately overseeing this litigation on behalf of the entire proposed Class and has relinquished control of this matter to his lawyers. *See Bosch*, 2022 WL 4285377, at *5 (refusing to appoint movant as Lead Plaintiff because its "extremely modest stake (at most, $621) is unlikely to provide the kind of incentive for close supervision of counsel that the PSLRA contemplates"). Mr. Tiessen also failed to make a *prima facie* showing of typicality and adequacy because he did not provide his trading information in TD securities during the broader period asserted in *Gonzalez,* as required by the PSLRA. *See* 15 U.S.C. § 78u-4 (a)(2)(A)(iv); ECF No. 19-1 at 3 (only providing transaction information for period of "02-29-2024 to 10-09-2024").

### B.  The Court Should Approve Mr. Gonzalez's Selection of Counsel

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Mr. Gonzalez's choice of counsel, BFA, is among the foremost securities law firms in the country. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharms. Indus. Ltd*., No. 3:17-cv-00558-SRU (D. Conn.). BFA also recently secured a $129

11

million resolution on behalf of investors in *The Police Retirement System of St. Louis v. Granite Construction Inc.*, No. 3:19-cv-04744-WHA (N.D. Cal.). Previously, in this District, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Sec. Litig.*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford Int'l Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.). BFA also secured a $219 million resolution in *In re Genworth Fin., Inc. Sec. Litig.*, 3:14-cv-00682-JAG (E.D. Va.), which represents the largest securities class action recovery ever achieved in the Eastern District of Virginia. Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the reasons discussed above and in his opening brief, Mr. Gonzalez respectfully requests that the Court: (1) appoint him to serve as Lead Plaintiff; (2) approve his selection of BFA as Lead Counsel for the putative Class; (3) consolidate all related actions pursuant to Rule 42(a); and (4) grant any such further relief as the Court may deem just and proper.

Dated: January 6, 2025                                              Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Joseph A. Fonti*
Joseph A. Fonti (Lead Trial Counsel)
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960
jfonti@bfalaw.com

-and-

Ross Shikowitz
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960

12

rshikowitz@bfalaw.com

-and-

Adam C. McCall (*pro hac vice* forthcoming)
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (212) 789-2303
Facsimile: (415) 445-4020
amccall@bfalaw.com

*Counsel for Plaintiff and Proposed Lead Plaintiff Pedro Gonzalez, and Proposed Lead Counsel for the Putative Class*

13