# EXHIBIT 3

# 2024 National Money Laundering Risk Assessment



**February 2024**

# AML/CFT Compliance Deficiencies

Financial institutions and entities in the United States are subject to the provisions of the BSA and play an important role in preventing and detecting illicit activity that threatens the integrity of the U.S. financial system. Many of these financial institutions and entities implement effective AML/CFT programs and controls to guard against their misuse. However, some have demonstrated significant AML/CFT failings.

## 1.  Banks

Over the past 10 years there has been a decline in the number of banks operating in the United States. Recent data indicates that there were approximately 4,672[311] Federal Deposit Insurance Corporation (FDIC)-insured commercial banks and savings institutions in existence as of the first quarter of 2023, compared to 7,019 from the first quarter of 2013.[312] This decline appears to be primarily driven by the consolidation and merger of existing financial institutions. A shift in traditional banking activities, and an increase in financial technology (*i.e.,* "FinTech") companies partnering with banks, a trend referred to as "banking-as-a-service" has also impacted the financial services landscape.[313]

Recent actions taken by the FinCEN and Federal Financial Institutions Regulatory Agencies (FFIRAs),[314] indicate that some banks still struggle to implement corrective actions for issues identified in examinations within the necessary time frames including implementing an adequate system of AML/CFT internal controls or filing SARs in a timely manner. This struggle is especially true for banks lacking a federal functional regulator, which only became subject to comprehensive federal BSA requirements in 2021.

New technologies employed by financial institutions have advanced financial crimes compliance but also exposed banks to risks. In 2022, the Office of the Comptroller of the Currency (OCC) cautioned that use of new technologies or entry into new markets may cause familiar risks to manifest in different ways or may necessitate new techniques to identify, measure, monitor, and control them appropriately.[315]

Recent activity shows that the emergence of virtual asset-focused firms may pose unique vulnerabilities as these entities evolve into financial institutions (*e.g.,* banks) as defined under the BSA and seek to resource themselves sufficiently to deal with their risk exposure and regulatory requirements. Other enforcement actions indicate that some banks have failed to follow the procedures to identify their customers in a timely manner and are not properly utilizing technological solutions to mitigate customer risk. More recently, in 2023, the OCC noted an increase in financial crime and AML/CFT risks in traditional banking products and services that align with this assessment.[316]

---

[311]    FDIC, "QUARTERLY BANKING PROFILE: FIRST QUARTER 2023, (2023, Vol.17, #2) (https://www.fdic.gov/analysis/quarterly-banking-profile/fdic-quarterly/2023-vol17-2/fdic-v17n2-1q2023.pdf.

[312]    FDIC, QUARTERLY BANKING PROFILE: THIRD QUARTER 2022, (2022, Vol.16, #2) https://www.fdic.gov/analysis/quarterly-banking-profile/fdic-quarterly/2022-vol16-2/fdic-v16n2-1q2022.pdf.

[313]    FRB, Governor Michelle W. Bowman, "The Consequences of Fewer Banks in the U.S. Banking System", (April 14, 2023) https://www.federalreserve.gov/newsevents/speech/bowman20230414a.htm.

[314]    As defined in 12 U.S.C. 3302(1).

[315]    OCC, "Semiannual Risk Perspective", (Fall 2022), https://www.occ.treas.gov/publications-and-resources/publications/semiannual-risk-perspective/files/pub-semiannual-risk-perspective-fall-2022.pdf.

[316]    OCC, "OCC Report Identifies Key Risks Facing Federal Banking System", (Spring 2023), https://www.occ.treas.gov/publications-and-resources/publications/semiannual-risk-perspective/files/semiannual-risk-perspective-spring-2023.html.

Further, OFAC's sanctions in response to Russia's invasion of the Ukraine in February 2022 are complex and evolving, requiring financial institution management to assess the applicability and impact of sanctions on their institutions and customers, including the impact of sanctions imposed by both the United States and other countries on foreign branches, overseas offices, and subsidiaries.[317]

*Case examples*

- In October 2023, the Federal Reserve Board (FRB) fined Metropolitan Commercial Bank (MCB), of New York, New York, approximately $14.5 million for violations of customer identification rules and deficient third-party risk management practices relating to the bank's issuance of reloadable prepaid card accounts.[318] In 2020, MCB opened prepaid card accounts for illicit actors using stolen identities who subsequently used the accounts to collect more than $300 million in illegally obtained state unemployment insurance benefits. By opening prepaid card accounts through a third-party program manager without having adequate procedures for verifying each applicant's true identity, MCB violated customer identification rules set forth in the BSA and its implementing regulations. The Board required MCB to improve its customer identification, customer due diligence, and third-party risk management programs.

