# EXHIBIT 26



**PRESS RELEASE**

# TD Bank Pleads Guilty to Bank Secrecy Act and Money Laundering Conspiracy Violations in $1.8B Resolution

Thursday, October 10, 2024

**For Immediate Release**

Office of Public Affairs

WASHINGTON — TD Bank N.A. (TDBNA), the 10th largest bank in the United States, and its parent company TD Bank US Holding Company (TDBUSH) (together with TDBNA, TD Bank) pleaded guilty today and agreed to pay over $1.8 billion in penalties to resolve the Justice Department's investigation into violations of the Bank Secrecy Act (BSA) and money laundering.

TDBNA pleaded guilty to conspiring to fail to maintain an anti-money laundering (AML) program that complies with the BSA, fail to file accurate Currency Transaction Reports (CTRs), and launder money. TDBUSH pleaded guilty to causing TDBNA to fail to maintain an AML program that complies with the BSA and to fail to file accurate CTRs.

TD Bank's guilty pleas are part of a coordinated resolution with the Board of Governors of the Federal Reserve Board (FRB), as well as the Treasury Department's Office of the Comptroller of the Currency (OCC) and Financial Crimes Enforcement Network (FinCEN).

"By making its services convenient for criminals, TD Bank became one," said Attorney General Merrick B. Garland. "Today, TD Bank also became the largest bank in U.S. history to plead guilty to Bank Secrecy Act program failures, and the first US bank in history to plead guilty to conspiracy to commit money laundering. TD Bank chose profits over compliance with the law — a decision that is now costing the bank billions of dollars in penalties. Let me be clear: our investigation continues, and no individual involved in TD Bank's illegal conduct is off limits."

"For years, TD Bank starved its compliance program of the resources needed to obey the law. Today's historic guilty plea, including the largest penalty ever imposed under the Bank Secrecy Act, offers an unmistakable lesson: crime doesn't pay — and neither does flouting compliance," said Deputy Attorney General Lisa Monaco. "Every bank compliance official in America should be reviewing today's charges as a case study of what not to do. And every bank CEO and board member should be doing the same. Because if the business case for compliance wasn't clear before — it should be now."

"For nearly a decade, TD Bank failed to update its anti-money laundering compliance program to address known risks. As bank employees acknowledged in internal communications, these failures made the bank an 'easy target' for the 'bad guys.' These failures also allowed corrupt bank employees to facilitate a criminal network's laundering of tens of millions of dollars," said Principal Assistant Attorney General Nicole M. Argentieri, head of the Justice Department's Criminal Division. "U.S. financial institutions are the first line of defense against money laundering and illicit

finance. When they participate in crime rather than prevent it, we will not hesitate to hold them accountable to the fullest extent of the law."

"TD Bank prioritized growth and convenience over following its legal obligations," said U.S. Attorney Philip R. Sellinger for the District of New Jersey. "As a result of staggering and pervasive failures in oversight, it willfully failed to monitor trillions of dollars of transactions – including those involving ACH transactions, checks, high-risk countries, and peer-to-peer transactions – which allowed hundreds of millions of dollars from money laundering networks to flow through the bank, including for international drug traffickers. The bank was aware of these risks and failed to take steps to protect against them, including for two networks prosecuted in New Jersey and elsewhere – one that dumped piles of cash on the bank's counters and another that allegedly withdrew amounts from ATMs 40 to 50 times higher than the daily limit for personal accounts."

According to court documents, between January 2014 and October 2023, TD Bank had long-term, pervasive, and systemic deficiencies in its U.S. AML policies, procedures, and controls but failed to take appropriate remedial action. Instead, senior executives at TD Bank enforced a budget mandate, referred to internally as a "flat cost paradigm," requiring that TD Bank's budget not increase year-over-year, despite its profits and risk profile increasing significantly over the same period. Although TD Bank maintained elements of an AML program that appeared adequate on paper, fundamental, widespread flaws in its AML program made TD Bank an "easy target" for perpetrators of financial crime.

Over the last decade, TD Bank's federal regulators and TD Bank's own internal audit group repeatedly identified concerns about its transaction monitoring program, a key element of an appropriate AML program necessary to properly detect and report suspicious activities. Nonetheless, from 2014 through 2022, TD Bank's transaction monitoring program remained effectively static, and did not adapt to address known, glaring deficiencies; emerging money laundering risks; or TD Bank's new products and services. For years, TD Bank failed to appropriately fund and staff its AML program, opting to postpone and cancel necessary AML projects prioritizing a "flat cost paradigm" and the "customer experience."

Throughout this time, TD Bank intentionally did not automatically monitor all domestic automated clearinghouse (ACH) transactions, most check activity, and numerous other transaction types, resulting in 92% of total transaction volume going unmonitored from Jan. 1, 2018, to April 12, 2024. This amounted to approximately $18.3 trillion of transaction activity. TD Bank also added no new transaction monitoring scenarios and made no material changes to existing transaction monitoring scenarios from at least 2014 through late 2022; implemented new products and services, like Zelle, without ensuring appropriate transaction monitoring coverage; failed to meaningfully monitor transactions involving high-risk countries; instructed stores to stop filing internal unusual transaction reports on certain suspicious customers; and permitted more than $5 billion in transactional activity to occur in accounts even after the bank decided to close them.

