**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> THE TORONTO-DOMINION BANK, TD BANK, N.A., TD BANK US HOLDING COMPANY, AJAI K. BAMBAWALE, MICHAEL BOWMAN, MIA LEVINE, BHARAT MASRANI, LEOVIGILDO SALOM, and KELVIN VI LUAN TRAN, <br><br> Defendants. | Case No.: 1:24-cv-08032-AS <br><br><br> ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MICHAEL BOWMAN'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................................1

SUMMARY OF ALLEGATIONS...............................................................................................2

PLEADING STANDARD.............................................................................................................4

ARGUMENT.................................................................................................................................4

    I.  PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF A SECURITIES FRAUD
    CLAIM UNDER SECTION 10(B) AND RULE 10B–5...........................................................5

        A. Plaintiffs Fail to Plead a Material Misstatement or Omission .......................................5

        B. Plaintiffs Fail to Plead a Manipulative or Deceptive Act in Furtherance of Any
        Scheme to Defraud Investors..............................................................................................6

        C. Plaintiffs Fail to Plead Scienter....................................................................................9

    II.  PLAINTIFFS' SECTION 20(A) CLAIM SHOULD BE DISMISSED ............................11

CONCLUSION............................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007) ....................................................................................*passim*

*Boca Raton Firefighters & Police Pension Fund v. Bahash*,
    506 F. App'x 32 (2d Cir. 2012) ....................................................................................... 8

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ........................................................................................................ 8

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ........................................................................................... 9

*Eden Alpha CI LLP v. Polished.com Inc.*,
    763 F. Supp. 3d 270 (E.D.N.Y. 2025) ............................................................................ 8

*Fezzani v. Bear, Stearns & Co.*,
    716 F.3d 18 (2d Cir. 2013) ............................................................................................. 5

*In re AT&T/DirecTV Now Sec. Litig.*,
    480 F. Supp. 3d 507 (S.D.N.Y. 2020) .......................................................................... 10

*In re CarLotz, Inc. Sec. Litig.*,
    2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024) ............................................................ 7, 8

*In re DDAVP Direct Purchaser Antitrust Litig.*,
    585 F.3d 677 (2d Cir. 2009) ........................................................................................... 9

*In re Parmalat Sec. Litig.*,
    383 F. Supp. 2d 616 (S.D.N.Y. 2005) ............................................................................ 6

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
    625 F. Supp. 3d 164 (S.D.N.Y. 2022) ............................................................................ 9

*In re Wachovia Equity Sec. Litig.*,
    753 F. Supp. 2d 326 (S.D.N.Y. 2011) .......................................................................... 10

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011) ........................................................................................................ 5

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017) ............................................................................ 7

*Noto v. 22nd Century Grp., Inc.*,
    35 F.4th 95 (2d Cir. 2022) .............................................................................................. 6

*Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010) ........................................................................................... 9

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank*,
    11 F.4th 90 (2d Cir. 2021) ...................................................................................*passim*

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank*,
   2020 WL 4937461 (S.D.N.Y. Aug. 24, 2020) ............................................................... 10

*Santa Fe Indus., Inc. v. Green*,
   430 U.S. 462 (1977) ............................................................................................................ 8

*SEC v. First Jersey Sec., Inc.*,
   101 F.3d 1450 (2d Cir. 1996) ........................................................................................... 11

*Shapiro v. Cantor*,
   123 F.3d 717 (2d Cir. 1997) ............................................................................................... 8

*Shemian v. Rsch. In Motion Ltd.*,
   570 F. App'x 32 (2d Cir. 2014) ....................................................................................... 10

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   33 F. Supp. 3d 401 (S.D.N.Y. 2014) ............................................................................... 11

*Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*,
   2022 WL 17587853 (2d Cir. Dec. 13, 2022) ................................................................... 10

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ............................................................................................... 8

**STATUTES**

15 U.S.C. § 78u–4(b) ............................................................................................................ 4

**RULES**

Fed. R. Civ. P. 9(b) ...........................................................................................*passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................................... 1

**REGULATIONS**

17 C.F.R. § 240.10b–5(b) ...................................................................................................... 5

iii

Defendant Michael Bowman ("Mr. Bowman") respectfully submits this memorandum of law in support of his motion to dismiss the Consolidated Amended Class Action Complaint, dated May 27, 2025 (ECF No. 70, the "CAC"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act ("PSLRA").

