**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 1:24-cv-08032-AS |
| v. | Hon. Arun Subramanian |
| THE TORONTO-DOMINION BANK, TD BANK, N.A., TD BANK US HOLDING COMPANY, AJAI K. BAMBAWALE, MICHAEL BOWMAN, MIA LEVINE, BHARAT MASRANI, LEOVIGILDO SALOM, and KELVIN VI LUAN TRAN, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT MIA LEVINE'S MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000

-and-

767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Defendant Mia Levine*

May 30, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................... 1

RELEVANT FACTUAL BACKGROUND.................................................................................... 2

ARGUMENT................................................................................................................................... 3

    I.       THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR THE
           REASONS SET FORTH BY THE TD DEFENDANTS ...................................... 3

    II.      THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TO MS.
           LEVINE FOR SEVERAL ADDITIONAL, INDEPENDENT REASONS ........... 4

         A.      Plaintiffs Fail To Plead A Section 10(b) Claim Against Ms. Levine ......... 4

               1.     Plaintiffs Fail To Allege That Ms. Levine Was The Maker
                     Of A Misstatement For Purposes Of Rule 10b-5(b) ....................... 4

               2.     Plaintiffs' "Scheme Liability" Claim Against Ms. Levine
                     Under Rules 10b-5(a) and (c) Fails As A Matter Of Law .............. 5

               3.     Plaintiffs Fail To Allege The Requisite "Strong Inference"
                     That Ms. Levine Acted With Scienter ........................................... 8

         B.      Plaintiffs Fail To Plead A Section 20(a) Claim Against Ms. Levine........ 12

CONCLUSION............................................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*In re Alstom SA Sec. Litig.*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................................................12, 13

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
    28 F.4th 343 (2d Cir. 2022) .........................................................................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................................3

*ATSI Commc'ns, Inc. v Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..................................................................................................3, 6, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................................................................................3

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*,
    811 F. Supp. 2d 853 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel
    OAO*, 475 F. App'x 353 (2d Cir. 2012) ...............................................................................11, 12

*In re Cannavest Corp. Sec. Litig.*,
    307 F. Supp. 3d 222 (S.D.N.Y. 2018)......................................................................................7, 8

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
    450 F. Supp. 3d 379 (S.D.N.Y. 2020)........................................................................................10

*Das v. Rio Tinto PLC*,
    332 F. Supp. 3d 786 (S.D.N.Y. 2018).....................................................................................4, 10

*Diabat v. Credit Suisse Grp. AG*,
    2024 WL 4252502 (S.D.N.Y. Sept. 19, 2024)...........................................................................12

*ECA & Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)........................................................................................................10

*Friedman v. JP Morgan Chase & Co.*,
    2016 WL 2903273 (S.D.N.Y. May 18, 2016), *aff'd*, 689 F. App'x 39 (2d Cir.
    2017) ...........................................................................................................................................13

*In re Inv. Tech. Grp., Inc. Sec. Litig.*,
    2018 WL 1449206 (S.D.N.Y. Mar. 23, 2018) ...........................................................................13

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
    564 U.S. 135 (2011)......................................................................................................................4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)...................................................................................9

*In re Livent, Inc. Noteholders Sec. Litig.*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001)...................................................................13

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
    277 F. Supp. 3d 500 (S.D.N.Y. 2017)...........................................................5, 6, 7

*N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC
    Partners, Inc.*,
    2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)........................................................12

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
    603 F.3d 144 (2d Cir. 2010)...................................................................................8

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
    11 F.4th 90 (2d Cir. 2021) .....................................................................................6

*Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of
    Com.*,
    694 F. Supp. 2d 287 (S.D.N.Y. 2010)...................................................................11

*Schiro v. Cemex, S.A.B. de C.V.*,
    396 F. Supp. 3d 283 (S.D.N.Y. 2019)...................................................................10

*SEC v. Kelly*,
    817 F. Supp. 2d 340 (S.D.N.Y. 2011).....................................................................8

