# EXHIBIT B

*Tiessen v. The Toronto-Dominion Bank, et al.*, Cons. C.A. No. 1:24-CV-8032 (AS)
**Chart of Plaintiffs' Claim Elements Plausibly Pleaded in the Consolidated Amended Complaint ("Complaint") -**
**Submitted in Opposition to Defendants' Motions to Dismiss and Pursuant to Section 8(G)(i) of the Court's Individual Practices in**
**Civil Cases**

| Cause of Action | Elements Plausibly Pleaded | ¶¶ Reciting Elements Plausibly Pleaded |
|---|---|---|
| **COUNT I**<br>Section 10(b) of the Exchange Act of 1934 and SEC Rule 10b-5 | 1. The Complaint meets the pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA. | ¶¶39-320; ¶¶330-342 |
| | 2. The Complaint plausibly pleads that each of the seven Speaker Defendants (TD, TDBNA, TDBUSH, Masrani, Salom, Tran, and Bambawale) made a material misstatement or omission. A chart providing which Speaker Defendants made which material misstatement or omission is included as part of Exhibit B.* | ¶¶240-291:<br>**Masrani**<br>(¶¶245-48, 250, 252, 253, 258, 259, 262, 263, 265-67, 269-71, 275-78, 281, 282, 287-89);<br>**Salom**<br>(¶¶255, 257, 272, 274);<br>**Tran**<br>(¶¶250, 252, 253, 269, 275, 281, 287-89);<br>**Bambawale**<br>(¶279);<br>**TD**<br>(¶¶245-48, 250, 252, 253, 255, 257, 258, 259, 261-63, 265-67, 269-72, 274-79, 281, 288-90);<br>**TDBNA**<br>(¶¶255, 261, 272, 274);<br>**TDBUSH**<br>(¶¶255, 257, 261, 272, 274) |
| | 3. For each statement alleged to be false or misleading, the Complaint plausibly pleads that the statement is false or misleading and/or actionable. A chart providing further specifics of what Plaintiffs plausibly plead as to each statement is included as Exhibit B. | ¶¶240-291; *see also* ¶¶53-171 |
| | 4. The Complaint plausibly pleads scienter as to each Defendant. | ¶¶162-171 (Masrani, Salom, Tran, TD, TDBNA, TDBUSH);<br>¶¶172-230 (all Defendants);<br>*see also* ¶¶ 39-149 |

| Cause of Action | Elements Plausibly Pleaded | ¶¶ Reciting Elements Plausibly Pleaded |
|---|---|---|
| | 5.  The Complaint plausibly pleads loss causation. | ¶¶292-315; *see also* ¶¶107-149 |
| | 6.  The Complaint plausibly pleads that each Defendant committed a manipulative or deceptive act pursuant to Rule 10b-5. | ¶¶39-230, ¶¶240-291 |
| | 7.  The Complaint's "scheme liability" allegations plausibly plead reliance, scienter, that the Scheme Defendants (Bowman, Levine, Salom, TDBNA, and TDBUSH) disseminated false or misleading statements, and acts in furtherance of the alleged scheme that were inherently deceptive. | ¶¶231-239, *see also* ¶¶39-230 |
| **COUNT II** Section 20(a) of the Exchange Act of 1934 | 1.  The Complaint plausibly pleads a primary violation of Section 10(b). | ¶¶39-320; ¶¶330-342 |
| | 2.  The Complaint plausibly pleads culpable participation by the Individual Defendants in primary violations of Section 10(b). | ¶¶25-31; ¶¶39-291; ¶¶336-342 |
| | 3.  The Complaint plausibly pleads control of an alleged primary violator by the Individual Defendants. | ¶¶25-31; ¶¶44-77; ¶¶162-171; ¶¶336-342 |

*Defendants Bowman and Levine are not alleged to have made a material misstatement or omission and are culpable under scheme liability.

*Tiessen v. The Toronto-Dominion Bank, et al.*, Cons. C.A. No. 1:24-CV-8032 (AS)

**Alleged Misstatements in the Complaint Adequately Pleaded To Be Actionably False or Misleading Statements –**
**Plaintiffs' Exhibit B**

This chart sets forth each statement that Plaintiffs allege is false or misleading in the Consolidated Amended Class Action Complaint ("Complaint"). *See* ¶¶240-91 (Section VIII of the Complaint), ¶242 (stating that: "For the avoidance of doubt, all the affirmative statements alleged to be actionably false and misleading when made are set out in this Section VIII").

Plaintiffs' position is that Defendants' Exhibit B Chart (*see* ECF 73-2) improperly adds argument not reflected in their Brief. Plaintiffs are thus providing this responsive chart for the Court's convenience to capture Plaintiffs' responses to each of the purported bases for Defendants' positions as set forth in their Exhibit B. In all other respects, Plaintiffs' Exhibit B summarizes in chart form the bases for Plaintiffs' position (as set forth in the accompanying memorandum of law) that each statement is adequately pleaded to be actionably false or misleading, if helpful to the Court.

Capitalized terms not defined herein have the meanings in the Complaint (ECF 70) and accompanying Memorandum of Law in Opposition to Defendants' Motion to Dismiss. Paragraph and section citations are to the Complaint.

