# EXHIBIT 1

**#2013-142**

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**COMPTROLLER OF THE CURRENCY**

|  |  |  |
|---|---|---|
| | ) | |
| **In the Matter of:** | ) | |
| | ) | |
| TD Bank, N.A. | ) | AA-EC-2013-67 |
| Wilmington, Delaware | ) | |
| | ) | |

**CONSENT ORDER FOR A CIVIL MONEY PENALTY**

The Comptroller of the Currency of the United States of America ("Comptroller"), through his national bank examiners and other staff of the Office of the Comptroller of the Currency ("OCC"), has conducted an examination and investigation of TD Bank, N.A., Wilmington, Delaware ("Bank"). The OCC has identified deficiencies in the Bank's practices that resulted in violations of 12 C.F.R. § 21.11 related to failures to file suspicious activity reports ("SARs"), and has informed the Bank of the findings resulting from the examination and investigation.

The Bank, by and through its duly elected and acting Board of Directors ("Board"), has executed a Stipulation and Consent to the Issuance of an Order for a Civil Money Penalty, dated September 20, 2013, that is accepted by the Comptroller ("Stipulation"). By this Stipulation, which is incorporated herein by reference, the Bank has consented to the issuance of this Consent Order for a Civil Money Penalty ("Order") by the Comptroller.

## ARTICLE I

## COMPTROLLER'S FINDINGS

The Comptroller finds, and the Bank neither admits nor denies, the following:

(1)     Between April 2008 and September 2009, customer account activity repeatedly triggered alerts in the Bank's anti-money laundering monitoring system.  The Bank incorrectly determined that the activity giving rise to the alerts was not suspicious activity that would warrant the timely filing of SARs.

(2)     By reason of the foregoing failures to file SARs on a timely basis, as described in Paragraph (1) of this Article, the Bank violated 12 C.F.R. § 21.11(c) and (d) with respect to each of the alerts.

(3)     The Bank's violations of 12 C.F.R. § 21.11 are part of a pattern of misconduct and caused more than a minimal loss to the Bank.

## ARTICLE II

## ORDER FOR A CIVIL MONEY PENALTY

Pursuant to the authority vested in him by the Federal Deposit Insurance Act, 12 U.S.C. § 1818(i), the Comptroller orders, and the Bank consents to the following:

(1)     The Bank shall make payment of a civil money penalty in the total amount of thirty-seven million five hundred thousand dollars ($37,500,000), which shall be paid upon the execution of this Order:

> (a)     If a check is the selected method of payment, the check shall be made payable to the Treasurer of the United States and shall be delivered to: Comptroller of the Currency, P.O. Box 979012, St. Louis, Missouri 63197-9000.

2

(b)    If a wire transfer is the selected method of payment, it shall be sent in accordance with instructions provided by the Comptroller.

(c)    The docket number of this case (AA-EC-2013-67) shall be entered on the payment document or wire confirmation and a photocopy of the payment document or confirmation of the wire transfer shall be sent immediately, by overnight delivery, to the Director of Enforcement and Compliance, Office of the Comptroller of the Currency, 400 7th Street, S.W., Washington, D.C. 20219.

(2)    This Order shall be enforceable to the same extent and in the same manner as an effective and outstanding order that has been issued and has become final pursuant to 12 U.S.C. § 1818(h) and (i).

ARTICLE III

OTHER PROVISIONS

(1)    This Order is intended to be, and shall be construed to be, a final order issued pursuant to 12 U.S.C. § 1818(i)(2), and expressly does not form, and may not be construed to form, a contract binding on the Comptroller or the United States.

(2)    This Order constitutes a settlement of the civil money penalty proceeding against the Bank contemplated by the Comptroller, based on the violations of regulation described in the Comptroller's Findings set forth in Article I of this Order.  The OCC releases and discharges the Bank from all potential liability for a civil money penalty that has been or might have been asserted by the OCC based on the violations described in the Comptroller's Findings set forth in Article I of the Order, to the extent known to the OCC as of the effective date of the Order. Provided, however, that nothing in the Stipulation or this Order shall prevent the Comptroller

3

from instituting other enforcement actions against the Bank or any of its institution-affiliated

parties based on the findings set forth in this Order, or any other findings, and nothing in the

Stipulation or this Order shall preclude or affect any right of the OCC to determine and ensure

compliance with the terms and provisions of the Stipulation or this Order.