- In September 2023, FinCEN issued a consent order imposing a civil money penalty of $15,000,000 on Bancrédito International Bank and Trust Corporation, an International Banking Entity operating in Puerto Rico for willfully violating the BSA between October 2015 and May 2022, by failing to timely report suspicious transactions to FinCEN; failing to establish a due diligence program for correspondent accounts established, maintained, administered, or managed in the United States for foreign financial institutions; and failing to implement and maintain an AML program.[319] Bancrédito did not comply with SAR reporting obligations, failing to file SARs for years and ignoring violations cited by its primary regulator, the Puerto Rico Office of the Commissioner of Financial Institutions. These transactions included suspicious activity by a Bancrédito executive and suspicious activity involving customers in the high-risk jurisdiction of Venezuela, including customers linked to foreign bribery and money laundering.

- In September 2023, FinCEN assessed a concurrent civil money penalty of $15 million against Shinhan Bank America (SHBA)for willfully violating the BSA from April 2016 through March 2021, including failure to implement and maintain an effective AML program that was reasonably designed to guard against money laundering and failing to timely report several hundred transactions to FinCEN involving suspicious financial activity by its customers processed by, at, or through the bank.[320] As a result, tens of millions of dollars in suspicious transactions were not reported to FinCEN in a timely manner, including transactions connected to tax evasion, money laundering, and other financial crimes. The FDIC issued a concurrent civil money penalty of $5 million against SHBA for violations of the BSA and its implementing AML regulations and for failure to comply with the requirements of an FDIC-issued consent order dated June 12, 2017.[321] The New York Department of Financial Services also assessed a civil penalty of $10 million for AML-related violations.

---

317    OCC, "SEMIANNUAL RISK PERSPECTIVE", (Spring 2022), https://www.occ.treas.gov/publications-and-resources/publications/semiannual-risk-perspective/files/pub-semiannual-risk-perspective-spring-2022.pdf.

318    The New York Department of Financial Services also took a joint action against Metropolitan. *See* FRB, "In the Matter of METROPOLITAN COMMERCIAL BANK New York, New York", https://www.federalreserve.gov/newsevents/pressreleases/files/enf20231019a1.pdf.

319    FinCEN, "FinCEN Announces $15 Million Civil Money Penalty against Bancrédito International Bank and Trust Corporation for Violations of the Bank Secrecy Act", (September 15, 2023), https://www.fincen.gov/news/news-releases/fincen-announces-15-million-civil-money-penalty-against-bancredito-international.

320    FinCEN, CONSENT ORDER IMPOSING CIVIL MONEY PENALTY, "IN THE MATTER OF Shinhan Bank America New York, NY: Number 2023-03", https://www.fincen.gov/sites/default/files/enforcement_action/2023-09-29/SHBA_9-28_FINAL_508.pdf.

321    FDIC, "In the Matter of SHINHAN BANK AMERICA NEW YORK, NEW YORK", https://www.fdic.gov/news/press-releases/2023/pr23080a.pdf.

- In April 2023, FinCEN assessed a $1.5 million civil money penalty on South Dakota-chartered The Kingdom Trust Company (Kingdom Trust) for violations of the BSA and its implementing regulations. As part of the consent order, Kingdom Trust admitted that it willfully failed to accurately and timely report hundreds of transactions to FinCEN involving suspicious activity by its customers, including transactions with connections to a trade-based money laundering scheme and multiple securities fraud schemes that were the subject of both criminal and civil actions. These failures stemmed from Kingdom Trust's severely underdeveloped and ad-hoc process for identifying and reporting suspicious activity.[322]

- In January 2023, the FRB issued a civil money penalty on Popular Bank $2.3 million for processing six Paycheck Protection Program (PPP) loans despite "having detected that the loan applications contained significant indications of potential fraud."[323]  Specifically, in addition to the processing and funding of the loans, the Bank failed to timely report the potential fraud which demonstrated "ineffective controls and procedures that resulted in violations of the Bank's internal BSA protocols".[324]