TD Bank's AML failures made it "convenient" for criminals, in the words of its employees. These failures enabled three money laundering networks to collectively transfer more than $670 million through TD Bank accounts between 2019 and 2023. Between January 2018 and February 2021, one money laundering network processed more than $470 million through the bank through large cash deposits into nominee accounts. The operators of this scheme provided employees gift cards worth more than $57,000 to ensure employees would continue to process their transactions. And even though the operators of this scheme were clearly depositing cash well over $10,000 in suspicious transactions, TD Bank employees did not identify the conductor of the transaction in required reports. In a second scheme between March 2021 and March 2023, a high-risk jewelry business moved nearly $120 million through shell accounts before TD Bank reported the activity. In a third scheme, money laundering networks deposited funds in the United States and quickly withdrew those funds using ATMs in Colombia. Five TD Bank employees conspired with this network and issued dozens of ATM cards for the money launderers, ultimately conspiring in the laundering of approximately $39 million. The Justice Department has charged over two dozen individuals across these schemes, including two bank insiders. TD Bank's plea agreement requires continued cooperation in ongoing investigations of individuals.

As part of the plea agreement, TD Bank has agreed to forfeit $452,432,302.00 and pay a criminal fine of $1,434,513,478.40, for a total financial penalty of $1,886,945,780.40. TD Bank has also agreed to retain an independent compliance monitor for three years and to remediate and enhance its AML compliance program. TD Bank has separately

reached agreements with the FRB, OCC, and FinCEN, and the Justice Department will credit $123.5 million of the forfeiture toward the FRB's resolution.

The Justice Department reached its resolution with TD Bank based on a number of factors, including the nature, seriousness, and pervasiveness of the offenses, as a result of which TD Bank became the bank of choice for multiple money laundering organizations and criminal actors and processed hundreds of millions of dollars in money laundering transactions. Although TD Bank did not voluntarily disclose its wrongdoing, it received partial credit for its strong cooperation with the Department's investigation and the ongoing remediation of its AML program. TD Bank did not receive full credit for its cooperation because it failed to timely escalate relevant AML concerns to the Department during the investigation. Accordingly, the total criminal penalty reflects a 20% reduction based on the bank's partial cooperation and remediation.

IRS Criminal Investigation, the Federal Deposit Insurance Corporation Office of Inspector General, and Drug Enforcement Administration investigated the case. The Morristown Police Department, U.S. Attorney's Office for the District of Puerto Rico, Homeland Security Investigations, U.S. Customs and Border Protection, and New York City Police Department provided substantial assistance.

Trial Attorneys D. Zachary Adams and Chelsea R. Rooney of the Criminal Division's Money Laundering and Asset Recovery Section (MLARS) and Assistant U.S. Attorneys Mark J. Pesce and Angelica Sinopole for the District of New Jersey prosecuted the case.

MLARS' Bank Integrity Unit investigates and prosecutes banks and other financial institutions, including their officers, managers, and employees, whose actions threaten the integrity of the individual institution or the wider financial system. Since its creation in 2010, the Bank Integrity Unit has prosecuted financial institutions for violations of the BSA, money laundering, sanctions, and other laws, imposing total penalties of over $25 billion.

This effort is part of an Organized Crime Drug Enforcement Task Forces (OCDETF) operation. OCDETF identifies, disrupts, and dismantles the highest-level criminal organizations that threaten the United States using a prosecutor-led, intelligence-driven, multi-agency approach. Additional information about the OCDETF Program can be found at www.justice.gov/OCDETF.

TD Bank US Holding Company Information

TD Bank N.A. Information

TD Bank US Holding Company Plea Agreement and Attachments

TD Bank N.A. Plea Agreement and Attachments

*Updated February 6, 2025*

**Components**

Office of the Attorney General  |  Criminal Division  |  Criminal - Money Laundering and Asset Recovery Section  |
Office of the Deputy Attorney General  |  USAO - New Jersey

Press Release Number: 24-1286

# Related Content

**VIDEO**

## Attorney General Pamela Bondi, DEA, & USAO New Mexico Announce Results of Historic Drug Bust

May 6, 2025

**PRESS RELEASE**

## Three Individuals Charged in Scheme to Defraud Department of Veterans Affairs of Over $9.1M

Three men were charged with participating in a scheme to defraud the U.S. Department of Veterans Affairs (VA) of over $9.1 million in education benefits, including funds from the Post...

May 2, 2025

**PRESS RELEASE**

## Mesa Man Indicted for Torching Tesla Property

Today, a federal grand jury in Phoenix returned a five-count indictment against Ian William Moses, 35, of Mesa, Arizona for Maliciously Damaging Property and Vehicles in Interstate Commerce by Means...

April 30, 2025

 **Office of Public Affairs**

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington DC 20530

Office of Public Affairs Direct Line

202-514-2007

Department of Justice Main Switchboard

202-514-2000