## PRELIMINARY STATEMENT

Plaintiffs' claims against Mr. Bowman, the former Global Head of Anti-Money Laundering ("AML") Compliance at Toronto-Dominion Bank ("TD"), fail and should be dismissed with prejudice. By its own terms, the CAC alleges that Plaintiffs' securities fraud claims "arise[] from Defendants' false and misleading statements" in connection with TD's AML compliance program. (CAC ¶ 1.) The CAC, however, does not allege that Mr. Bowman had anything to do with those purported misstatements. He is not alleged to have made them, participated in making them, or disseminated them. Rather, the 344-paragraph CAC rarely mentions Mr. Bowman, and instead includes Mr. Bowman among those TD executives responsible for enterprise-wide AML compliance oversight and resourcing, entirely disconnected from any of the challenged statements.

Plaintiffs' claims fail for the numerous reasons set forth in the TD Defendants'[1] motion to dismiss (ECF No. 72, the "TD Motion to Dismiss"), which are incorporated by reference herein. Plaintiffs' claims also fail because they are uniquely flawed as to Mr. Bowman. Specifically, Plaintiffs' Section 10(b) claim fails to allege that Mr. Bowman made a material misstatement, committed a manipulative or deceptive act in furtherance of a scheme to defraud investors, or acted with scienter. First, the CAC does not allege that Mr. Bowman was the maker of any of the alleged

---

[1] The "TD Defendants" include Toronto-Dominion Bank, TD Bank, N.A., TD Bank US Holding Company, Ajai K. Bambawale, Bharat Masrani, Leovigildo Salom, and Kelvin Vi Luan Tran. As with the other TD Defendants, Mr. Bowman is alleged to have violated Section 10(b) of the Securities Exchange Act of 1934 (the "Act") and Rule 10b–5 and Section 20(a) of the Act. In addition to Mr. Bowman, Mia Levine, the former Bank Secrecy Act Officer and Head of U.S. AML Compliance in the Global AML function at TD Bank Group, was added to the CAC as a defendant.

material misrepresentations, as required to allege a claim under Rule 10b–5(b). Second, the CAC, which is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") and the PSLRA, fails to plead with particularity that Mr. Bowman committed any manipulative or deceptive act in furtherance of a scheme to defraud investors. Third, the CAC fails to allege facts demonstrating that Mr. Bowman had the motive or opportunity to commit fraud or any conscious misbehavior or recklessness given that the CAC fails to connect allegations of Mr. Bowman's general awareness of AML compliance deficiencies to any specific act by Mr. Bowman to conceal those deficiencies from investors.

Moreover, Plaintiffs' control person liability claim under Section 20(a) fails both because the CAC fails to state an underlying violation of the securities laws and because it fails to allege that Mr. Bowman asserted any actual control over any alleged securities law violators. This claim also fails because there are no allegations that Mr. Bowman participated in, let alone culpably participated in, any alleged fraud.

Accordingly, Plaintiffs' claims against Mr. Bowman should be dismissed with prejudice.

## SUMMARY OF ALLEGATIONS[2]

Mr. Bowman respectfully refers to the TD Motion to Dismiss, incorporated herein by reference, for a fulsome recounting of the factual background.

Mr. Bowman served as Global Head of AML Compliance for TD Bank Group from 2019 until November 2023, and previously as Global Co-Head of AML Compliance since approximately 2017. (CAC ¶ 26.) In these roles, Mr. Bowman was responsible for TD's global AML compliance program, including oversight of U.S. AML compliance. (*Id.* ¶¶ 50–52.) He also

---

[2] For purposes of this motion, Mr. Bowman accepts as true the CAC's well-pleaded allegations, but does not concede their truth and reserves the right to contest the accuracy of any of the facts alleged in the CAC.

2

participated in periodic briefings to the boards of TD and its U.S. banking entities regarding AML matters. (*Id.* ¶ 51.)

The CAC includes Mr. Bowman among TD executives alleged to have shared responsibility for enterprise-wide AML policy and resourcing and the day-to-day management of TD's global AML program. (*See* CAC ¶¶ 44, 50–52, 182, 204, 227.) The CAC alleges that TD's AML program suffered from deficiencies caused in part by underinvestment and operational limitations (*id.* ¶¶ 136–38), which the CAC attributes to a so-called "Flat Cost Paradigm," described as a directive to maintain flat year-over-year AML spending despite purported increased business growth and corresponding risk. (*Id.* ¶¶ 60–66, 164–71, 234.)