*SEC v. Rio Tinto plc*,
    41 F.4th 47 (2d Cir. 2022) ......................................................................................8

*In re Smith Barney Transfer Agent Litig.*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012)...................................................................13

*Steinberg v. Ericsson LM Tel. Co.*,
    2008 WL 5170640 (S.D.N.Y. Dec. 10, 2008) ......................................................10

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148 (2008).................................................................................................8

*In re Supercom Inc. Sec. Litig.*,
    2018 WL 4926442 (S.D.N.Y. Oct. 10, 2018)..........................................................8

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).................................................................................................9

*In re Tupperware Brands Corp. Sec. Litig.*,
2023 WL 5091802 (11th Cir. Aug. 8, 2023).................................................................5

*Villare v. Abiomed, Inc.*,
2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021)..............................................................9

*In re Vroom, Inc. Sec. Litig.*,
2025 WL 862125 (S.D.N.Y. Mar. 18, 2025).................................................................10

*In re Weight Watchers Int'l Inc. Sec. Litig.*,
504 F. Supp. 3d 224 (S.D.N.Y. 2020)..........................................................................5

**Statutes, Rules & Regulations**

15 U.S.C. § 78j(b).......................................................................................................4

15 U.S.C.  § 78u-4(b)...............................................................................................1, 8

Fed. Rule Civ. Proc. 9(b) ........................................................................................1, 3

Fed. Rule. Civ. Proc. 12(b)(6)..................................................................................1, 3

Defendant Mia Levine respectfully submits this memorandum of law in support of her motion to dismiss, in its entirety and with prejudice, Plaintiffs' Consolidated Amended Class Action Complaint (the "Amended Complaint" or "AC"), ECF No. 70, under Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) (the "PSLRA").

## PRELIMINARY STATEMENT

Defendant Mia Levine is a former employee of TD Bank, N.A. ("TDBNA"), a subsidiary of Toronto-Dominion Bank ("TD Bank"), who is not alleged to have had any responsibility for, or even to have participated in, *any* public disclosures, including those challenged in the Amended Complaint.  Nevertheless, Plaintiffs claim that she bears liability for those disclosures under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") based entirely on her role in TD Bank's AML compliance program and actions she allegedly took in connection with that role *prior to* the putative class period.  Indeed, Plaintiffs' theory is as baseless as it is attenuated, as it rests on a debunked theory of fraud by hindsight:  that the *post facto* admission of liability in the TDBNA and TD Bank US Holding Company ("TDBUSH") plea agreements with respect to the AML program gives rise to independent disclosure-based liability under Sections 10(b) and 20(a) to Plaintiffs and other TD Bank stockholders.  But, again, Ms. Levine never had anything to do with the challenged disclosures, and Plaintiffs fail to allege, or even suggest, otherwise.

Moreover, Plaintiffs' claims against Ms. Levine fail to allege facts supporting scienter. Although Plaintiffs try to retroactively impute knowledge of purported wrongdoing relating to the challenged disclosures to Ms. Levine, the AML-related allegations themselves support the *opposite* conclusion, namely, that Ms. Levine was a TDBNA employee, who reported to more senior executives and lacked any material decision-making authority, and who performed her

AML-related job function to the best of her abilities, within the cost parameters to which her work was subject.  The Amended Complaint, accordingly, should be dismissed.