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | *Statements Regarding TD's AML Program (¶240(a); Section VIII.A of the Complaint)* | | |
| 1 | The TD AML Statement posted on the Company's website from March 2022 through March 2023 (the "2022 TD AML Statement") and included in TD's February 14, 2023 Form 6-K, stated in part:<br><br>"In accordance with legislative, regulatory and procedural requirements, TD's Global AML Program and supporting policies set out requirements that include: …<br><br>2. Documented policies and procedures that address both enterprise policy and applicable AML/ATF and Sanctions legislative and regulatory requirements;<br><br>3. Identification of customers and customer due diligence measures. Enhanced due diligence measures are applied for customers that present a higher risk…;<br><br>4. Customer and transaction record-keeping;<br><br>5. Ongoing monitoring to detect and report suspicious transactions or activities; …<br><br>7. Regulatory reporting of prescribed transactions, including cash transactions, international electronic funds transfers, as well as terrorist and other frozen property and rejected transactions; …<br><br>9. Assessment of money laundering, terrorist financing and sanctions risks; and<br><br>10. Independent testing of AML, ATF and Sanctions control effectiveness." | 245 | Statement of fact not adequately pleaded to be false or misleading | Adequately pleaded to be false or misleading because these repeated, false, and specific assurances of AML compliance, containing specific descriptions of processes undertaken to achieve AML compliance, gave comfort to shareholders that reasonably effective steps were being taken to comply with AML requirements and, having chosen to tout the procedures and accomplishments of TD's Global AML Program, Defendants concealed from shareholders the truth that it was willfully and criminally deficient and starved of necessary resources. | TD |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 2 | The TD AML Statement posted on the Company's website from March 2023 through March 2024 (the "2023 TD AML Statement") and included in TD's February 5, 2024 Form 6-K:<br><br>Repeated the 2022 TD AML Statement, except added references to "policy" requirements, requirements set out in "standards and processes," and revised point "3" to state that the TD Global AML Program requires "[i]dentification of customers and customer due diligence measures *by referring to documents or data or information in accordance with obligations*." | 246 | Statement of fact not adequately pleaded to be false or misleading | Adequately pleaded to be false or misleading because these repeated, false, and specific assurances of AML compliance, containing specific descriptions of processes undertaken to achieve AML compliance, gave comfort to shareholders that reasonably effective steps were being taken to comply with AML requirements and, having chosen to tout the procedures and accomplishments of TD's Global AML Program, Defendants concealed from shareholders the truth that it was willfully and criminally deficient and starved of necessary resources. | TD |
| 3 | The TD AML Statement posted on the Company's website since March 2024 (the "2024 TD AML Statement"):<br><br>Repeated the 2023 TD AML Statement, except removed the reference to "enterprise policy" and revised point "3" to state that the TD Global AML Program requires "Identification *and verification* of customers and customer due diligence measures by referring to documents or data or information in accordance with *AML, ATF and sanctions and reporting of suspected money laundering, terrorist financing and activity prohibited by sanctions*." | 247 | Statement of fact not adequately pleaded to be false or misleading | Adequately pleaded to be false or misleading because these repeated, false, and specific assurances of AML compliance, containing specific descriptions of processes undertaken to achieve AML compliance, gave comfort to shareholders that reasonably effective steps were being taken to comply with AML requirements and, having chosen to tout the procedures and accomplishments of TD's Global AML Program, Defendants concealed from shareholders the truth that it was willfully and criminally deficient and starved of necessary resources. | TD |
| 4 | All TD AML Statements during the Class Period also stated:<br><br>"The Global AML Program is routinely evaluated, updated and enhanced in order to reflect changes to TD's business activities, as well as applicable supervisory standards and legal requirements." | 248 | Statement of fact not adequately pleaded to be false or misleading | Adequately pleaded to be false or misleading because these repeated, false, and specific assurances of AML compliance, containing specific descriptions of processes undertaken to achieve AML compliance, gave comfort to shareholders that reasonably effective steps were being taken to comply with AML requirements and, having chosen to tout the procedures and accomplishments of TD's Global AML Program, Defendants concealed from shareholders the truth that it was willfully and criminally deficient and starved of necessary resources. | TD |
| | | | Nonactionable general statement | This statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations by claiming the Global AML Program was evolving with TD's rapidly growing business in compliance with the BSA and Federal regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 5 | TD's Forms 40-F for 2022 and 2023 contained false and misleading statements that the GAML Department appropriately identified and mitigated AML risks. They stated:<br><br>"GAML is responsible for oversight of TD's regulatory compliance with Anti- Money Laundering (AML), Anti-Terrorist Financing, Economic Sanctions, and Anti-Bribery/Anti-Corruption regulatory compliance and broader prudential risk management across the Bank in alignment with enterprise AML policies so that the money laundering, terrorist financing, economic sanctions, and bribery and corruption risks are appropriately identified and mitigated." | 250 | Statement of fact not adequately pleaded to be false or misleading | Adequately pleaded to be false or misleading because these repeated, false, and specific assurances of AML compliance, containing specific descriptions of processes undertaken to achieve AML compliance, gave comfort to shareholders that reasonably effective steps were being taken to comply with AML requirements and, having chosen to tout the procedures and accomplishments of TD's Global AML Program, Defendants concealed from shareholders the truth that it was willfully and criminally deficient and starved of necessary resources. | TD, Masrani, Tran |
| | | | Nonactionable general statement | This statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations and that the Global AML Program appropriately identified and mitigated AML risks. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | |
| 6 | TD's Management Proxy Circular for the April 20, 2023 annual meeting, dated February 21, 2023 ("2023 Proxy Statement"), and also filed on March 14, 2023 attached to a Form 6-K, and TD's Management Proxy Circular for the April 18, 2024 annual meeting, dated February 20, 2024 ("2024 Proxy Statement"), and also filed on March 12, 2024 attached to a Form 6-K, contained a "Report of the Audit Committee" that stated:<br><br>The Audit Committee (a) "is satisfied that it has fulfilled its responsibilities for fiscal [2022/2023]," which include "overseeing … the effectiveness of … compliance and anti-money laundering" and "overseeing the establishment and maintenance of policies and programs reasonably designed to achieve and maintain the bank's compliance with the laws and regulations that apply to it"; and (b) "[o]versaw the execution and ongoing effectiveness of the anti- money laundering/anti-terrorist financing/economic sanctions/anti-bribery and anti-corruption program (AML program), including the related risk assessment." | 252 | Statement of opinion/belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (TD, Masrani, and Tran) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," *see, e.g.*, Statement 6(b), ¶252 (factual representation that the Audit Committee "[o]versaw the execution and ongoing effectiveness of the [Global AML Program]"); and (iii) even to the extent opinions, they were not honestly held by TD, Masrani, and Tran because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TD, Masrani, Tran |
| 7 | The 2023 Proxy Statement also stated:<br><br>The Audit Committee (c) "[r]eceived updates from the internal audit, finance, compliance and anti-money laundering functions to satisfy itself that there are adequate resources with experience and knowledge in each of the key oversight functions…." | 253 | Statement of opinion/belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (TD, Masrani, and Tran) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by TD, Masrani, and Tran because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TD, Masrani, Tran |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | *Statements Regarding the Global AML Program in Connection with the FH Acquisition (¶240(b); Section VIII.B of the Complaint)* | | | | |
| 8 | On March 21, 2022, Defendant Salom executed a Bank Merger Act application, on behalf of TDBNA, to the Federal Reserve (the "Federal Reserve Bank Merger Act Application"). In the Federal Reserve Bank Merger Act Application, Defendant Salom executed a "Certification" stating:<br><br>"I certify that the information contained in this application has been examined carefully by me and is true, correct, complete, and is current as of the date of this submission to the best of my knowledge and belief." | 255 | Statements of fact and belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (TDBNA and Salom) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by TDBNA and Salom because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TDBNA, Salom |
| 9 | On March 21, 2022, Defendant Salom executed a Bank Merger Act application, on behalf of TDBNA, to the OCC (the "OCC Bank Merger Act Application").<br><br>In the OCC Bank Merger Act Application, Defendant Salom executed a "Certification" stating that "to the best of [his] knowledge, it contains no misrepresentations or omissions." | 255 | Statements of fact and belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (TDBNA and Salom) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by TDBNA and Salom because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TDBNA, Salom |
| 10 | The Federal Reserve Bank Merger Act Application (filed by TD and TDBUSH and signed by Salom) and the OCC Bank Merger Act Application (filed by TDBNA and signed by Salom) stated:<br><br>**"Anti-Money Laundering and Sanctions Compliance**<br><br>TDBNA … ha[s] comprehensive anti-money laundering and sanctions programs that are reasonably designed to ensure compliance with the Bank Secrecy Act …, and all applicable regulations and regulatory guidance, as well as compliance with requirements administered by [OFAC]. In addition, each bank has qualified, dedicated personnel who are responsible for administering such programs. During the due diligence process, the AML team members from TD used a risk based approach to review and assess key risks related to AML. Both programs are currently designed to meet the five pillars requirements….<br><br>*TDBNA*<br><br>…. The AML Program aligns with enterprise AML policies so that the money laundering, terrorist financing, economic sanctions, and bribery and corruption risks are appropriately identified and mitigated." | 255 | Nonactionable general statement | This statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations and also described granular steps taken to ensure compliance with AML requirements. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, TDBUSH, TDBNA, and Salom |