(3)     The terms of this Order, including this paragraph, are not subject to amendment or

modification by any extraneous expression, prior agreements, or prior arrangements between the

parties, whether oral or written.

IT IS SO ORDERED, this  _20th_ day of  _Sept._  2013.


_____/s/_____
Sally G. Belshaw
Deputy Comptroller
Large Bank Supervision

**UNITED STATES OF AMERICA**
**DEPARTMENT OF THE TREASURY**
**COMPTROLLER OF THE CURRENCY**

|  |  |  |
|---|---|---|
| **In the Matter of:** | ) | |
| | ) | |
| TD Bank, N.A. | ) | AA-EC-2013-67 |
| Wilmington, Delaware | ) | |
| | ) | |

**STIPULATION AND CONSENT TO THE ISSUANCE**
**OF AN ORDER FOR A CIVIL MONEY PENALTY**

**WHEREAS**, the Comptroller of the Currency of the United States of America

("Comptroller"), based upon information derived from the exercise of his regulatory and

supervisory responsibilities, intends to initiate a civil money penalty proceeding against TD

Bank, N.A., Wilmington, Delaware ("Bank"), pursuant to 12 U.S.C. § 1818(i), for the Bank's

violations of 12 C.F.R. § 21.11 related to failures to file suspicious activity reports;

**WHEREAS**, in the interest of cooperation and to avoid additional costs associated with

administrative and judicial proceedings with respect to the above matter, the Bank, through its

duly elected and acting Board of Directors ("Board"), has agreed to execute this Stipulation and

Consent to the Issuance of a Civil Money Penalty ("Stipulation"), that is accepted by the

Comptroller, through his duly authorized representative;

**NOW, THEREFORE**, in consideration of the above premises, it is stipulated by the

Bank that:

ARTICLE I

JURISDICTION

(1)    The Bank is a national banking association chartered and examined by the

Comptroller pursuant to the National Bank Act of 1864, as amended, 12 U.S.C. § 1 *et seq.*

(2)     The Comptroller is "the appropriate Federal banking agency" regarding the Bank pursuant to 12 U.S.C. §§ 1813(q) and 1818(i).

(3)     The Bank is an "insured depository institution" within the meaning of 12 U.S.C. § 1818(i).

ARTICLE II

CONSENT

(1)     The Bank, without admitting or denying any wrongdoing, consents and agrees to issuance of the accompanying Consent Order for a Civil Money Penalty ("Consent Order") by the Comptroller.

(2)     The terms and provisions of the Consent Order apply to the Bank and all its subsidiaries, even though those subsidiaries are not named as parties to the Consent Order.

(3)     The Bank consents and agrees that the Consent Order shall be deemed an "order issued with the consent of the depository institution" pursuant to 12 U.S.C. § 1818(h)(2), and consents and agrees that the Consent Order shall become effective upon its execution by the Comptroller through his authorized representative, and shall be fully enforceable by the Comptroller pursuant to 12 U.S.C. § 1818(i).

(4)     Notwithstanding the absence of mutuality of obligation, or of consideration, or of a contract, the Comptroller may enforce any of the commitments or obligations herein undertaken by the Bank under his supervisory powers, including 12 U.S.C. § 1818(i), and not as a matter of contract law.  The Bank expressly acknowledges that neither the Bank nor the Comptroller has any intention to enter into a contract.

2

(5)     The Bank declares that no separate promise or inducement of any kind has been made by the Comptroller, or by his agents or employees, to cause or induce the Bank to consent to the issuance of the Consent Order and/or execute this Stipulation.

(6)     The Bank expressly acknowledges that no officer or employee of the Comptroller has statutory or other authority to bind the United States, the United States Treasury Department, the Comptroller, or any other federal bank regulatory agency or entity, or any officer or employee of any of those entities to a contract affecting the Comptroller's exercise of his supervisory responsibilities.