- In December 2022, Danske Bank pleaded guilty and agreed to forfeit $2 billion to resolve the United States' investigation into Danske Bank's fraud on U.S. banks related to the Bank's concealment of the state of its AML/CFT controls. According to court documents, Danske Bank defrauded U.S. banks regarding subsidiary Danske Bank Estonia's customers and anti-money laundering controls to facilitate access to the U.S. financial system for Danske Bank Estonia's high-risk customers, who resided outside of Estonia – including in Russia.[325] Specifically, between 2008 and 2016, Danske Bank Estonia – which Danske Bank acquired through an acquisition of Finland-based Sampo Bank in 2007 [326]--  processed $160 billion through U.S. banks on behalf of its high-risk customer base that resided outside of Estonia. By at least February 2014, as a result of internal audits, information from regulators, and an internal whistleblower, Danske Bank knew that some high-risk customers were engaged in highly suspicious and potentially criminal transactions, including transactions through U.S. banks. Danske Bank also knew that Danske Bank Estonia's anti-money laundering program and procedures did not meet Danske Bank's standards and were not appropriate to meet the risks associated with the high-risk customers. Instead of providing the U.S. banks that processed Danske Bank's transactions with truthful information, Danske Bank lied about the state of Danske Bank Estonia's AML compliance program, their transaction monitoring capabilities, and information regarding Danske Bank Estonia's customers and their risk profiles. Danske Bank did this allegedly to continue to gain access to the U.S. financial system.[327]

- In October 2022, OFAC issued a Finding of Violation to Nodus International Bank, an international financial entity in Puerto Rico, for violations of the Venezuelan Sanctions Regulations and the Reporting, Penalties, and Procedures Regulations. According to OFAC documentation, upon

---

[322] FinCEN, "FinCEN Assesses $1.5 Million Civil Money Penalty against Kingdom Trust Company for Violations of the Bank Secrecy Act", (April 26, 2023), https://www.fincen.gov/news/news-releases/fincen-assesses-15-million-civil-money-penalty-against-kingdom-trust-company.

[323] FRB, "Federal Reserve Board announces it has fined Popular Bank $2.3 million for processing six PPP loans despite having detected that the loan applications contained significant indications of potential fraud," (January 24, 2023), https://www.federalreserve.gov/newsevents/pressreleases/enforcement20230124a.htm.

[324] FRB, Order of Assessment of Civil Money Penalty, "In the Matter of Popular Bank, New York, New York", (January 20, 2023), https://www.federalreserve.gov/newsevents/pressreleases/files/enf20230124a1.pdf.

[325] DOJ, "Danske Bank Pleads Guilty to Fraud on U.S. Banks in Multi-Billion Dollar Scheme to Access the U.S. Financial System", (December 13, 2022) https://www.justice.gov/opa/pr/danske-bank-pleads-guilty-fraud-us-banks-multi-billion-dollar-scheme-access-us-financial.

[326] DOJ, SDNY, USA v. Danske Bank, https://www.justice.gov/d9/press-releases/attachments/2022/12/13/danske_information_508_compliant_0.pdf.

[327] DOJ, "Danske Bank Pleads Guilty to Fraud on U.S. Banks in Multi-Billion Dollar Scheme to Access the U.S. Financial System", (December 13, 2022), https://www.justice.gov/opa/pr/danske-bank-pleads-guilty-fraud-us-banks-multi-billion-dollar-scheme-access-us-financial.

determining that a designated individual held an interest in certain securities, Nodus sought to redeem the designated person's securities and place the proceeds into a blocked account, a process that would require a license from OFAC. Nodus compliance personnel relayed this to senior Nodus bank officials, but Nodus processed the securities redemption without a license. Separately, the designated individual also held other accounts and financial products at Nodus, which were blocked upon learning of the individual's designation. However, due to human error Nodus allowed an automatic debit from one of the blocked accounts to credit the designated person's blocked credit card account – the balance of which was written off by Nodus. Additionally, during the OFAC investigation, Nodus informed OFAC that the Bank lacked access to all records or communications related to the handling of the designated person's blocked property. The Bank also submitted several inconsistent Annual Reports of Blocked Property to OFAC.[328]

- In September 2022, the OCC assessed a $6 million civil money penalty against Sterling Bank and Trust, FSB, Southfield, Michigan. According to the consent order, in addition to prudential deficiencies, the Bank failed to implement an adequate system of AML/CFT internal controls and failed to file SARs in a timely manner.[329]