Notably, the CAC does not allege that Mr. Bowman made any statements to investors or drafted or approved any portion of the challenged statements. (*See* CAC ¶¶ 240–91 (Section VIII, "Actionable False and Misleading Statements and Omissions").) Instead, Plaintiffs generally allege that Mr. Bowman, along with the other TD Defendants, was part of a purported "scheme" to conceal AML deficiencies from the public by, among other things, engaging in an "undisclosed conspiracy" (*id.* ¶¶ 232–33), implementing the "Flat Cost Paradigm" (*id.* ¶¶ 234–35), "minimiz[ing] the scope of TD's transaction monitoring," (*id.* ¶ 236), "suppress[ing] known AML risks" (*id.* ¶ 237), "fail[ing] to file SARs and CTRs" (*id.* ¶ 238), and "misl[eading] regulators" (*id.* ¶ 239). The specific allegations as they pertain to Mr. Bowman focus on certain AML-related operational and budgetary decisions made in 2017 and 2019 prior to the Class Period (*id.* ¶¶ 234, 237), which have no relationship to any of the challenged statements.

## PLEADING STANDARD

Securities fraud claims are subject to the heightened pleading requirements of Rule 9(b) and the PSLRA. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). Additionally, the PSLRA requires that Plaintiffs specify "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1).

## ARGUMENT

Plaintiffs' claims against Mr. Bowman fail for the reasons articulated in the TD Motion to Dismiss, which he expressly adopts and incorporates herein, including:

- Plaintiffs impermissibly engage in "puzzle-pleading" by, among other things, failing to connect their falsity allegations with their entirely separate (and insufficient) scienter allegations. (ECF No. 72 at 24–25.)

- For each statement alleged to be false or misleading, Plaintiffs do not plausibly plead that the statement is false or misleading and/or actionable. (*Id.* at 13–23.)

- Plaintiffs do not plausibly plead scienter as to any defendant. (*Id.* at 23–35, 37.)

- Plaintiffs' "scheme liability" allegations do not plausibly plead reliance, scienter, that any defendant disseminated false or misleading statements, or that the purported acts in furtherance of the alleged scheme were "inherently deceptive." (*Id.* at 36–38.)

- Plaintiffs fail to plausibly plead loss causation. (*Id.* at 38–41.)

- Plaintiffs fail to plead control person liability as the CAC does not plausibly plead a primary violation of Section 10(b), culpable participation by any defendant in a primary violation of Section 10(b), or control of an alleged primary violator by any defendant. (*Id.* at 41–42.)

4

I.    **PLAINTIFFS FAIL TO PLEAD THE ELEMENTS OF A SECURITIES FRAUD CLAIM UNDER SECTION 10(B) AND RULE 10B–5**

In addition to the grounds for dismissal set forth in the TD Motion to Dismiss, Plaintiffs' Section 10(b) claims should be dismissed against Mr. Bowman for the following reasons: (1) Plaintiffs have not alleged a claim under Rule 10b–5(b) because the CAC does not allege that Mr. Bowman was the maker of any alleged false statement; (2) Plaintiffs have not alleged a claim for scheme liability under Rules 10b–5(a) and (c) because the CAC does not allege that Mr. Bowman engaged in any deceptive acts in furtherance of an alleged scheme to defraud investors; and (3) Plaintiffs have not alleged a strong inference of scienter with respect to Mr. Bowman.

### A.  Plaintiffs Fail to Plead a Material Misstatement or Omission

Under Rule 10b–5(b), it is unlawful for "any person, directly or indirectly, . . . [t]o make any untrue statement of a material fact . . . in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(b). To adequately plead a claim under Rule 10b–5(b), Plaintiffs must allege that Mr. Bowman "made" a material misstatement or omission. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011). "For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id*. at 142; *see also Fezzani v. Bear, Stearns & Co.*, 716 F.3d 18, 25 (2d Cir. 2013) ("[O]nly the person who communicates the misrepresentation is liable in private actions under Section 10(b).").