## RELEVANT FACTUAL BACKGROUND

Plaintiffs allege that Ms. Levine served as the BSA Officer and the Head of U.S. AML in the Global AML function at TD Bank Group from May 2019 to May 2023.  AC ¶¶ 27, 50. Plaintiffs allege that she was appointed by the TDBUSH, TDBNA, and TD Group U.S. Holdings LLC boards of directors, and reported to those boards with respect to TD Bank's Global AML Program.  *Id.* ¶ 27.  Plaintiffs also allege that Ms. Levine reported directly to Defendant Michael Bowman, whom they allege was then-Global Head of AML Compliance for TD Bank Group.  *Id.* ¶ 50.  According to the Amended Complaint, Ms. Levine had responsibilities relating to (although not final authority over) the AML program, "including establishing the budget and managing staffing, assessing TDBNA's AML risk, approving policies and procedures, and presenting to the TDBNDA and TDBUSH boards of directors."  *Id.* ¶ 52.  Plaintiffs concede that in her role, Ms. Levine was "required to obtain Bowman's approval for any material decisions relating to US-AML."  *Id.*  The Amended Complaint, however, does not contain *any* allegations that Ms. Levine had even remote responsibility for, or other involvement in, *any* public disclosures, including those upon which her (and the other defendants') liability is purportedly predicated.

On October 10, 2024, TD Bank announced plea agreements by TDBNA and TDBUSH with the U.S. Department of Justice, as well as consent orders with the Office of the Comptroller of the Currency (the "OCC"), the Federal Reserve, and Financial Crimes Enforcement Network of the U.S. Department of Treasury concerning its AML controls.  *Id.* ¶ 312.  Shortly thereafter, Plaintiffs initiated this purportedly disclosure-related case against TD Bank and certain of its senior executives, alleging that the defendants made false or misleading statements regarding TD Bank's AML program.  ECF No. 1 ¶ 3.  Based on those allegations, Plaintiffs asserted claims under

2

Sections 10(b) and 20(a) of the Exchange Act.  Plaintiffs subsequently amended their complaint, re-asserting their disclosure-based claims, but adding a number of additional defendants, including Ms. Levine, despite her wholesale lack of involvement in the disclosures.

## ARGUMENT

To avoid dismissal under Rule 12(b)(6), Plaintiffs must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint offering nothing more than legal conclusions, naked assertions, mere conclusory statements, or implausible inferences will not suffice.  *Id.*; *Twombly*, 550 U.S. at 555.  Moreover, a complaint alleging claims under the federal securities laws must satisfy the "heightened pleading requirements" of Rule 9(b) and the PLSRA, which require Plaintiffs to plead their fraud claims "with particularity." *ATSI Commc'ns, Inc. v Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Considered together, Plaintiffs' allegations and the documents before this Court demonstrate that Plaintiffs fail to satisfy the plausibility standard of *Twombly* and *Iqbal*, much less the heightened pleading standards of Rule 9(b) and the PSLRA.

**I.      THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR THE REASONS SET FORTH BY THE TD DEFENDANTS**

Ms. Levine expressly adopts and incorporates the arguments advanced by the TD Defendants[1] in support of their motion to dismiss the Amended Complaint, ECF No. 72, which arguments apply equally to Ms. Levine and similarly require her dismissal.

---

[1] The "TD Defendants" include TD Bank, TDBNA, TDBUSH, Ajai K. Bambawale, Bharat Masrani, Leovigildo Solom, and Kelvin Vi Luan Tran.

## II.    THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TO MS. LEVINE FOR SEVERAL ADDITIONAL, INDEPENDENT REASONS

In addition to the TD Defendants' dispositive arguments, the Amended Complaint should be dismissed with respect to Ms. Levine for several independent reasons. *First*, Plaintiffs' claim under Section 10(b) of the Exchange Act should be dismissed because Ms. Levine was neither the maker of any of the alleged misstatements, nor otherwise engaged in any scheme to defraud TD Bank's stockholders. *See* Points II.A.1 and II.A.2, *infra*. *Second*, Plaintiffs fail to allege the requisite "strong inference" of Ms. Levine's scienter necessary to support their Section 10(b) claim. *See* Point II.A.3, *infra*. *Finally*, Ms. Levine cannot be held secondarily liable under Section 20(a) of the Exchange Act because: (i) no primary violation of Section 10(b) has been pled; and (ii) the Amended Complaint's conclusory allegations of "control" and "culpable participation" are insufficient as a matter of law. *See* Point II.C, *infra*.