4

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 11 | On April 12, 2022 and April 22, 2022, First Horizon filed proxy statements with the SEC in connection with the FH Acquisition (the "FH Proxy Statements", and attached as Annex A to the FH Proxy Statements is the  Merger Agreement (by TD and TDBUSH and signed by Salom).  (Note that the Federal Reserve Bank Merger Act Application (filed by TD and TDBUSH and signed by Salom) and the OCC Bank Merger Act Application (filed by TDBNA and signed by Salom) referenced above for Statement 10 also include The Merger Agreement.)  The Merger Agreement stated at Section 4.7(b):<br><br>"Except as would not, either individually or in the aggregate, have a Material Adverse Effect on Parent [Toronto-Dominion], Parent, Holdco [TDBUSH] and each of their Subsidiaries have complied with and are not in default or violation under any applicable law, statute, order, rule, regulation, policy and/or guideline of any Governmental Entity relating to Parent, Holdco or any of their Subsidiaries, including … the Bank Secrecy Act … and any other law, policy or guideline relating to bank secrecy, discriminatory lending, financing or leasing practices, consumer protection, money laundering prevention, foreign assets control, U.S. sanctions laws and regulations….  Parent, Holdco and their Subsidiaries have established and maintain a system of internal controls designed to ensure compliance by Parent, Holdco and their Subsidiaries with applicable financial recordkeeping and reporting requirements of applicable money laundering prevention laws in jurisdictions where Parent, Holdco and their Subsidiaries conduct business." | 257 | Nonactionable statement to merger counterparty and contains nonactionable general statements | This statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders.<br><br>Defendants separately argue that Statement 11 is non-actionable "commercial representation made to FH, not to TD investors."  (Br. 16 n.40.)  But TD, TDBUSH, and Salom made this statement in the Merger Agreement, which they knew needed regulatory approval and would be publicly disseminated to investors.  TD, TDBUSH, and Salom made "public disclosure of" the Merger Agreement and therefore were "required to consider whether additional disclosure is necessary … so that such information is not misleading," and "cannot avoid this disclosure obligation simply because the information published was contained in an agreement or other document not prepared as a disclosure document."  *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 757 F. Supp. 2d 260, 298 (S.D.N.Y. 2010) (merger agreement actionable, as a "reasonable investor would have understood the Merger agreement to constitute a statement of fact"). | TD, TDBUSH, and Salom |
| | *Statements Regarding Delay in Closing FH Acquisition (¶240(c); Section VIII.C of the Complaint)* | | | | |
| 12 | During the 4Q22 Earnings Call on December 1, 2022, a National Bank Financial analyst followed up with Masrani about the delay of the close of the FH Acquisition, asking "Last quarter, you were expecting to close in fiscal Q1, now first half. What's prompting the delay[]?" Defendant Masrani responded:<br><br>"So we're already in December. And so we don't control the timing of all the regulatory approvals, but we are confident we'll get the closing within the timeline that we have put out." | 258 | Statement of opinion/belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," *see, e.g.*, Statement 12, ¶258 ("we don't control the timing of all the regulatory approvals"); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading *(to the extent found to be actionable statement of fact)* | This statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies.  It not only concealed the truth but was also an outright lie.  Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |
| 13 | During the same 4Q22 Earnings Call, the analyst replied, asking "I mean are they taking a closer look at anything?" Masrani responded: "No, I'm not aware of anything of the sort you're mentioning." | 259 | Statements of fact and belief not adequately pleaded to be false or misleading | While Defendants indicate they intended to challenge Statement 13 as opinion, their Brief does not articulate any argument for that contention.  (Br. 17-18.)  As such, the argument is waived.  Defendants argue that Statement 13 was not false or misleading because the statement was about adjustments to TD's product lineup.  (Br. 18 n.41 (mistakenly calling it "Statement 12").)  Wrong.  Masrani is asked if the regulators are "taking a closer look at anything" and Masrani responds that he's not aware of anything." ¶¶96, 259.  Masrani's response was reported to mean "that the regulatory approval process was moving forward as expected." ¶97.  This was false and misleading because, at that time, Masrani knew that regulators would not approve the FH Acquisition. ¶¶93, 198. | Masrani, TD |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |

6

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionally False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 14 | On February 9, 2023, TD (defined therein to include TD, TDBNA, and TDBUSH) issued a joint press release with First Horizon announcing that "they have mutually agreed to extend the outside date of their proposed transaction from February 27 to May 27, 2023." The joint press release also stated:<br><br>"TD and First Horizon are fully committed to the merger and continue to make significant progress in planning for the closing and the integration of the companies." | 261 | Statement of opinion/belief not adequately pleaded to be false or misleading | While Defendants indicate they intended to challenge Statement 14 as opinion, their Brief does not articulate any argument for that contention.  (Br. 17-18.)  As such, the argument is waived.<br><br>Statement pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (TD, TDBNA, and TDBUSH) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false." *see, e.g.*, Statement 14, ¶261 ("TD and First Horizon … continue to make significant progress in planning for the closing and the integration of the companies"); and (iii) even to the extent opinions, they were not honestly held by TD, TDBNA, and TDBUSH because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TD Bank Group (defined therein to include TD, TDBNA, and TDBUSH) |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |
| 15 | During TD's 1Q23 Earnings Call on March 2, 2023, Defendant Masrani in his opening remarks stated:<br><br>"As you know on February 9, we mutually agreed with First Horizon to extend the close day to May 27 as provisioned in our contract. Since then, we've come to believe that the deal is not expected to receive regulatory approval in time to close the transaction by that date. Regulatory approval is not within the bank's control..." | 262 | Statement of opinion/belief not adequately pleaded to be false or misleading | Statements pleaded to be actionable, under Omnicare, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see, e.g., Statement 15, ¶262 ("regulatory approval is not within the bank's control"); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 16 | During questioning at the same Q23 Earnings Call, Defendant Masrani reiterated:<br><br>"[W]e are really excited about this transaction. We worked very hard to date and continue to work very, very hard. And our planning for integration continues. We've set up an integration management office." | 263 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to first sentence)* | While Defendants indicate they intended to challenge Statement 16 as opinion, their Brief does not articulate any argument for that contention. (Br. 17-18.) As such, the argument is waived.<br><br>Statements pleaded to be actionable, under Omnicare, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 16, ¶263 (the entire statement is factual); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading | This statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |
| 17 | During TD's Annual Shareholders Meeting on April 20, 2023, Defendant Masrani stated:<br><br>"As previously disclosed, we've come to believe that the deal is not expected to close by the May 27 expiry date. We have opened discussions with First Horizon about a possible extension, and we will update our shareholders when we can." | 265 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to first sentence)* | Statements pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 17, ¶265 ("We have opened discussions with First Horizon about a possible extension."); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading *(as to second sentence)* | The WSJ article reporting that "TD and First Horizon didn't discuss extending the timeline for the deal" proves falsity for this Statement.<br><br>Additionally, this statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |
| 18 | During questioning at the same April 20, 2023 Annual Shareholders Meeting, a shareholder asked directly "one, are you currently in discussions with FHN to extend the [M]erger [A]greement that you referred to earlier in your presentation?" Masrani responded:<br><br>"We've initiated extension arrangements or negotiations with FHN, yes." | 266 | Statement of fact not adequately pleaded to be false or misleading | The WSJ article reporting that "TD and First Horizon didn't discuss extending the timeline for the deal" proves falsity for this Statement.<br><br>Additionally, this statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | Masrani, TD |
| 19 | During the same April 20, 2023 Annual Shareholders Meeting, Masrani again reiterated:<br><br>"[O]ur belief is that we will not be able to get approvals by the merger expiry date of May 27, and therefore, we've initiated negotiations to extend our agreement with FHN." | 267 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to statement before "and therefore")* | Statements pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 19, ¶267 ("we've initiated negotiations to extend our agreement with FHN"); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading *(as to statement after "and therefore")* | The WSJ article reporting that "TD and First Horizon didn't discuss extending the timeline for the deal" proves falsity for this Statement.<br><br>Additionally, this statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |
| 20 | During the same April 20, 2023 Annual Shareholders Meeting, Masrani again reiterated:<br><br>"We disclosed in March that our belief is that we will not be able to get approvals to close the transaction by the merger expiry date of May 27 of this year. And we have initiated extension negotiations with First Horizon to extend that date." | 267 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to second sentence)* | Statements pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 20, ¶267 ("we have initiated extension negotiations with First Horizon to extend that date"); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading *(as to third sentence)* | The WSJ article reporting that "TD and First Horizon didn't discuss extending the timeline for the deal" proves falsity for this Statement.<br><br>Additionally, this statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 21 | During the same April 20, 2023 Annual Shareholders Meeting, Masrani again reiterated:<br><br>"We see the benefits of the merger. We've outlined them very clearly, and I've said that many times before. And so that's why we are into extension discussions with First Horizon." | 267 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to first and second sentences)* | Statements pleaded to be actionable, under *Omnicare*, for three independent reasons: (i) the speakers (Masrani and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 21, ¶267 ("we are into extension discussions with First Horizon"); and (iii) even to the extent opinions, they were not honestly held by Masrani and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading *(as to third sentence)* | The WSJ article reporting that "TD and First Horizon didn't discuss extending the timeline for the deal" proves falsity for this Statement.<br><br>Additionally, this statement concealed from shareholders that the FH Acquisition was delayed (and ultimately terminated) as a result of AML deficiencies. It not only concealed the truth but was also an outright lie. Among other things, at least a month earlier, senior executives were directly informed that the OCC and Federal Reserve had found such significant failures in TD's AML practices that the DOJ had already launched a formal investigation into the Global AML Program for violations of federal law, scuttling any hopes of regulatory approval. ¶¶93, 198. | |
| | *Statements Regarding Investigations of TD's AML Program (¶240(d); Section VIII.D of the Complaint)* | | | | |
| 22 | TD's December 1, 2022 Form 40-F stated:<br><br>"Regulatory Oversight and Compliance Risk<br>….<br>Governments and regulators around the world have demonstrated an increased focus on conduct risk; … and money laundering, terrorist financing and economic sanctions risks and threats. ….<br><br>The Bank monitors and evaluates the potential impact of applicable regulatory developments (including enacted and proposed rules, standards, and regulatory guidance). However, while the Bank devotes substantial compliance, legal, and operational business resources to facilitate compliance with these developments by their respective effective dates, and also to the consideration of other governmental and regulator expectations, ***it is possible that***: … (ii) the Bank ***may not*** be able to develop or enhance the platforms, technology, or | 269 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 22 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 22. (Br. 20.) In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |

11

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | operational procedures and frameworks necessary to comply with, or adapt to, such rules or expectations in advance of their effective dates; or (iii) regulators and other parties **_could_** challenge the Bank's compliance. This **_could_** require the Bank to take further actions or incur more costs than expected and **_may_** expose the Bank to litigation, enforcement and reputational risk. Regulatory change will continue to increase the Bank's compliance and operational risks and costs. In addition, **_if governments or regulators take formal enforcement action against the Bank_**, the Bank's operations, business strategies and product and service offerings may be adversely impacted, therefore impacting financial results.<br>…<br>**_The Bank may incur greater than expected costs associated with enhancing its compliance_** … which **_could_** also lead to negative impacts on the Bank's financial performance, operational changes including restrictions on offering certain products or services or on operating in certain jurisdictions, and its reputation." | | Risk disclosure not adequately pleaded to be false or misleading | Statements 22 was filed with the SEC on December 1, 2022 and misrepresented that it was merely "**_possible_** that" "the Bank **_may not_** be able to develop or enhance" the systems necessary for compliance and that "regulators … **_could_** challenge the Bank's compliance." ¶269. By that time, Defendants had deliberately "ignor[ed] failures and refus[ed] to meaningfully remediate issues and prevent recurrences," ¶241(f); regulators and consultants had already repeatedly found AML compliance seriously deficient, ¶241(g); and by at least November 2022, Defendants knew that the DOJ had launched a formal investigation into the Global AML Program, ¶93. | |
| 23 | During TD's 3Q23 Earnings Call on August 24, 2023, a BMO Capital Markets analyst asked, "how long it may take to resolve the issues around compliance program with money laundering." Defendant Masrani responded:<br><br>"[W]e are working hard to enhance our programs. That is the TD way. We learn new things from our ongoing internal monitoring and management and through engagement with various stakeholders, including our regulators, and look for opportunities to enhance our controls whenever that situation arises. And I think you know us well, as you'd expect from TD." | 270 | Nonactionable general statement | This statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants challenge the portion of Statement 23 that Defendants are "working hard to enhance our programs" because Plaintiffs did not plead that "TD was _not_ working to fix AML issues." (Br. 20 & n.42 (emphasis in original).) That is exactly what Plaintiffs allege. Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 24 | During the same 3Q23 Earnings Call on August 24, 2023, the analyst replied and asked for "additional clarity... Are we starting to see some of the likely expense implications of the enhancement program in the numbers right now? Or is that still to come?" Defendant Masrani responded:<br><br>"[T]he only point I'd make is enhancing any of our businesses, controls, is an ongoing exercise at TD. It is not that a particular event takes place, and that's the only time we make those investments." | 271 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 24 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 24. (Br. 20.) In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 24 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues." (Br. 20 & n.42 (emphasis in original).) Their argument is non-responsive to the text of Statement 24. In any event, that is exactly what Plaintiffs allege. Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |
| 25 | During the same 3Q23 Earnings Call on August 24, 2023, Defendant Salom then stated:<br><br>"governance and control is one of our important elements and pillars of our overall investment process," and that:<br><br>"[E]very year, we have a very disciplined process. We sit down and we look at the opportunities that we want to fund to be able to continue to transform, transform the business. Obviously, first and foremost is ensuring that we've got a strong control platform to be able to operate. And so those are the first things that we lean into to make sure that those investments are addressed." | 272 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 25 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 25. (Br. 20.) In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Salom, TD, TDBUSH, TDBNA |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 25 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues." (Br. 20 & n.42 (emphasis in original).) Their argument is non-responsive to the text of Statement 25. In any event, that is exactly what Plaintiffs allege. Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |
| 26 | At the Barclays Global Financial Services Conference, an analyst proposed whether the "reason that you couldn't close First Horizon…might have revolved around regulatory concerns about AML and KYC." Defendant Salom responded:<br><br>"Let me separate the 2 items for a moment. Our decision to walk away from First Horizon was really predicated on the fact that we just did not have regulatory certainty with regards to time. And we felt that as time elapsing, the best thing we could do, given that uncertainty was to walk away from the transaction. And I assure you that was not an easy decision. Separately, last quarter, we did make a disclosure saying that we are in discussions with both the DOJ and our regulators about a specific matter at hand. So I don't want to complete [conflate] the two." | 274 | Statement of fact not adequately pleaded to be false or misleading | Defendants only challenge the second sentence of this statement that TD decided to "walk away" from the transaction because TD "just did not have regulatory certainty with regards to time" and only on the grounds that it is purportedly "based on the wholly conclusory contention that regulators had already rejected the FH Transaction at that time because of AML issues." (Br. 21 n.44.) But this statement concealed the truth behind the government investigations. Moreover, the FH Acquisition was not a considered, voluntary decision to "walk away" due to "uncertainty" about regulatory approval, and termination of the FH Acquisition and the DOJ and regulatory investigations were not "separate"; they had the same cause: U.S. regulators had rejected the FH Acquisition for the same willful and longstanding AML failures for which Defendants later pled guilty and admitted in October 2024. ¶274; *see also* ¶241. | Salom, TD, TDBUSH, TDBNA |
| 27 | TD's November 30, 2023 Form 40-F stated:<br><br>***"Regulatory Oversight and Compliance Risk***<br>….<br>Bank regulators around the world have demonstrated an increased focus on… conduct risk and … control frameworks across the three lines of defence; and money laundering, terrorist financing and economic sanctions risks and threats. ….<br><br>The Bank monitors and evaluates the potential impact of applicable regulatory developments (including enacted and proposed rules, standards, public enforcement actions, consent orders, and regulatory guidance). However, while the Bank devotes substantial compliance, legal, and operational business resources to facilitate compliance with these developments by their respective effective dates, and also to the consideration of other Bank regulator expectations, ***it is possible that***: | 275 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 27 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 27. (Br. 20.) In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |

14

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | …(ii) the Bank *may* not be able to develop or enhance the platforms, technology, or operational procedures and frameworks necessary to comply with, or adapt to, such rules or expectations in advance of their effective dates; or (iii) regulators and other parties *could* challenge the Bank's compliance. Also, it may be determined that the Bank has not adequately, completely or timely addressed regulatory developments or other regulatory actions, such as enforcement actions, to which it is subject, in a manner which meets Bank regulator expectations." | | Risk disclosure not adequately pleaded to be false or misleading | Statement 27 was filed with the SEC on November 30, 2023 and misrepresented that it was merely "*possible* that" "the Bank *may not* be able to develop or enhance" the systems necessary for compliance and that "regulators … *could* challenge the Bank's compliance." ¶275. By that time, Defendants had deliberately "ignor[ed] failures and refus[ed] to meaningfully remediate issues and prevent recurrences," ¶241(f); regulators and consultants had already repeatedly found AML compliance seriously deficient, ¶241(g); and by at least November 2022, Defendants knew that the DOJ had launched a formal investigation into the Global AML Program, ¶93. | |
| 28 | During the 1Q24 Earnings Call on February 29, 2024, a Bank of America Securities analyst asked "in terms of the AML issue…, not about the specifics, but what happened there,"? Again, noting that "for those of us who follow TD for a long time, it's - the assumption is always TD is ahead of the curve in terms of management, risk and control investments." Defendant Masrani responded:<br><br>"As far as our control infrastructure, we - this is an ongoing situation for TD or any big bank and the environment changes and as we hear improvements from others, including our regulators, what the industry is doing, we want to keep up with it and where appropriate, be ahead of it." | 276 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 28 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable." (Br. 20.) In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 28 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues." (Br. 20 & n.42 (emphasis in original).) Their argument is non-responsive to the text of Statement 28. In any event, that is exactly what Plaintiffs allege. Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |

15

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 29 | During the same 1Q24 Earnings Call, a BMO Capital Markets analyst asked: ".Bharat, I mean the good news is, I think you've made it clear that the AML issues are understood, I suppose, and progress is being made fixing them. Are you in a better position now versus a few quarters ago to give a sense of how long do you think that will take? And how much do you think it will cost?" Defendant Masrani responded:<br><br>"[S]uffice it to say, as I said in my prepared remarks, we know what the issues are. We are working hard to improve and enhance our processes, and I'm confident that I've been with the bank many years that when we get on to particular issues we find, we get on to those and fix them." | 277 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 29 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 29.  (Br. 20.)  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Masrani, TD |
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 29 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues."  (Br. 20 & n.42 (emphasis in original).)  Their argument is non-responsive to the rest of the text of Statement 29.  In any event, that is exactly what Plaintiffs allege.  Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |
| 30 | During TD's 2Q24 Earnings Call on May 23, 2024, a Bank of America Securities analyst asked about TD's AML deficiencies, and whether "this is a very specific U.S. AML issue... [o[r could it be that in a few weeks from now, we start getting headlines around other risk gaps at TD? " Defendant Masrani responded:<br><br>"And the reports you hear, what you read does not reflect who we are, our values or what the bank stands for. And we made that very clear. I mean we get targeted all the time. And unfortunately, in these instances, our program fell short. And we know what those shortcomings are, we are on it, and we are fixing them.<br>…<br>…We strive to be a well-run bank. Our risk management reputation, goes back many decades. And it's unfortunate that in this one instance, we're well short." | 278 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 30 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 30.  (Br. 20.)  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Masrani, TD |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading (to the extent found to be actionable) | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 30 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues." (Br. 20 & n.42 (emphasis in original).)  Their argument is non-responsive to the rest of the text of Statement 30.  In any event, that is exactly what Plaintiffs allege.  Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |
| 31 | During the same 2Q24 Earnings Call on May 23, 2024, the analyst followed up, asking " Going back to what Bharat said, decades of reputational risk management, I would have thought TD is leading the charge on best-in-class AML. Why did that not happen? Is this isolated? Or is that a systemic issue at the bank?" Defendant Bambawale responded:<br><br>"[W]e always endeavor to be best-in-class in every risk area. But yes, from time to time, we find we've fallen behind in a particular area. And we're out there owning the issue that we fell behind in our program, and our program did not pick up things it should have picked up. But really, if I go right to the root cause of what happened, there were some procedural weaknesses in the U.S. that caused bad actors to exploit us.<br><br>And we were also disappointed that some of our colleagues didn't follow our code of ethics, like those would be the 2 things I'd call out, and that's specific to the U.S. This is not a problem here at the enterprise level." | 279 | Nonactionable general statement *(as to first, second, and third sentences)* | Defendants do not articulate in their Brief any such challenge other than a conclusory suggestion that Statement 31 may be among nine statements that "include textbook examples of general statements that no reasonable investor would rely upon and are therefore nonactionable," without identifying any for Statement 31.  (Br. 20.)  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | Bambawale, TD |
| | | | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to fourth, fifth and sixth sentences)* | Statements pleaded to be actionable, under *Omnicare* , for three independent reasons: (i) the speakers (Bambawale and TD) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; (ii) they either are not opinions or contained "embedded factual statements that was false," see Statement 31, ¶279 (contrary to Br. 21, the "root cause" of the AML issue and whether there is an AML problem "at the enterprise level" are verifiable) and (iii) even to the extent opinions, they were not honestly held by Bambawale and TD because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading *(to the extent found to be actionable statement of fact)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 31 other than their criticism that Plaintiffs did not plead that "TD was *not* working to fix AML issues." (Br. 20 & n.42 (emphasis in original).) Their argument is non-responsive to the text of Statement 31. In any event, that is exactly what Plaintiffs allege. Under the FCP Defendants deliberately withheld resources needed to comply with regulatory requirements and "willfully failed to remediate persistent, pervasive, and known deficiencies in its AML." (¶¶273, 276; Defs Exs. 27 at 37 of 70; 28 at 36 of 69). | |
|  | *Statements Regarding TD's U.S. Retail and Corporate Accomplishments (¶240(e); Section VIII.E of the Complaint)* | | | | |
| 32 | In TD's 2022 and 2023 Forms 40-F, Defendants stated:<br><br>"The keys to profitability [for the U.S. Retail business] continue to be managing risk prudently." | 281 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory assertion that all statements in this category (Section VIII.E of the Complaint) "are exactly the kind of statements that are considered nonmaterial, and nonactionable, by the Second Circuit" without any explanation or cited authority. (Br. 21-22.) This is a "perfunctory" challenge, with no "effort at developed argumentation," and thus "deemed waived." *TaskUs, Inc.*, 710 F. Supp. 3d at 307. In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations. These assurances regarding compliance were indisputably untrue and are thus actionable. That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |
| | | | Statement of fact not adequately pleaded to be false or misleading *(to the extent found to be actionable statement of fact)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 32 other than their perfunctory comment that "Plaintiffs do not allege that any were actually false when made." (Br. 22.) Given Defendants make no "effort at developed argumentation," this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307. In any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because far from managing risk prudently or focusing on implementing regulatory controls, Masrani and Tran were doing the opposite, implementing the FCP, which knowingly sacrificed prudent risk management in favor of limiting costs, ¶136(d). As a result, TD willfully failed to implement the necessary regulatory controls necessary to appropriately monitor transactions with growing risk profiles. ¶136(f). | |