(7)     The Consent Order constitutes a settlement of the civil money penalty proceeding against the Bank contemplated by the Comptroller, based on the violations described in the Comptroller's Findings set forth in Article I of the Consent Order.  The Comptroller releases and discharges the Bank from all potential liability for a civil money penalty order that has been or might have been asserted by the Comptroller based on the violations described in the Comptroller's Findings set forth in Article I of the Consent Order, to the extent known to the Comptroller as of the effective date of the Consent Order.  However, the violations alleged in Article I of the Consent Order may be utilized by the Comptroller in other future enforcement actions against the Bank or its institution-affiliated parties, including, without limitation, to establish a pattern or practice of violations or the continuation of a pattern or practice of violations.  This release shall not preclude or affect any right of the Comptroller to determine and ensure compliance with the terms and provisions of this Stipulation or the Consent Order.

ARTICLE III

WAIVERS

(1)    The Bank, by executing this Stipulation and consenting to the Consent Order, waives:

(a)    Any and all rights to the issuance of a Notice of Charges pursuant to 12 U.S.C. § 1818(i);

(b)    Any and all procedural rights available in connection with the issuance of the Consent Order;

(c)    Any and all rights to a hearing and a final agency decision pursuant to 12 U.S.C. § 1818(i), 12 C.F.R. Part 19;

(d)    Any and all rights to seek any type of administrative or judicial review of the Consent Order;

(e)    Any and all claims for fees, costs or expenses against the Comptroller, or any of his agents or employees, related in any way to this enforcement matter or the Consent Order, whether arising under common law or under the terms of any statute, including, but not limited to, the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412;

(f)    Any and all rights to assert this proceeding, this Stipulation, consent to the issuance of the Consent Order, and/or the issuance of the Consent Order, as the basis for a claim of double jeopardy in any pending or future proceeding brought by the United States Department of Justice or any other governmental entity; and

4

(g)    Any and all rights to challenge or contest the validity of the Consent

Order.

ARTICLE IV

CLOSING

(1)    The provisions of this Stipulation and the Consent Order shall not inhibit, estop, bar, or otherwise prevent the Comptroller from taking any other action affecting the Bank if, at any time, he deems it appropriate to do so to fulfill the responsibilities placed upon him by the several laws of the United States of America.

(2)    Nothing in this Stipulation or the Consent Order shall preclude any proceedings brought by the Comptroller to enforce the terms of the Consent Order, and nothing in this Stipulation or the Consent Order constitutes, nor shall the Bank contend that it constitutes, a release, discharge, compromise, settlement, dismissal, or resolution of any actions, or in any way affects any actions that may be or have been brought by any other representative of the United States or an agency thereof, including, without limitation, the United States Department of Justice.

(3)    The terms of this Stipulation, including this paragraph, and of the Consent Order are not subject to amendment or modification by any extraneous expression, prior agreements or prior arrangements between the parties, whether oral or written.

5

IN TESTIMONY WHEREOF, the undersigned, as the duly elected and acting Board of Directors of TD Bank, N.A., Wilmington, Delaware, have hereunto set their hands on behalf of the Bank.

| | |
|---|---|
| */s/* | *Sept. 18, 2013* |
| W. Edmund Clark | Date |
| | |
| */s/* | *Sept. 18, 2013* |
| William E. Bennett | Date |
| | |
| */s/* | *Sept. 18, 2013* |
| P. Kevin Condron | Date |
| | |
| */s/* | *9/18/2013* |
| Stanley Grayson | Date |
| | |
| */s/* | *9/18/13* |
| Dana S. Levenson | Date |
| | |
| */s/* | *9-19-13* |
| Bharat B. Masrani | Date |
| | |
| */s/* | *Sept. 18, 2013* |
| Thomas J. Mullin | Date |
| | |
| */s/* | *9-19-13* |
| Peter G. Vigue | Date |
| | |
| */s/* | *9/19/2013* |
| Natica von Althann | Date |

6

*/s/*                                              *Sept 18 2013*
_____        _____
Mike Pedersen                                     Date

7

Accepted by:

THE COMPTROLLER OF THE CURRENCY

              */s/*                                        *Sept. 20, 2013*

By:    Sally G. Belshaw                          Date
         Deputy Comptroller
         Large Bank Supervision

8