- In July 2022, OFAC announced that it reached an agreement with American Express National Bank (Amex), a subsidiary of the American Express Company that provides charge and credit card products and travel-related services to consumers and businesses, to settle the potential civil liability for 214 apparent violations of OFAC's Kingpin sanctions. According to OFAC documentation, Amex processed transactions for an account whose supplemental card holder was designated. A combination of human error and sanctions compliance program deficiencies enabled the account to process $155,189.42 worth of transactions.[330]

- In July 2022, OFAC issued a Finding of Violation to MidFirst Bank (MidFirst) for violations of the Destruction Proliferators Sanctions Regulations (WMDPSR). According to OFAC documentation, MidFirst maintained accounts for and processed 34 payments on behalf of two individuals added to OFAC's SDN List for 14 days post-designation. The violations stemmed from the Bank's misunderstanding of the frequency of its vendor's screening of new names added to the SDN List against its existing customer base; the vendor only engaged in screening of MidFirst's entire existing customer base once a month instead of daily.[331]

- In June 2022, the FDIC issued a consent order regarding Oxford University Bank of Oxford, Mississippi.[332] The order required the bank, among other things, to: (1) assess AML/CFT department staffing; (2) appoint a BSA officer; (3) develop, adopt, and implement appropriate CDD procedures; (4) develop and establish a system of internal controls; (5) establish and maintain an independent testing program for compliance with the BSA and its implementing rules and regulations; (6) develop an effective training program and revise the Bank's AML/CFT Risk Assessment; and (7) develop, adopt, and implement revised procedures and processes for monitoring and reporting suspicious activity.

---

328    OFAC, "OFAC Issues a Finding of Violation to Nodus International Bank, Inc. for Violations of the Venezuelan Sanctions Regulations and the Reporting, Penalties and Procedures Regulations" (October 18, 2022), https://ofac.treasury.gov/media/928941/download?inline#:~:text=The%20RPPR%20violations%20reflected%20Nodus's,of%20a%20civil%20monetary%20penalty.

329    OCC, Consent Order, "In the Matter of: Sterling Bank and Trust, FSB Southfield, Michigan", https://www.occ.gov/static/enforcement-actions/ea2022-039.pdf.

330    OFAC, "OFAC Settles with American Express National Bank for $430,500 Related to Apparent Violations of Foreign Narcotics Kingpin Sanctions Regulations" (July 15, 2022), https://ofac.treasury.gov/media/924406/download?inline.

331    OFAC, "OFAC Issues Finding of Violation to MidFirst Bank", (July 21, 2022) https://ofac.treasury.gov/media/924506/download?inline.

332    FDIC, Consent Order, "In the Matter of OXFORD UNIVERSITY BANK, OXFORD, MISSISSIPPI."

In April 2022, the OCC issued a consent order to Anchorage Digital Bank of Sioux Falls, South Dakota. The order found that Anchorage Digital Bank – a bank specializing in virtual assets – "failed to adopt and implement a compliance program that adequately covers the required AML/CFT program elements." The specific deficiencies that the Bank did not adopt and implement included: internal controls for customer due diligence and procedures for monitoring suspicious activity; appointment of BSA officer and staff; and training." [333]

## 2. Money Services Businesses

The term "money services business" is defined by regulation[334] as any of the following categories of business: (1) dealers in foreign exchange; (2) check cashers; (3) issuers or sellers of traveler's checks or money orders; (4) providers of prepaid access; (5) money transmitters; (6) U.S. Postal Service; or (7) sellers of prepaid access.[335] MSBs are non-bank financial institutions often used by customers who may have difficulty obtaining financial services at banks as well as those that send remittance payments abroad to family members in a cost-effective manner. Notably, the United States is the world's largest source of remittances, having sent approximately $72.1 billion abroad in 2021.[336]

There are approximately 26,472 registered MSBs in the United States,[337] as of December 15, 2023. MSBs, which are commonly used in the U.S. are continuously innovating, leveraging mobile and internet-based options to ensure convenient payment of funds across the world. Hundreds of MSBs offer services in virtual assets, and many VASPs in the United States are registered as MSBs.