While the CAC alleges misstatements in certain filings, press releases, and investor calls, not a single one of those statements is attributed to Mr. Bowman. Indeed, Plaintiffs do not mention Mr. Bowman by name once in the 27-page section of the CAC entitled "Actionable False and Misleading Statements and Omissions." (CAC ¶¶ 240–91; *see also id.* ¶ 242 (stating that "[f]or the

avoidance of doubt, all the affirmative statements alleged to be actionably false and misleading when made are set out in this Section VIII").) That is because, under the facts as alleged in the CAC, Mr. Bowman never "made" any of the challenged statements, nor did he have "ultimate authority" over any such statements. (*See id*. ¶¶ 240–91.)

Accordingly, because Plaintiffs cannot point to a single misstatement or omission that Mr. Bowman "made," the Court should dismiss Plaintiffs' Rule 10b–5(b) claim against Mr. Bowman. *See, e.g.*, *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 104–05 (2d Cir. 2022) (affirming dismissal of 10b–5(b) claims against individual defendants where none of them were the "makers" of any allegedly misleading statements).

### B. Plaintiffs Fail to Plead a Manipulative or Deceptive Act in Furtherance of Any Scheme to Defraud Investors

Rules 10b–5(a) and (c) require Plaintiffs to allege "(1) that [Mr. Bowman] committed a manipulative or deceptive act, (2) in furtherance of the alleged scheme to defraud [investors], (3) with scienter, and (4) reliance." *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank*, 11 F.4th 90, 105 (2d Cir. 2021) ("*Plumbers II*") (citation omitted). "To maintain a 10b–5(a) or (c) claim, a plaintiff must specify 'what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities at issue.'" *Id.* (quoting *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).

Plaintiffs fail to plead that Mr. Bowman committed a manipulative or deceptive act. Plaintiffs' scheme liability allegations lump Mr. Bowman into a group of other executives purportedly responsible for AML compliance, without attributing any specific alleged deceptive act to Mr. Bowman. (*See, e.g.*, CAC ¶ 234 ("[t]he Flat Cost Paradigm . . . was faithfully implemented by senior bank executives"); *id*. ¶ 236 ("GAML executives—which would include

6

Defendant Bowman—removed numerous countries from TD's monitoring system"); *id.* ¶ 239 (alleging that "AML executives"—which "would have included" Mr. Bowman based on his job title—misled OCC examiners during supervisory reviews).) None of these allegations satisfy the heightened pleading standards of Rule 9(b) and the PSLRA, as they do not particularize what conduct by Mr. Bowman was allegedly deceptive or when it occurred. *See, e.g.*, *In re CarLotz, Inc. Sec. Litig.*, 2024 WL 3924708, at *4–5 (S.D.N.Y. Aug. 23, 2024) (dismissing scheme liability claim where plaintiffs failed to identify "which specific acts constituted an alleged scheme," when they occurred, who performed them, or "what about the [acts] was deceptive" (citation omitted)).[3]

Moreover, Plaintiffs fail to allege that Mr. Bowman took any act "in furtherance of a scheme to defraud [investors]." *See Plumbers II*, 11 F.4th at 105. Plaintiffs allege that Mr. Bowman was among those who allegedly mismanaged and underspent on the AML compliance program (CAC ¶¶ 232, 234, 236–37), but plead no facts to suggest that Mr. Bowman participated in any alleged effort to "conceal[] the true state of TD's deficient Global AML Program from the government and the investing public." (*Id.* ¶ 231.)[4] *See CarLotz*, 2024 WL 3924708, at *4–5 (no scheme to defraud where "[p]laintiffs d[id] not say . . . that [d]efendants concealed that Acamar was a SPAC, misrepresented the nature of a SPAC, or failed to disclose

---

[3] Where Plaintiffs specify when an alleged act occurred, those acts took place years before the Class Period, rendering them inactionable. *See* (CAC ¶ 234 (alleging that Mr. Bowman halted a 2017 AML project due to cost concerns), *id.* ¶ 237 (alleging that Mr. Bowman declined to implement proposed AML changes in 2019 based on the potential impact to the "customer experience")); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017) (conduct "that occurred years before the class period . . . is far too remote to be 'in connection with the purchase or sale of any security'").

[4] Plaintiffs allege that "AML executives," which "would have included" Mr. Bowman based on his job title, misled OCC examiners during supervisory reviews between 2017 and 2021. (CAC ¶ 239.) In addition to the fact that alleged statements to the OCC are not statements to investors, the CAC fails to identify who made any such statements to the OCC, when or in what context the statements were made, or what was said that was false or misleading. Plaintiffs simply infer Mr. Bowman's involvement from his position, without alleging any direct participation or factual basis tying him to the alleged misrepresentations to the regulator. Such speculative, group-based pleading is insufficient. *See ATSI*, 493 F.3d at 99 (Rule 9(b) requires plaintiffs to "specify the statements that the plaintiff contends were fraudulent, [] identify the speaker, [] state where and when the statements were made, and [] explain why the statements were fraudulent").