### A.    Plaintiffs Fail To Plead A Section 10(b) Claim Against Ms. Levine

Section 10(b) of the Exchange Act prohibits the use of any "manipulative or deceptive device or contrivance" "in connection with the purchase or sale of any security." 15 U.S.C. § 78j(b). Plaintiffs advance two deficient theories of liability under Section 10(b): first, that Ms. Levine made false and misleading statements in violation of Rule 10b-5(b); and, second, that Ms. Levine engaged in a scheme to defraud in violation of Rules 10b-5(a) and (c). AC ¶¶ 330-35. Under either theory, however, Plaintiffs' Section 10(b) claim against Ms. Levine fails.

#### 1.    Plaintiffs Fail To Allege That Ms. Levine Was The Maker Of A Misstatement For Purposes Of Rule 10b-5(b)

To state a claim against Ms. Levine for alleged misstatements under Rule 10b-5(b), it is axiomatic that Ms. Levine "must have 'made' the material misstatements." *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011); *see also Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 805 (S.D.N.Y. 2018) ("[W]here there are multiple defendants, the complaint must allege

4

that each particular defendant 'made' the material misstatements."). Although Plaintiffs challenge various statements as purportedly false and misleading (AC ¶¶ 240-91), Plaintiffs do not allege that Ms. Levine was, in fact, the maker of *any* of those statements. Indeed, Ms. Levine was not quoted in—nor did she sign, review, or otherwise affirm the accuracy of—*any* of the alleged misstatements. At most, Plaintiffs speculate that Ms. Levine was among certain executives that allegedly deceived OCC examiners. *Id.* ¶ 239. But Plaintiffs do not challenge any statements to the OCC in connection with their Rule 10b-5(b) claim regarding statements made *to investors*; further, such vague, threadbare allegations cannot support a claim under that rule in any event. *See, e.g.*, *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 262-63 (S.D.N.Y. 2020) (finding that "conclusory allegations" are insufficient to show that a defendant was the "maker" of an alleged statement); *see also cf. In re Tupperware Brands Corp. Sec. Litig.*, 2023 WL 5091802, at *6 (11th Cir. Aug. 8, 2023) (noting that allegedly "engaging in fraudulent conduct is not the same as being responsible for public statements with material misrepresentations or omissions about that fraudulent conduct").

### 2. Plaintiffs' "Scheme Liability" Claim Against Ms. Levine Under Rules 10b-5(a) and (c) Fails As A Matter Of Law

Plaintiffs' attempt to repackage their misstatements claim into a "scheme liability" claim likewise fails. Scheme liability requires particularized allegations "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017).

*No Deceptive Act.* To sufficiently allege a deceptive act, Plaintiffs must allege with particularity "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and the effect the scheme had on investors in the securities

at issue." *Id*. Plaintiffs' scheme claim fails right out of the gate, as Plaintiffs fail to disentangle Ms. Levine's alleged deceptive acts from those of the other defendants. For example, Plaintiffs contend that "Defendant TDBNA and its employees, which included Defendants Salom, Levine, and Bowman, engaged in a conspiracy to (i) fail to maintain an adequate AML program, (ii) fail to file Currency Transaction Report [sic] and (iii) commit money laundering." AC ¶ 232.[2] But such vague allegations—with *no* specific, individualized attribution to *each* defendant—are impermissibly conclusory. *See, e.g.*, *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) ("Absent some sort of enumeration of which specific acts constituted an alleged scheme in connection with the purchase or sale of securities, the Funds' claim does not comply with the applicable heightened pleading standard and cannot go forward.").

Moreover, Plaintiffs do not and cannot allege that Ms. Levine committed a deceptive act for at least two additional reasons.[3]

*First*, to the extent that Plaintiffs point to specific acts allegedly undertaken by Ms. Levine, those alleged acts occurred *before* (and, in some instances, *years before*) the putative class period (AC ¶¶ 177-79, 203-05, 209) and, thus, cannot "furnish the necessary deceptive act" to plead scheme liability to allegedly falsify disclosures. *Menaldi*, 277 F. Supp. 3d at 519. Specifically, Plaintiffs' allegations concern Ms. Levine's purported receipt of certain reports in 2019 and 2020 and interactions with the OCC in July 2021. AC ¶¶ 237, 239.[4] Yet, such allegations, even if

---

[2] *See also id.* ¶¶ 236-39 (similar).