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 33 | In the same 2022 and 2023 Forms 40-F, Defendants also stated:<br><br>"In [2022/2023], the Corporate segment continued to support the Bank's business segments by executing on enterprise and regulatory initiatives." | 281 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory assertion that all statements in this category (Section VIII.E of the Complaint) "are exactly the kind of statements that are considered nonmaterial, and nonactionable, by the Second Circuit" without any explanation or cited authority.  (Br. 21-22.)  This is a "perfunctory" challenge, with no "effort at developed argumentation," and thus "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |
| | | | Statement of fact not adequately pleaded to be false or misleading *(to the extent found to be actionable statement of fact)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 33 other than their perfunctory comment that "Plaintiffs do not allege that any were actually false when made." (Br. 22.)  Given Defendants make no "effort at developed argumentation," or to even address the reasons for falsity plainly set out in ¶¶283, 241, this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  Moreover, and in any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because far from managing risk prudently or focusing on implementing regulatory controls, Masrani and Tran were doing the opposite, implementing the FCP, which knowingly sacrificed prudent risk management in favor of limiting costs, ¶136(d).  As a result, TD willfully failed to implement the necessary regulatory controls necessary to appropriately monitor transactions with growing risk profiles.  ¶136(f). | |

19

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| 34 | In the same 2022 and 2023 Forms 40-F, Defendant also stated: "Corporate segment will also maintain its focus on development and implementation of processes, systems, technologies, enterprise and regulatory controls to enable the Bank's businesses to operate efficiently and effectively and in compliance with applicable regulatory requirements." | 281 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory assertion that all statements in this category (Section VIII.E of the Complaint) "are exactly the kind of statements that are considered nonmaterial, and nonactionable, by the Second Circuit" without any explanation or cited authority.  (Br. 21-22.)  This is a "perfunctory" challenge, with no "effort at developed argumentation," and thus "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |
| 35 | In TD's 2022 Form 40-F, Defendants also stated: "U.S. Retail will maintain its disciplined approach to expense management, while continuing to invest strategically to support business growth." | 282 | Nonactionable general statement | Defendants do not articulate in their Brief any such challenge other than a conclusory assertion that all statements in this category (Section VIII.E of the Complaint) "are exactly the kind of statements that are considered nonmaterial, and nonactionable, by the Second Circuit" without any explanation or cited authority.  (Br. 21-22.)  This is a "perfunctory" challenge, with no "effort at developed argumentation," and thus "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  In any event, this statement gave comfort to shareholders that reasonably effective steps were being taken to comply with applicable AML regulations.  These assurances regarding compliance were indisputably untrue and are thus actionable.  That Defendants repeated these assurances throughout the Class Period further reinforces their materiality to shareholders. | TD, Masrani, Tran |
| | | | Forward-looking statement not adequately pleaded to be made with actual knowledge of falsity | Not a forward-looking statement and, in any event, actionable because (i) Defendants fail to identify any accompanying meaningful cautionary statements; (ii) statement is misleading about historical and present facts; and (iii) Plaintiffs have pled actual knowledge of falsity. | |

20

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | *Statements RegardingTD's Internal and Disclosure Controls (¶ 240(f); Section VIII.F of the Complaint)* | | |
| 36 | In TD's 2022 and 2023 Forms 40-F, Defendants Masrani and Tran executed Certifications Pursuant to Section 302 of the U.S. Sarbanes-Oxley Act of 2002 (the "SOX Certifications"), Defendants Masrani and Tran stated:<br><br>"Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;<br><br>Disclosed in this report any change in the issuer's internal control over financial reporting that occurred during the period covered by the annual report that has materially affected, or is reasonably likely to materially affect, the issuer's internal control over financial reporting;<br><br>Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the issuer, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;<br><br>Evaluated the effectiveness of the issuer's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation." | 287 | Statement of opinion/belief not adequately pleaded to be false or misleading | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (Masrani and Tran) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by Masrani and Tran because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | Masrani, Tran |
| | | | Statement of fact not adequately pleaded to be false or misleading *(to the extent found to be actionable statement of fact)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 36 other than their perfunctory comment that "Plaintiffs offer no factual allegations that these evaluations were not performed or that management did not come to such conclusions and beliefs at the time" or "indicating that the statements describing the Board's oversight responsibilities in connection with TD's internal controls and compliance were false or misleading." (Br. 23.)  Given that makes no "effort at developed argumentation," or to even address the reasons for falsity plainly set out in ¶¶291, 241, this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  Moreover, and in any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because management controls and oversight were effectively non-existent.  Throughout the Class Period, Defendants willfully violated the BSA, including by consistently failing to file SARs and CTRs for the purpose of evading transaction reporting requirements. ¶¶57, 59, 76, 77, 137(e)-(g), 156-60. | |
| 37 | TD's 2022 Form 40-F also stated that:<br><br>"Management has assessed the effectiveness of the Bank's internal control over financial reporting as at October 31, 2022, using the framework found in Internal Control - Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission 2013 Framework. Based upon this assessment, management has concluded that as at October 31, 2022, the Bank's internal control over financial reporting is effective.  An evaluation was performed under the supervision and with the participation of the Bank's management, including the Chief Executive Officer and Chief Financial Officer, of the effectiveness of the Bank's disclosure controls and procedures, as defined in the rules of the SEC and | 288 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to second and fourth sentences)* | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (TD, Masrani, and Tran) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by TD, Masrani, and Tran because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TD, Masrani, Tran |