IRS Small Business/Self Employed (SB/SE) is the entity delegated by FinCEN to examine MSBs compliance with obligations under the BSA. There has been no change to the previously reported decrease in principal exams by IRS SB/SE and the current examiner force is still half of what it was in 2010. In investigations in which IRS-CI is involved, 18 USC 1960 is often cited regarding unlicensed MSBs, specifically as a predicate offense in virtual currency cases involving money laundering charges. (*see* Virtual Asset Vulnerabilities for cases involving MSBs and other financial institutions offering virtual asset services).

In 2022, depository institutions submitted almost 3,580 SARs, citing potential unlicensed MSB activity.[338] Almost half of the SARs (49 percent) were filed in California, New York, Ohio, Texas, North Carolina, and Virginia collectively.[339] Many institutions identified grocery or convenience stores, gas stations, or liquor stores as potentially operating illegally as money transmitters, check cashers, or dealers in foreign exchange.[340] Additionally, individuals may misuse their personal or business bank accounts to transmit funds for customers on a commercial scale, thus operating as unregistered MSBs.

---

333   OCC, Consent Order, "In the Matter of: Anchorage Digital Bank, National Association Sioux Falls, South Dakota", https://www.occ.gov/static/enforcement-actions/ea2022-010.pdf.

334   31 C.F.R. § 1010.100(ff).  See also https://www.fincen.gov/am-i-msb.

335   See previous sections for vulnerabilities unique to check, money orders, and providers and sellers of prepaid access.

336   CRS, Remittances: Background and Issues for the 118th Congress, (May 10, 2023), https://sgp.fas.org/crs/misc/R43217.pdf; https://www.worldbank.org/en/news/press-release/2023/12/18/remittance-flows-grow-2023-slower-pace-migration-development-brief.

337   FinCEN, MSB Registrant Search, https://www.fincen.gov/msb-state-selector.

338   FinCEN, Depository Institution, Exhibit 5, Line 102, https://www.fincen.gov/reports/sar-stats/sar-filings-industry.

339   FinCEN, Depository Institution, Exhibit 3, Lines 15-20, https://www.fincen.gov/reports/sar-stats/sar-filings-industry.

340   GAO, "VIRTUAL CURRENCIES: Additional Information Could Improve Federal Agency Efforts to Counter Human and Drug Trafficking" (December 2021), https://www.gao.gov/assets/gao-22-105462.pdf.

# CONCLUSION

While many of the U.S.' most significant money laundering risks have remained consistent in recent years, a range of new factors have emerged that are reshaping the risk landscape in the United States. As this National Money Laundering Risk Assessment identifies, crimes like fraud, drug and human trafficking, cybercrime, corruption, and human smuggling remain the most significant proceeds-generating activities associated with money laundering. However, in the aftermath of the COVID-19 pandemic, and, other recent geopolitical, technological, and financial developments, the broader illicit finance ecosystem in which these crimes occur has substantially evolved. The result, therefore, is an evolved 'landscape' for money laundering risk.

A number of recent money laundering threats and vulnerabilities have become more significant and pernicious over the past two years. For example, criminals, scammers, and illicit actors are increasingly using virtual assets and digital peer-to-peer payment systems to engage in fraud and other crimes. CMLOs are no longer just emerging threats but are now dominant across the professional money laundering market. The wide availability of illicit fentanyl throughout the United States is indicative of the reach and scale of the transnational illicit supply chains supporting the production of these deadly substance.

This 2024 NMLRA aims to highlight to the public and private sectors these and other high-level threats to the U.S. financial system, both the continuing challenges as well as emerging vulnerabilities and risks that the United States faces. Only by enumerating these challenges can the United States work to prioritize and address them effectively.

As the case examples within this report demonstrate, there is robust coordination between financial oversight entities and law enforcement agencies to identify, prosecute, and ultimately dismantle money laundering activity within the United States. Indeed, it is due to the integrity, reliability, and security of the U.S. financial system that individuals and businesses both within the United States and across the world continue to use and invest their funds in the U.S. financial system—it is the most secure and trusted in the world.

The findings of the 2024 NMLRA, taken in tandem with the findings of the proliferation finance risk assessment and the terrorist financing risk assessment, will inform the forthcoming 2024 National Illicit Finance Strategy, which will lay out the roadmap to address the threats and vulnerabilities to the U.S. financial system, and ultimately strengthen the integrity of the U.S. financial system.