7

how much due diligence was done"); *see also Plumbers II,* 11 F.4th at 95, 105 (affirming dismissal of allegations regarding "a failure to follow anti-money laundering (AML) protocols in the [defendant bank's] Estonian Branch" as the plaintiffs did not "articulate with precision the contours of an alleged scheme to defraud investors" with respect to the alleged AML misconduct); *Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 318 (E.D.N.Y. 2025) (holding that allegations of fraud, forgery, and document falsification did "not establish a deceptive scheme to defraud *investors*" as they did "not actually describe a scheme *in connection with the purchase or sale of securities*") (emphasis in original).

Absent such allegations, Mr. Bowman's alleged involvement in any AML compliance failures (*see* CAC ¶¶ 233(b), 234, 236, 237, 239), standing alone, would amount to no more than corporate mismanagement and is insufficient to state a claim against Mr. Bowman for securities fraud. *See, e.g.*, *Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 36 (2d Cir. 2012) ("Section 10(b) . . . does not reach mere 'instances of corporate mismanagement.'" (quoting *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977))); *CarLotz*, 2024 WL 3924708, at *5 ("[I]t's clear that an act must be 'inherently deceptive' to give rise to scheme liability . . . allegations of 'corporate mismanagement' do not suffice." (citations omitted)).[5]

Accordingly, Plaintiffs fail to plead that Mr. Bowman engaged in any manipulative or deceptive act in furtherance of a scheme to defraud investors.[6]

---

[5] In the most generous light, Plaintiffs' allegations are an improper attempt to impose "aiding and abetting" liability on Mr. Bowman by virtue of his oversight of the AML compliance program. Not only have Plaintiffs failed to adequately plead any such claims, but "a private plaintiff may not maintain an aiding and abetting suit under [Section] 10(b)[.]" *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994); *see also Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (holding that conduct that is "merely aiding and abetting, . . . no matter how substantial that aid may be, . . . is not enough to trigger liability under Section 10(b)" (quoting *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997))).

[6] As articulated in the TD Motion to Dismiss, Plaintiffs also have not adequately alleged reliance as to any of Mr. Bowman's alleged manipulative or deceptive acts. (*See* ECF No. 72 at 36–37.) Here, "Plaintiffs do not allege that any product of" Bowman's alleged acts "was made known to or relied upon by investors . . . ." *See In re Turquoise Hill*

### C. Plaintiffs Fail to Plead Scienter

The CAC separately fails to state a Section 10(b) claim against Mr. Bowman because it does not allege a strong inference of scienter.[7] In order to adequately allege scienter, Plaintiffs must allege facts "(1) showing that [Mr. Bowman] had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI*, 493 F.3d at 99. Because the CAC makes no particularized allegation regarding Mr. Bowman's motive or opportunity to commit fraud, "the strength of the circumstantial allegations [against him] must be correspondingly greater." *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 199 (2d Cir. 2009) (citation omitted); (*see also* TD Motion to Dismiss (ECF No. 72 at 26)).

As an initial matter, as set forth in the TD Motion to Dismiss (*see* ECF No. 72 at 29), many of Plaintiffs' scienter allegations fail because they amount to improper group pleading as they do not specifically plead any facts relating to Mr. Bowman. (*See* CAC ¶¶ 172, 176, 179, 193, 195, 196–200, 202, 205, 208–13, 216–219, 221, 223, and 225.)[8] *See, e.g.*, *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.").

The few remaining allegations that specifically reference Mr. Bowman fare no better. In sum, Plaintiffs allege that Mr. Bowman was generally aware of AML compliance deficiencies but

---

*Res. Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 254 (S.D.N.Y. 2022); *see also Pac. Inv. Mgmt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010) (rejecting scheme liability where defendants' conduct was not relied on by the public).

[7] Plaintiffs also fail to adequately plead scienter against Mr. Bowman for the reasons articulated in the TD Motion to Dismiss. (*See* ECF No. 72 at 23–35, 37.)