[3] Plaintiffs' failure to plead Ms. Levine's scienter is addressed *infra* at pp. 8-12.

[4] Plaintiffs' allegations that Ms. Levine "lied to OCC examiners" (*id.* ¶ 239) is premised entirely on an unsupported assumption. Plaintiffs presume that Ms. Levine "would have" been one of the "AML executives" was who allegedly untruthful with OCC examiners simply by virtue of her title and position. But this is nothing more than rank speculation that cannot support a claim. *See ATSI*

assumed to be true for purposes of this motion, cannot plausibly be connected to a purported

scheme to defraud that allegedly commenced at least seven months (and as much as several years)

later when the challenged statements were made.  *See Menaldi*, 277 F. Supp. 3d at 518 (dismissing

scheme claim premised on bribery where "the bribery itself occurred years before the class period,

and is far too remote to be 'in connection with the purchase or sale of any security'").

*Second*, the alleged deception underlying Plaintiffs' scheme claim is that TD Bank (and

Ms. Levine and others by extension) "concealed the true state of TD [Bank's] deficient Global

AML Program from the government and the investing public, which inflated TD [Bank's] stock

price."  AC ¶ 231.  "But this is the same deception underlying Plaintiffs' misstatements and

omissions claim," *In re Cannavest Corp. Sec. Litig.*, 307 F. Supp. 3d 222, 252 (S.D.N.Y. 2018),

and it therefore does *not* "constitute [a] deceptive act[] for the purpose of scheme liability."

*Menaldi*, 277 F. Supp. 3d at 519.  Similar to *Menaldi*, where the court found that the "failure to

disclose the then-uncharged conduct" did not constitute a deceptive act because it "merely

repackage[d] the misrepresentation allegations," *id.* at 519-20, Plaintiffs here consistently and

clearly premise their misstatements claim on the theory that defendants allegedly "concealed [that]

TD [Bank] had a wholly inadequate, if not non-existent, AML compliance program."  AC ¶ 1; *see

also, e.g., id.* ¶¶ 78, 80, 94, 98, 218, 249.  To that end, Plaintiffs allege that certain putative class

period statements were false and misleading because they purportedly "concealed that Defendants

were willfully violating the BSA and adhered to the Flat Cost Paradigm that precluded adequate

AML resources."  *Id.* ¶ 240(a).  But Plaintiffs cannot have it both ways:  the alleged concealment

of TD Bank's AML deficiencies and "flat cost paradigm"—"which forms the basis of [their]

---

*Commc'ns*, 493 F.3d at 102 ("General allegations not tied to the defendants or resting upon speculation are insufficient.").

misstatements and omissions claim—is not [also] a proper basis for a [scheme] claim." *Cannavest*, 307 F. Supp. 3d at 252. Consequently, Plaintiffs fail to plead, as they must, a scheme that alleges "something *beyond* misstatements and omissions." *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022); *see also SEC v. Kelly*, 817 F. Supp. 2d 340, 343 (S.D.N.Y. 2011) ("[W]here the primary purpose and effect of a purported scheme is to make a public misrepresentation or omission, courts have routinely rejected the SEC's attempt to bypass the elements necessary to impose 'misstatement' liability under subsection (b) by labeling the alleged misconduct a 'scheme' rather than a 'misstatement.'").