21

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionable False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | Canadian Securities Administrators, as of October 31, 2022. Based on that evaluation, the Bank's management, including the Chief Executive Officer and Chief Financial Officer, concluded that the Bank's disclosure controls and procedures were effective as of October 31, 2022." | | Statement of fact not adequately pleaded to be false or misleading *(as to first and third sentences)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 37 other than their perfunctory comment that "Plaintiffs offer no factual allegations that these evaluations were not performed or that management did not come to such conclusions and beliefs at the time" or "indicating that the statements describing the Board's oversight responsibilities in connection with TD's internal controls and compliance were false or misleading." (Br. 23.)  Given that makes no "effort at developed argumentation," or to even address the reasons for falsity plainly set out in ¶¶291, 241, this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  Moreover, and in any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because management controls and oversight were effectively non-existent.  Throughout the Class Period, Defendants willfully violated the BSA, including by consistently failing to file SARs and CTRs for the purpose of evading transaction reporting requirements.  ¶¶57, 59, 76, 77, 137(e)-(g), 156-60. | |
| 38 | TD's 2023 Form 40-F also stated that:<br><br>"Management has assessed the effectiveness of the Bank's internal control over financial reporting as at October 31, 2023, using the framework found in Internal Control – Integrated Framework issued by the Committee of Sponsoring Organizations of the Treadway Commission 2013 Framework. Based upon this assessment, management has concluded that as at October 31, 2023, the Bank's internal control over financial reporting is effective.<br><br>An evaluation was performed under the supervision and with the participation of the Bank's management, including the Chief Executive Officer and Chief Financial Officer, of the effectiveness of the Bank's disclosure controls and procedures, as defined in the rules of the SEC and Canadian Securities Administrators, as of October 31, 2023. Based on that evaluation, the Bank's management, including the Chief Executive Officer and Chief Financial Officer, concluded that the Bank's disclosure controls and procedures were effective as of October 31, 2023." | 289 | Statement of opinion/belief not adequately pleaded to be false or misleading *(as to second and fourth sentences)* | Statement pleaded to be actionable, under *Omnicare*, for two independent reasons: (i) the speakers (TD, Masrani, and Tran) "failed to provide critical context, meaning that the speaker implied he or she had a reasonable basis for the opinion but in fact did not"; and (ii) even to the extent opinions, they were not honestly held by TD, Masrani, and Tran because each Defendant knew that the Global AML Program suffered long-standing deficiencies and that the FCP precluded sufficient investment. | TD, Masrani, Tran |

22

| | Statements | Compl. ¶ | Summary of Bases for Defendants' Position That Not Adequately Pleaded To Be Actionably False or Misleading | Summary of Bases for Plaintiffs' Position that Statements are Adequately Pleaded to Be Actionably False or Misleading | Maker of Statement |
|---|---|---|---|---|---|
| | | | Statement of fact not adequately pleaded to be false or misleading *(as to first and third sentences)* | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 38 other than their perfunctory comment that "Plaintiffs offer no factual allegations that these evaluations were not performed or that management did not come to such conclusions and beliefs at the time" or "indicating that the statements describing the Board's oversight responsibilities in connection with TD's internal controls and compliance were false or misleading." (Br. 23.)  Given that makes no "effort at developed argumentation," or to even address the reasons for falsity plainly set out in ¶¶291, 241, this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  Moreover, and in any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because management controls and oversight were effectively non-existent.  Throughout the Class Period, Defendants willfully violated the BSA, including by consistently failing to file SARs and CTRs for the purpose of evading transaction reporting requirements.  ¶¶57, 59, 76, 77, 137(e)-(g), 156-60. | |
| 39 | In the 2022, 2023, and 2024 Charters of TD's Board of Directors, published in February of those years, the Board made an identical false and misleading statement related to internal controls at TD. Specifically, the Board stated:<br><br>"Internal Controls and Management Information Systems:" "Overseeing and monitoring the integrity and effectiveness of the Bank's internal controls and management information systems. The Board is also responsible for overseeing adherence to applicable legal, audit, compliance, regulatory, accounting and reporting requirements." | 290 | Statement of fact not adequately pleaded to be false or misleading | Defendants do not articulate in their Brief any challenge to adequately pled falsity for Statement 39 other than their perfunctory comment that "Plaintiffs offer no factual allegations that these evaluations were not performed or that management did not come to such conclusions and beliefs at the time" or "indicating that the statements describing the Board's oversight responsibilities in connection with TD's internal controls and compliance were false or misleading." (Br. 23.)  Given that makes no "effort at developed argumentation," or to even address the reasons for falsity plainly set out in ¶¶291, 241, this challenge is "deemed waived." *TaskUs*, 710 F. Supp. 3d at 307.  Moreover, and in any event, as Plaintiffs explain in Section III.A.1 of the Opposition Brief, these statements were false and misleading because management controls and oversight were effectively non-existent.  Throughout the Class Period, Defendants willfully violated the BSA, including by consistently failing to file SARs and CTRs for the purpose of evading transaction reporting requirements.  ¶¶57, 59, 76, 77, 137(e)-(g), 156-60. | TD |