[8] These allegations are deficient for the related reason that they are devoid of any particularized facts regarding Mr. Bowman.

"failed to remediate" them. (*See* CAC ¶¶ 180–82, 227.) Not only do these generalized allegations run afoul of the PSLRA's particularity requirement, but Plaintiffs fail to link Mr. Bowman's awareness of AML compliance deficiencies to any specific act by Mr. Bowman to conceal those deficiencies from investors. *See Plumbers & Steamfitters Loc. 773 Pension Fund v. Danske Bank*, 2020 WL 4937461, at *7 (S.D.N.Y. Aug. 24, 2020) ("*Plumbers I*") (finding no scienter where plaintiffs "allege[d] in a conclusory way that Defendants and employees of [defendant bank] received reports [on bank's AML issues] . . . and fail[ed] to connect any of those reports to specific representations by specific persons during the relevant time periods"), *aff'd*, *Plumbers II*, 11 F.4th 90; *see also In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 531 (S.D.N.Y. 2020) (finding no scienter where, even "[a]ssuming Defendants reviewed such information and assuming that it showed a 'high' [indicator of risk], Plaintiffs [did] not adequately explain how such information contradicted or undermined any" alleged representation to investors), *aff'd sub nom. Steamfitters Loc. 449 Pension Plan v. AT&T Inc.*, 2022 WL 17587853 (2d Cir. Dec. 13, 2022).

Regardless, the CAC's allegations that Mr. Bowman knew of deficient AML practices and should have "remediated" the same do not suffice to establish an intent to defraud investors.[9] *See, e.g.*, *Shemian v. Rsch. In Motion Ltd.*, 570 F. App'x 32, 35 (2d Cir. 2014) (rejecting argument that scienter was established "based on the Individual Defendants' respective corporate positions at [the company] and their exposure to 'facts critical to the company's core operations or core products . . . .'"); *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 367 (S.D.N.Y. 2011) (dismissing 10(b) claims on scienter grounds because "[b]ad judgment and poor management are not fraud").

---

[9] Nor can Plaintiffs rely on Mr. Bowman's separation from TD to establish scienter. (*See* TD Motion to Dismiss (ECF No. 72 at 30–31).)

10

Accordingly, the Court should dismiss Plaintiffs' Section 10(b) claims because Plaintiffs fail to plead that Mr. Bowman acted with the requisite scienter.

## II.  PLAINTIFFS' SECTION 20(A) CLAIM SHOULD BE DISMISSED

The CAC fails to state an underlying violation of the securities laws. On this basis alone, the Section 20(a) claim against Mr. Bowman should be dismissed. *See, e.g.*, *ATSI*, 493 F.3d at 108.

But even if the CAC properly pleaded a primary violation, which it does not, the Section 20(a) claim against Mr. Bowman warrants dismissal because Plaintiffs fail to allege that Mr. Bowman asserted actual control over any securities law violators. *See, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472–73 (2d Cir. 1996); (*see also* TD Motion to Dismiss (ECF No. 72 at 41–42)). Moreover, the Section 20(a) claim against Mr. Bowman should be dismissed because there are no particularized allegations suggesting Mr. Bowman's participation, much less culpable participation, in any alleged fraud. *See Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014); (*see also* TD Motion to Dismiss (ECF No. 72 at 41–42)). As discussed in detail above, the CAC fails to identify any involvement by Mr. Bowman in any alleged fraud on investors and thus cannot adequately plead culpable participation.

Accordingly, Plaintiffs' Section 20(a) claim against Mr. Bowman should be dismissed.

11

**CONCLUSION**

For the reasons stated above, the CAC should be dismissed as against Mr. Bowman with

prejudice, as amendment would be futile.

Dated: New York, New York
       May 30, 2025

Respectfully submitted,

LEVINE LEE LLP

By:    /s/ Seth L. Levine
       _____
       Seth L. Levine (Lead Trial Counsel)
       Alison M. Bonelli
       400 Madison Ave.
       New York, New York 10017
       (212) 223-4400
       slevine@levinelee.com
       abonelli@levinelee.com

       *Attorneys for Defendant Michael Bowman*

12

**LOCAL CIVIL RULE 7.1(c) CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), the total number of words in the foregoing memorandum of law, inclusive of footnotes and exclusive of the caption, indices, tables, signatures blocks, and certificates, is 3,789.

Dated: May 30, 2025

_/s/ Seth L. Levine_
Seth L. Levine