*No Reliance*. "Reliance by the plaintiff upon the defendant's deceptive acts is an essential element" of a scheme liability claim. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008). Here, as in *Stoneridge*, there is no allegation that any "member of the investing public had knowledge, either actual or presumed, of [Ms. Levine's alleged] deceptive acts during the relevant times." *Id.* Accordingly, Plaintiffs "cannot show reliance upon" those acts "except in an indirect chain that" is "too remote for liability." *Id.*; *see also Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 159 (2d Cir. 2010) (dismissing scheme claim where, as here, the plaintiffs were unaware of, and did not rely upon, the defendant's allegedly deceptive conduct).

### 3. Plaintiffs Fail To Allege The Requisite "Strong Inference" That Ms. Levine Acted With Scienter

Plaintiffs' Section 10(b) claim is also subject to dismissal for failure to plead particularized facts giving rise to a "strong inference" of scienter as to Ms. Levine. 15 U.S.C. § 78u-4(b)(2)(A). Scienter "must be separately pled and individually supportable *as to each defendant*," and "is not amenable to group pleading." *In re Supercom Inc. Sec. Litig.*, 2018 WL 4926442, at *28 (S.D.N.Y. Oct. 10, 2018) (emphasis added). A "strong inference" of scienter is "more than merely plausible

or reasonable" but, rather, "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  This requires a "comparative evaluation" of "inferences urged by the plaintiff" and "competing inferences rationally drawn from the facts alleged." *Id.*  To meet this high burden, Plaintiffs must plead particularized facts showing (i) "that [Ms. Levine] had the motive and opportunity to commit fraud" or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness."  *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 355 (2d Cir. 2022).  Plaintiffs do neither.

**No Motive or Opportunity.**  Motive and opportunity are sufficiently alleged *only* when a plaintiff demonstrates that an individual defendant "benefited in some concrete and personal way from the purported fraud."  *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at *21 (S.D.N.Y. Sept. 21, 2021).  Unsurprisingly, the Amended Complaint does not (because it cannot) allege that Ms. Levine received *any* benefit, must less a concrete one, resulting from the alleged fraud.  Indeed, there are no allegations that Ms. Levine sold stock at a profit, nor is she an individual that supposedly received "increased compensation" in connection with the First Horizon Corporation merger.  AC ¶ 215.[5]

Moreover, although Plaintiffs spill considerable ink detailing Ms. Levine's "abilit[y] to operate within the flat cost paradigm" (*e.g.*, AC ¶ 234), such allegations say *nothing* about Ms. Levine's motive—Plaintiffs do not claim, as they must, that Ms. Levine received any specific, personal benefit as a result of her ability to operate within the cost parameters to which her work was subject.  At most, these allegations speak to a desire to improve TD Bank's profitability, which

---

[5] In any event, it is well-established that the desire to increase compensation is insufficient to establish motive.  *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001).

is patently too generic to establish motive for securities fraud, *In re Vroom, Inc. Sec. Litig.*, 2025 WL 862125, at *33 (S.D.N.Y. Mar. 18, 2025), because it is "common to most corporate officers." *ECA &, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009).

***No Conscious Misbehavior or Recklessness***.    Because they failed to plead motive, the strength of Plaintiffs' circumstantial allegations of conscious misbehavior or recklessness must be "correspondingly greater." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F. Supp. 3d 283, 300 (S.D.N.Y. 2019).  Specifically, the Amended Complaint must allege "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020).  Recklessness cannot be "merely enhanced negligence." *Steinberg v. Ericsson LM Tel. Co.*, 2008 WL 5170640, at *12 (S.D.N.Y. Dec. 10, 2008).  But here, rather than advance a cogent and compelling theory of scienter, Plaintiffs rely on two faulty theories with respect to Ms. Levine based on her:  (1) termination by TD Bank, alongside many others (AC ¶ 219); and (2) role in TD Bank's AML program (*id.* ¶¶ 57, 64, 65, 137, 177-79, 185, 203-05, 209, 225, 227).  Regarding Ms. Levine's termination, it is black letter law that such allegations, standing alone, cannot support an inference of scienter.  *See, e.g.*, *Rio Tinto*, 332 F. Supp. 3d at 815 ("[T]erminations alone are insufficient to satisfy this element.").

As for Ms. Levine's role in connection with TD Bank's AML program, the entire thrust of Plaintiffs' theory is that Ms. Levine was charged with certain responsibilities as an employee and subsequently took certain actions in connection with that position.  Notwithstanding the fact that courts in this Circuit "have long held that accusations founded on nothing more than a defendant's

corporate position are entitled to no weight," *Plumbers & Steamfitters Loc. 773 Pension Fund v. Canadian Imperial Bank of Com.*, 694 F. Supp. 2d 287, 300 (S.D.N.Y. 2010), Plaintiffs' theory is belied by their very own allegations.  For example, Plaintiffs contend that Ms. Levine's scienter can be established because she implemented and operated within the "flat cost paradigm."  *E.g.*, AC ¶ 65.  But not only do Plaintiffs concede that Ms. Levine was required to obtain approval for "*any* material decisions relating to US-AML" (*id.* ¶ 52), they also allege that the "flat cost paradigm" was implemented in 2014 at the direction of the CEO and, further, that Ms. Levine believed she was operating within that paradigm "*without compromising risk appetite*."  *Id.* ¶¶ 62, 65 (emphasis added throughout).  Against this backdrop, the more compelling, non-fraudulent inference is that Ms. Levine was merely in receipt of corporate directives and effectuating them to the best of her abilities, which, as Plaintiffs again concede, she did with the belief that doing so would not increase AML risk.  Indeed, Plaintiffs' allegations more plausibly suggest that Ms. Levine did in fact consider risk and believed that the cost constraints would not increase it, and *not* that she disregarded the risk, as Plaintiffs separately theorize.  In any event, such allegations, which amount to nothing more than an employee acting upon the "receipt of [] generalized directives," are insufficient to establish the requisite strong inference of scienter to commit securities fraud.  *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 874 (S.D.N.Y. 2011), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012).

In sum, nothing in the Amended Complaint comes close to logically explaining why Ms. Levine, who herself, as Plaintiffs allege, had previously reported to the relevant decision-makers

certain issues regarding TD Bank's AML program,[6] nonetheless would have engaged in a scheme to fraudulently conceal the true state of that program from the market and stockholders. *See, e.g.*, *N. Collier Fire Control & Rescue Dist. Firefighter Pension Plan v. MDC Partners, Inc.*, 2016 WL 5794774, at *21 (S.D.N.Y. Sept. 30, 2016) (no scienter where the plaintiffs "cannot logically explain why a board member who had no problem approving . . . millions of dollars of disclosed compensation . . . would feel the need to secretly approve, and fraudulently omit from [the Company's] disclosures, an additional one or two million dollars per year"). At bottom, Plaintiffs attempt to impugn Ms. Levine on the basis of a "*post facto* admission of liability" by certain entities for AML violations, *Mechel*, 811 F. Supp. 2d at 877, but when such an admission is later claimed as the basis of securities fraud, such efforts have been roundly rejected as impermissible and inactionable "fraud by hindsight." *Diabat v. Credit Suisse Grp. AG*, 2024 WL 4252502, at *13 (S.D.N.Y. Sept. 19, 2024).

**B.    Plaintiffs Fail To Plead A Section 20(a) Claim Against Ms. Levine**

Plaintiffs also have not adequately alleged that Ms. Levine is secondarily liable as a "control person" under Section 20(a) of the Exchange Act. To establish control person liability, Plaintiffs must plead, in addition to a primary violation, (1) control of the primary violator, (2) control of the transaction in question, and (3) intent to defraud (*i.e.*, "culpable participation"). *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486-87 (S.D.N.Y. 2005).

Plaintiffs' shopworn, conclusory allegation that Ms. Levine "had the power and authority to direct the management, policies, and activities" of TD Bank "by reason of [her] position[] of

---

[6] *See, e.g.*, AC ¶ 178 (alleging that Ms. Levine "reported to the boards of TDBUSH and TDBNA . . . and the AML Oversight Committee that the Global AML Program had significant backlogs"); *id.* ¶ 179 (alleging that Ms. Levine "reported to the AML Oversight Committee that the status of the upgrade was 'yellow due to overspent approved funding,'" and that Ms. Levine "presented to the Audit Committee" that there was inadequate staffing).

control and authority as an officer[]" (AC ¶ 337) is insufficient as a matter of law.  *See In re Smith Barney Transfer Agent Litig.*, 884 F. Supp. 2d 152, 166-67 (S.D.N.Y. 2012) (no control where allegations "focus exclusively on [the defendant's] 'control person status' rather than [his] exercise of 'actual control over the matters at issue'").  Plaintiffs repeatedly reference Ms. Levine's title as BSA Officer, but fail to allege how Ms. Levine utilized that title to exercise control over any of the purportedly false or misleading disclosures or alleged deceptive acts.  *See, e.g.*, *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 436 (S.D.N.Y. 2001) ("Officer or director status alone does not constitute control for the purposes of § 20(a) liability.").  Further, even assuming Ms. Levine had maintained a certain level of influence at TD Bank, it still would not give rise to *actual control* over the disclosures at issue.  Indeed, the "exercise of influence, without power to direct or cause the direction of management and policies . . . in any [] direct way, is not sufficient to establish control for purposes of Section 20(a)."  *Alstom*, 406 F. Supp. 2d at 487; *see also Friedman v. JP Morgan Chase & Co.*, 2016 WL 2903273, at *11 (S.D.N.Y. May 18, 2016), *aff'd*, 689 F. App'x 39 (2d Cir. 2017).  Strikingly, Plaintiffs allege that Ms. Levine actually *lacked* material decision-making authority (AC ¶ 52), further undermining any notion that Ms. Levine had actual control over the challenged conduct.

Plaintiffs also fail to plead Ms. Levine's culpable participation, providing yet another independent reason to dismiss Plaintiffs' Section 20(a) claim.  "[C]ulpable participation is a scienter requirement for which a plaintiff must allege some level of culpable participation at least approximating recklessness in the section 10(b) context."  *In re Inv. Tech. Grp., Inc. Sec. Litig.*, 2018 WL 1449206, at *7 (S.D.N.Y. Mar. 23, 2018).  For all of the reasons discussed in Point II.A.3, *supra*, Plaintiffs do not and cannot establish Ms. Levine's culpable participation in the

13

alleged fraud, particularly because she is not alleged to have had any visibility into, authorship of, or authority over the challenged disclosures.

## **CONCLUSION**

The Amended Complaint wholly lacks particularized allegations establishing that Ms. Levine had any involvement in the challenged disclosures, nor otherwise engaged in any conduct that could form the basis of Plaintiffs' claims. Instead, Plaintiffs rely entirely on ordinary conduct that occurred at the direction of her superiors years prior to the putative class period. Such threadbare, attenuated allegations cannot survive a motion to dismiss. Thus, for the foregoing reasons, as well as those set forth by the TD Defendants in their motion to dismiss the Amended Complaint, the Amended Complaint should be dismissed in its entirety and with prejudice as to Ms. Levine.

Dated: May 30, 2025

Respectfully submitted,

*/s/ Chantale Fiebig*
Chantale Fiebig
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
chantale.fiebig@weil.com

-and-

Joshua S. Amsel
Amber N. Venturelli
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
joshua.amsel@weil.com
amber.venturelli@weil.com

*Counsel for Defendant Mia Levine*

14

## CERTIFICATION OF WORD COUNT

I hereby certify pursuant to Local Rule 7.1(c) and Section 8(C) of this Court's Individual Practices in Civil Cases that the foregoing document contains 4,339 words, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, signature block, and any required certificates, and accordingly complies with the applicable word limitations set forth in Local Rule 7.1(c).  In preparing this certification, I have relied on the word count of the word processing software used to prepare this memorandum.

/s/ *Chantale Fiebig*
Chantale Fiebig

15