**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  v.<br><br>THE TORONTO-DOMINION BANK, TD BANK, N.A., TD BANK US HOLDING COMPANY, AJAI K. BAMBAWALE, MICHAEL BOWMAN, MIA LEVINE, BHARAT MASRANI, LEOVIGILDO SALOM, and KELVIN VI LUAN TRAN,<br><br>        Defendants. | Cons. C.A. No. 1:24-cv-08032-AS<br><br>ORAL ARGUMENT REQUESTED |

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Adam S. Hakki (Lead Trial Counsel)
Jeffrey D. Hoschander
Samuel A. Stuckey
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 848-4000

*Attorneys for Defendants The Toronto-Dominion Bank, TD Bank, N.A., TD Bank US Holding Company, Ajai K. Bambawale, Bharat Masrani, Leovigildo Salom, and Kelvin Vi Luan Tran*

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    THE OPPOSITION CONFIRMS THE CAC'S FAILURE TO PLEAD ANY
      ACTIONABLE MISREPESENTATION OR OMISSION................................................2

      A.    Statements About TD's AML Program Were Not Actionably False or
            Misleading.................................................................................................................3

      B.    Statements Regarding The Delay In Closing The FH Transaction Were Not
            Actionably False or Misleading .................................................................................6

      C.    Statements About Investigations of The AML Program Were Not Actionably
            False or Misleading....................................................................................................7

      D.    Statements About TD's U.S. Retail and Corporate Accomplishments Were
            Not Actionably False or Misleading ..........................................................................8

      E.    Statements About Internal and Disclosure Controls Were Not Actionably
            False or Misleading....................................................................................................9

II.   THE OPPOSITION CONFIRMS THE CAC'S FAILURE TO PLEAD A STRONG
      INFERENCE OF SCIENTER .......................................................................................10

      A.    The Opposition Identifies No Cognizable Motive..................................................11

      B.    The Opposition Improperly Relies on Compounded Speculation to Assert
            Knowledge or Recklessness.....................................................................................12

            1.    The Pleas Do Not Establish Scienter ...........................................................12

            2.    Plaintiffs' Remaining Scienter Theories Are Baseless .............................13

      C.    The Non-Fraudulent Inference Is Far More Compelling.........................................15

III.  THE OPPOSITION CONFIRMS THE CAC FAILS TO PLEAD LOSS
      CAUSATION .................................................................................................................16

IV.   THE OPPOSITION CONFIRMS PLAINTIFFS' SCHEME LIABILITY CLAIM IS
      DEFECTIVE FOR ADDITIONAL REASONS..............................................................16

V.    THE OPPOSITION CONFIRMS THE CAC DOES NOT STATE A
      SECTION 20(a) CLAIM ...............................................................................................18

CONCLUSION..............................................................................................................................18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Barclays Bank PLC Sec. Litig.*,
 756 F. App'x 41 (2d Cir. 2018) ................................................................................8

*In re BHP Billiton Ltd. Sec. Litig.*,
 276 F. Supp. 3d 65 (S.D.N.Y. 2017).........................................................................4

*In re CarLotz, Inc. Sec. Litig.*,
 2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024).........................................................17

*Chapman v. Mueller Water Prods., Inc.*,
 466 F. Supp. 3d 382 (S.D.N.Y. 2020).......................................................................9

*In re Citigroup Sec. Litig.*,
 2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023).........................................................15

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014)..................................................................................3, 8

*In re DDAVP Direct Purchaser Antitrust Litig.*,
 585 F.3d 677 (2d Cir. 2009)....................................................................................10

*Diehl v. Omega Protein Corp.*,
 339 F. Supp.3d 153 (S.D.N.Y. 2018).........................................................................3

*Green v. Deutsche Bank Aktiengesellschaft*,
 2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019)..........................................................9

*Kalnit v. Eichler*,
 264 F.3d 131 (2d Cir. 2001)........................................................................11, 12, 15

*Karimi v. Deutsche Bank Aktiengesellschaft*,
 607 F. Supp. 3d 381 (S.D.N.Y. 2022).......................................................................4

*Kempen Int'l Funds v. Syneos Health, Inc.*,
 2025 WL 949576 (S.D.N.Y. Mar. 28, 2025) ......................................................2, 10

*In re Liberty Tax, Inc. Sec. Litig.*,
 828 F. App'x 747 (2d Cir. 2020) ..............................................................................3

*Meyer v. Jinkosolar Holdings Co.*,
 761 F.3d 245 (2d Cir. 2014).......................................................................................4

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
 732 F. Supp. 3d 300 (S.D.N.Y. 2024).......................................................................11

*Singh v. Cigna Corp.*,
918 F.3d 57 (2d Cir. 2019)..............................................................................................4

*Skiadas v. Acer Therapeutics Inc.*,
2020 WL 3268495 (S.D.N.Y. June 16, 2020) ...........................................................11

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
552 U.S. 148 (2008)......................................................................................................16

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)......................................................................................................15

*Troy v. City of New York*,
2014 WL 4804479 (S.D.N.Y. Sept. 25, 2014)..........................................................10

*In re Turquoise Hill Resources Ltd. Sec. Litig.*,
625 F. Supp. 3d 164 (S.D.N.Y. 2022).............................................................. *passim*

*In re Vivendi, S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016).......................................................................................2, 3

**Statutes, Rules & Regulations**

15 U.S.C. § 78u-4(b)(1)(B)..............................................................................................3

### **INTRODUCTION**[1]

Plaintiffs' Opposition confirms that this case is a transparent effort to recast admitted AML shortcomings as securities fraud. The Opposition confirms that the CAC has no factual allegations that bridge the gap between these admitted deficiencies and any misleading statement, much less particularized allegations that Defendants intentionally deceived investors.

*First*, Plaintiffs do not establish that any of the 39 challenged statements was actionably misleading when made. Effectively conceding as much, the Opposition pivots to an argument that, even if no individual statement itself was false or misleading, the statements are collectively actionable as "a network of interrelated lies" that gave "comfort" regarding the effectiveness of TD's AML compliance program. But Plaintiffs' new theory eradicates their obligation under the PSLRA to plead the falsity of *each* challenged statement. And even on its own flawed terms, Plaintiffs' theory fails: lumping together a group of non-actionable statements does not produce an actionable one.

*Second*, even if an actionable misstatement could be pled, the CAC runs aground on scienter. The Opposition does nothing to solve the fundamental pleading defects and internal contradictions that preclude any inference that any Defendant intended to defraud investors, much less the "strong inference" of scienter the PSLRA requires. Plaintiffs remain unable to identify any legally cognizable motive for Defendants to commit securities fraud. Instead, the Opposition spins a tale that TD somehow attempted to conceal that regulatory scrutiny of its AML issues would preclude consummation of the FH Transaction in order to close that deal. This convoluted

---

[1] Defined terms have the same meaning as in Defendants' opening brief (ECF No. 72), referred to as Defendants' "Motion" or "Mot." Plaintiffs' opposition brief (ECF No. 85) is referred to as Plaintiffs' "Opposition" or "Opp." and their separate opposition to Defendants Bowman's and Levine's motions (ECF No. 86) is referred to as Plaintiffs' "Supp. Opp." Citations to "Ex. __" are to the declarations in support of the Motion (ECF No. 73 (for Exs. A-B & 1-30); and filed herewith (for Exs. 31-34)). Unless otherwise indicated, internal citations and quotation marks are omitted. Defendants cite the CAC's allegations solely for purposes of the Motion and do not concede their accuracy.

theory makes no sense and is entirely unsupported by any well-pleaded allegation.  In any event, like the CAC, the Opposition fails to identify any information contemporaneously conveyed to any Defendant that conflicted with a statement by that Defendant, which alone requires dismissal.

*Finally*, the Opposition also does not cure the other deficiencies of the CAC, including that:  (i) Plaintiffs' "scheme liability" claim is defective because the CAC does not plead scienter or reliance; (ii) the CAC fails to articulate any plausible loss causation theory; and (iii) Plaintiffs' "control person" claim must be dismissed for lack of a primary violation and because the CAC does not plead that any Individual Defendant controlled or culpably participated in such a violation.

## ARGUMENT

### I.    THE OPPOSITION CONFIRMS THE CAC'S FAILURE TO PLEAD ANY ACTIONABLE MISREPESENTATION OR OMISSION

The Opposition confirms that the CAC does not identify actionable misrepresentations.

As the Motion established (Mot. at 12-23 & n.36), the CAC's 25 pages of undifferentiated block quotations purporting to identify 39 alleged misstatements in 6 categories over nearly 3 years are a textbook example of impermissible "puzzle pleading" that fails to identify particularized facts that allegedly contradict *each* challenged statement.  This is "inconsistent with the PSLRA's requirements" and warrants dismissal.  *Kempen Int'l Funds v. Syneos Health, Inc.*, 2025 WL 949576, at \*1 (S.D.N.Y. Mar. 28, 2025).

Unable to defend the CAC's scattershot attempt to plead falsity, the Opposition instead improperly invites the Court to consider the statements "collectively," arguing they were purportedly "interrelated" and aimed at perpetuating a "broader, material lie."  Opp. at 12, 17.[2]

---

[2]    The Opposition claims that *In re Vivendi, S.A. Securities Litigation*, 838 F.3d 223 (2d Cir. 2016) justifies this collective approach, but *Vivendi* had nothing to do with pleading standards, as the Second Circuit itself recognized. *Id.* at 242 n.11 (distinguishing post-trial sufficiency-of-the-evidence review from the PSLRA's pleading

2

The PSLRA does not permit this.  *See* 15 U.S.C. § 78u-4(b)(1)(B) (requiring particularized falsity allegations as to "each" statement).  But whether considered individually (as the PSLRA requires) or collectively (as Plaintiffs suggest), the CAC does not adequately allege, and the Opposition does not show, that any of the challenged statements are misleading.

> **A.    Statements About TD's AML Program Were Not Actionably False or Misleading**

The Opposition confirms that the CAC's challenge to an array of general statements about the AML program (Ex. B, statements 1-11) is unavailing because such statements are not actionable as a matter of law and are otherwise not adequately alleged to be false or misleading.[3]

Nonactionable General Statements (Ex. B, statements 4-5, 10-11):  The Opposition does not—and cannot—dispute that general statements about compliance programs are classically immaterial and not actionable as a matter of law, unless they are "sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014); *see also* Mot. at 14-15.  The Second Circuit (and courts within it) rejects attempts to assert securities fraud claims following regulatory resolutions based on statements far more specific and detailed than those challenged here.  Mot. at 14-15.[4]  The Opposition's attempt to evade this clear and authoritative precedent is meritless.

---

requirements).  Moreover, *Vivendi* reflected a concerted effort by the alleged makers of the challenged statements to "systematically misrepresent" and "assiduously conceal" from the market the company's financial condition.  *See id*. at 250.  The CAC does not remotely suggest such a concerted effort.  *See infra*, Section II.

[3]    The CAC divides statements about the AML program into two categories (general and "in connection with the FH [Transaction]"), but the Opposition groups these categories together.  Opp. at 13-14.  Because Plaintiffs' challenges to these statements suffer from common infirmities, Defendants address them together here.

[4]    *See, e.g.*, *In re Liberty Tax, Inc. Sec. Litig.*, 828 F. App'x 747, 750-51 (2d Cir. 2020) (statements that "our compliance task force was very successful in analyzing, reviewing and evaluating the work of our compliance department and taking appropriate action," immaterial as a matter of law); *Diehl v. Omega Protein Corp.*, 339 F. Supp. 3d 153, 162 (S.D.N.Y. 2018) (statements about having "implemented a comprehensive compliance program which

The Opposition's reliance on *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245 (2d Cir. 2014), because the statements purportedly "g[a]ve comfort to investors" about the effectiveness of TD's AML compliance (Opp. at 21-23), mischaracterizes the case.  In *Jinkosolar*, the statements at issue *were not generic* because they included specific, detailed representations—which were demonstrably false—about *how* the issuer purportedly ensured regulatory compliance.  *Id.* at 247, 251; *see also Singh v. Cigna Corp.*, 918 F.3d 57, 60-61, 63 (2d Cir. 2019) (*Jinkosolar* statements were actionable because "the company described its compliance mechanisms in confident detail").[5]  The challenged statements here mirror statements the Second Circuit has confirmed are generic and nonactionable.  *See Singh*, 918 F.3d at 60-61 (statements about "established policies and procedures to comply with applicable requirements" and "continu[ing] to allocate significant resources" immaterial).

The few statements that the Opposition claims provide detail about AML compliance reflect only that TD's AML program is routinely evaluated and updated and is administered by qualified personnel (Opp. at 22), and—unlike *Jinkosolar*—the CAC does not actually allege that any of these generic, unremarkable statements were false.

Accurate Statements of Historical Fact (Ex. B, statements 1-5, 8-9):  The Opposition also confirms that the CAC does not plead the falsity of the basic descriptions of the AML program. As the Motion explained in detail, allegations that AML deficiencies occurred do not show that

---

cover[ed] the areas addressed by the" plea agreement were "too general to cause a reasonable investor['s]" reliance and thus immaterial as a matter of law).

[5]     *Karimi v. Deutsche Bank Aktiengesellschaft*, 607 F. Supp. 3d 381 (S.D.N.Y. 2022), and *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65 (S.D.N.Y. 2017) (Opp. at 23), illustrate the required specificity that is absent here. *Karimi* involved detailed descriptions of a bank's know-your-customer onboarding procedures, including that they involved "strict identification requirements" that allegedly were not followed.  607 F. Supp. 3d at 393.  Similarly, *BHP* involved specific guarantees that the company had "ensure[d] [its] operations" could address and "verif[ied] that critical controls [we]re effective" in preventing material safety incidents.  276 F. Supp. 3d at 79-80 & n.4.

TD did not have an AML program or policies and thus fail to render these statements false. Mot. at 13-14. Plaintiffs' groundless argument that Defendants "waived" arguments as to these statements (Opp. at 18) is false and turns the parties' obligations on their head. The PSLRA obligates *Plaintiffs* to plead (with particularly) the falsity of each statement. The Opposition's failure to identify any factual allegations other than admitted AML deficiencies confirms that Plaintiffs have not satisfied this obligation.

Audit Committee Opinions (Ex. B, statements 6-7): Statements that the Audit Committee was "satisfied that it ha[d] fulfilled its responsibilities" are paradigmatic opinion statements that the CAC does not plead are actionable. Mot. at 15. The Opposition argues only that these statements contain an embedded factual assertion that the Audit Committee in fact oversaw TD's AML efforts (Opp. at 25), but it identifies no factual allegation that the Audit Committee *did not* conduct such oversight. Admitted AML deficiencies do not show that the Audit Committee did not oversee AML compliance efforts.

Nonactionable Merger Statements (Ex. B, statements 8-11): The Opposition confirms that the CAC's challenges to merger representations made in contemplation of the FH Transaction are baseless. The Opposition does not dispute that the Bank Merger Application certifications (statements 8-9) were statements of belief expressly qualified by Salom's knowledge at the time and fails to identify any factual allegation that Salom did not hold this belief. Mot. at 17; Opp. at 24. And statements that TDBNA had "reasonably designed" AML procedures to ensure compliance with applicable regulations (statements 10-11) are statements that are paradigmatically too general to be actionable.[6] Mot. at 16-17; *supra* at 4-5.

---

[6] The challenged statement in the FH Merger Agreement (statement 11) is also not actionable because it was a statement *to FH*, not TD investors, and—because it was expressly materiality qualified and contemplated to fail— was not sufficiently specific to constitute a "guarantee" of a particular outcome. Mot. at 16 & n.40; *supra* at 4-5.

### B. Statements Regarding The Delay In Closing The FH Transaction Were Not Actionably False or Misleading

The Opposition does not meaningfully contest that the bulk of the challenged statements about the delay in closing the FH Transaction are protected forward-looking statements and/or statements of opinion. Ex. B, statements 12-17. Instead, the Opposition distorts the actual statements and cites to unsubstantiated articles that bear no indicia of reliability. These attempts fail.

Misquotation of Analyst Q&A (Ex. B, statement 13): The Opposition argues that Masrani concealed the reason for the delay in the FH Transaction during a 4Q22 earnings call by selectively omitting the actual question Masrani was responding to: "I mean are they taking a closer look at anything? *Are you anticipating having to make any adjustments to your product lineup or your fee schedule in advance of the close?*" *Compare* Opp. at 14 *with* Ex. 5 at 9 (emphasis added). Plaintiffs fail to plead falsity as to Masrani's response: "No, I'm not aware of anything of the sort you're mentioning." There is no basis in the CAC to suggest that Masrani or TD had been informed of any need to make any adjustments to TD's product lineup or fee schedule. Nor can there be any inference of scienter with respect to Masrani's response in that context. *See infra*, Section II.

Reliance on Unsourced Article (Ex. B, statements 12-17): The Opposition's remaining challenge to these statements is premised on their assertion—based on an anonymously "sourced" *Capitol Forum* article published more than a year later—that TD had been informed by November 2022 of significant AML failures. Opp. at 20. The article lacks any indicia of reliability and should be disregarded. Mot. at 19. Even if it were credible, it does not state that TD was informed

---

Plaintiffs argue only that the representation is not *per se* inactionable because it was not directed to them but do not contest its generality. Opp. at 21-22 n.7.

that AML issues would prevent the FH Transaction from closing. *Id.* And contrary to the Opposition's suggestion (Opp. at 20), the article does not say that any Individual Defendant was informed of AML deficiencies in November 2022. Ex. 31. The Opposition argues that the article is "consistent with" Plaintiffs' other allegations, but Plaintiffs identify nothing else to suggest that any Individual Defendant had been informed the FH Transaction would not close due to AML issues as of November 2022.

Misquotation of Investor Call (Ex. B, statements 17-21): The Opposition illogically doubles down on the CAC's assertion that Masrani falsely stated during TD's April 20, 2023 annual meeting that TD discussed extending the transaction timeline with FH (Opp. at 15) based on a May 5, 2023 *WSJ* article that plainly misquotes a statement by FH's CEO during an investor call that morning (Mot. at 18). Plaintiffs speculate that the *WSJ* may have been quoting an unidentified source (Opp. at 19), but their own allegations demonstrate that the *WSJ*'s reporting is incorrect: a purported statement by FH's CEO that "TD and FH didn't discuss extending the timeline for the deal" is directly contradicted by the fact that—as Plaintiffs allege (¶98)—TD and FH in fact previously extended the timeline for the deal.

### C. Statements About Investigations of The AML Program Were Not Actionably False or Misleading

The Opposition's attempts to rescue the CAC's challenges to statements about the AML investigations contravene Second Circuit law.

2022 Risk Disclosure (Ex. B, statement 22): The sole statement Plaintiffs identify that precedes TD's August 2023 disclosure regarding investigations into its BSA/AML compliance program is a risk disclosure regarding compliance issues in its December 2022 Annual Report. Plaintiffs' argument that the disclosure was misleading because the risk had already materialized

should be disregarded because it is premised on their unsupported assertion that TD was informed of severe AML issues as of November 2022 (Opp. at 20-21).  *See supra*, Section I.B.

Investigation Statements (Ex. B, statements 23-31):  The remaining statements in this category all followed TD's August 2023 disclosure of the AML investigations (including that TD anticipated monetary and non-monetary penalties).  The Opposition repeats the CAC's allegations that Defendants should have effectively disclosed the *results* of the investigations while they were ongoing (Opp. at 15-16), but Defendants have neither a duty to disclose "uncharged, unadjudicated wrongdoing" nor a duty to predict the outcome of ongoing investigations.  *UBS AG*, 752 F.3d at 184; *see also In re Barclays Bank PLC Sec. Litig.*, 756 F. App'x 41, 51 (2d Cir. 2018) (no duty to disclose a "regulator's expressions of concerns").

> **D.      Statements About TD's U.S. Retail and Corporate Accomplishments Were Not Actionably False or Misleading**

The Opposition does nothing to support the CAC's inadequate argument that generic statements about TD's risk management in the context of its U.S. retail accomplishments (Ex. B, statements 32-35) are actionable.  *See* Mot. at 21-22.  Instead, the Opposition argues that TD did not in fact prudently manage risk (Opp. at 16-17) and falsely claims that certain of these statements do not qualify as forward-looking because they were not accompanied by meaningful cautionary language (*id.* at 26-27).

Both contentions are specious.  Generic statements about prudent risk management are immaterial as a matter of law.  Mot. at 16-17, 21-22; *supra* at 4-5.  And, contrary to Plaintiffs' contentions, each of the statements (Ex. B, statements 34-35) was cast in future tense, explicitly identified as forward-looking, and accompanied by robust cautionary language.  Mot. at 21-22.[7]

---

[7]      Ex. 32, 2022 TD Form 40-F, at 3-4 (forward-looking statement disclaimer applicable to MD&A sections including "Operating Environment and Outlook" and "2022 Accomplishments and Focus for 2023") & MD&A at 24

**E.    Statements About Internal and Disclosure Controls Were Not Actionably False or Misleading**

The Opposition confirms that Plaintiffs' challenge to opinions about TD's internal and disclosure controls and generic statements about the Board's responsibilities are baseless.

Disclosure Control Opinions (Ex. B, statements 36-38):  SOX certifications and statements regarding management's assessments of financial reporting and disclosure controls are paradigmatic opinion statements that are not alleged to be false.  *See* Mot. at 22-23.  The Opposition's contention that certain Defendants "willfully violated the BSA" (Opp. at 17) is non-responsive.  The Pleas had nothing to do with *TD's financial reporting*, which the CAC in any event does not challenge.  Plaintiffs therefore cannot premise a claim on opinion statements regarding TD's financial reporting controls.  *See, e.g., Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 410 (S.D.N.Y. 2020) (dismissing claim based on SOX certifications where financial statements were not alleged to be misleading); *Green v. Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804, at *2 (S.D.N.Y. Sept. 30, 2019) (same, for statements regarding financial reporting controls).

Board Charter (Ex. B, statement 39):  TD's Board Charter's description of the Board's responsibilities is not alleged to be false.  *See* Mot. at 22-23.  The Opposition does not address these statements and therefore concedes the CAC's failure to plead their falsity.  Nor could Plaintiffs argue that statements that TD's Board is "responsible for" overseeing internal controls are false because Plaintiffs directly allege precisely the same thing.  ¶180.

---

(statement 35, in the former section) & 31 (statement 34, in the latter); Ex. 33, 2023 TD Form 40-F, at 3-4 & MD&A at 32 (same, for FY2023 and statement 34).

## II.    THE OPPOSITION CONFIRMS THE CAC'S FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER

The Opposition confirms the CAC lacks a compelling theory of fraudulent intent.  To allege scienter, Plaintiffs must plead particularized facts showing "either (1) that defendant[] had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness."  Mot. at 23.  As to the latter, Plaintiffs must allege particularized facts—for each Defendant and each statement—showing "that [1] specific contradictory information was available to the defendants [2] at the same time they made their misleading statements." *Id.*

Like the CAC, the Opposition fails to identify any cognizable motive; and, as to circumstantial evidence, repackages the CAC's medley of hindsight-driven speculation without showing that any Defendant *knew* a statement was false at the time the Defendant made it.

Moreover, the allegations are facially deficient because they are impermissibly group- and puzzle-pleaded.  Mot. at 24-25, 29.  The Opposition effectively concedes this by belatedly purporting to identify the alleged "maker" of each challenged statement and arguing that Plaintiffs' pleading deficiencies should be excused because the CAC challenges fewer statements than other complaints that have been dismissed for similar defects.  Opp. at 39 & n.15.  Each of these defects independently warrants dismissal.  *Kempen*, 2025 WL 949576, at *1 (puzzle-pleading); *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) (group-pleading).

Further, Plaintiffs' belated identification of the alleged "maker" of each statement is improper because an opposition brief (much less an exhibit to one) cannot amend a pleading.  *E.g.*, *Troy v. City of New York*, 2014 WL 4804479, at *1 (S.D.N.Y. Sept. 25, 2014).  And Plaintiffs' repeated identification of "TD," rather than any individual, as the "maker" of the challenged statements underscores the infirmity of their scienter allegations, which do not identify any

10

individuals from whom TD's purported scienter is allegedly imputed, let alone show that such individuals possessed scienter.  *See* Mot. at 24 & n.46.

Plaintiffs' allegations fall well short of raising a strong inference of scienter, much less one at least as cogent and compelling as the clear non-fraudulent inference here.

### A.       The Opposition Identifies No Cognizable Motive

The Opposition concedes that the sole purported motive the CAC identifies is alleged additional compensation "tied to the FH [Transaction]."[8]  Opp. at 36.  A purported desire for increased compensation is insufficient because "such a desire can be imputed to all corporate officers." *Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001); Mot. at 26.

The Opposition's attempts to evade this rule by arguing that there was a "direct link" between Masrani's compensation and the challenged statements or because certain Individual Defendants' compensation was "slashed" after the Pleas (Opp. at 36) do not save the CAC's deficient motive allegations.  The cases Plaintiffs rely upon involved defendants who allegedly falsified metrics to achieve material bonuses directly based on those metrics or misrepresented the status of regulatory approval of their product to avoid insolvency.[9]  The FH Transaction, by contrast, was one of 14 bulleted items included in a summary of factors considered in connection with a minor adjustment to the variable portion of Masrani's 2022 compensation.  Ex. 34, 2023

---

[8]       The CAC alleges this purported motive only with respect to Masrani.  ¶215.  The Opposition's unpleaded argument that Tran and Salom had similar motives (Opp. at 36) is an improper attempt to supplement the CAC and unavailing because the purported motive is legally irrelevant.  Plaintiffs do not attempt to identify even an unpleaded motive for Bambawale.

[9]       *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 318 (S.D.N.Y. 2024) (undisclosed channel stuffing was "critical" to securing "specific bonuses" under incentive plan where the company "just barely hit the thresholds necessary"); *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11 (S.D.N.Y. June 16, 2020) (company conceded "it would run out of money and Defendants would have had no chance to bring [their product] to market" without raising additional funds through misrepresentations).

Proxy at 52.  Moreover, *reductions* in executive compensation after a significant corporate event like the Pleas say nothing about whether such compensation was a *motive* for securities fraud.

Plaintiffs' theory is also circular: Plaintiffs argue that Masrani hid the fact that the FH Transaction could not be consummated because of AML issues in order to secure unspecified additional compensation for the very deal that according to Plaintiffs he knew could not close. This makes no sense.

Plaintiffs' motive allegations are insufficient as a matter of law.

**B.      The Opposition Improperly Relies on Compounded Speculation to Assert Knowledge or Recklessness**

Because Plaintiffs have not alleged a cognizable motive, they face a "correspondingly greater" burden to plead "conscious misbehavior" by each Individual Defendant. *Kalnit*, 264 F.3d at 142.  The Opposition's repetition of the CAC's blatant mischaracterization of the Pleas and hindsight-driven speculation does not discharge this burden.

**1.      The Pleas Do Not Establish Scienter**

The Opposition—like the CAC—argues that scienter is proven by the Pleas (Opp. at 30-31), but this argument is based on fundamental misrepresentations of the Pleas, which do not establish scienter as to any Defendant (Mot. at 28).

Plaintiffs baldly assert that TDBNA and TDBUSH "admitted their own scienter" through the Pleas with no citation or support.  Opp. at 30.  TDBNA and TDBUSH accepted responsibility for certain money-laundering offenses, but the Pleas say nothing about disclosures to investors or any of the challenged statements, much less about *an intent to deceive investors*; and Plaintiffs cannot and do not argue otherwise.  Nor do the Pleas admit facts establishing that any of the challenged statements were known to be false when they were made.  The CAC also does not

allege that TDBNA or TDBUSH made the challenged statements, much less that the individuals at those entities responsible for such statements knew they were false when made.

Similarly, Plaintiffs falsely assert that the Pleas "admit the knowledge, and at minimum recklessness," of Masrani and Salom. *Id.* The Pleas say nothing of the sort. Plaintiffs' argument is based on a single line in the Pleas stating that the boards of certain TD entities "were made aware of certain of the concerns" identified by regulators regarding TDBNA's transaction monitoring at one or more unspecified points over an eleven-year period. Opp. at 30; ¶176; Ex. 27 ¶24. But the Pleas *do not* state what concerns were communicated, to whom, or when, or whether any of these unspecified concerns contradicted any challenged statement—and thus cannot support a particularized claim of scienter.

### 2. Plaintiffs' Remaining Scienter Theories Are Baseless

The Opposition's other attempts to fill the gaps in their deficient scienter theory fare no better:

Defendants' Roles:  The Opposition argues that the Individual Defendants must have known about AML deficiencies because of their senior roles, but Plaintiffs' allegations show only that certain Individual Defendants engaged in enterprise-wide budgeting, *not* that they were aware of AML deficiencies. Opp. at 28-29; Mot. at 30-31. The involvement of senior executives in routine business matters like cost containment does not support an inference of fraud. And an inference of fraud is unreasonable here:  As Plaintiffs concede, the Individual Defendants were informed by AML compliance personnel that cost containment measures were being implemented "without compromising risk appetite." Supp. Opp. at 6, 8. Moreover, while the Opposition argues that certain Individual Defendants received "reports" (Opp. at 30), Plaintiffs do not allege the contents of those reports, much less that they contained "specific contradictory information." *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 625 F. Supp. 3d 164, 238 (S.D.N.Y. 2022).

Former Employees:   The Opposition claims that the CAC's scienter allegations are corroborated by the statements of FE-3.  Opp. at 31-32.  FE-3 is both unreliable and irrelevant. Mot. at 31-32.  The Opposition's attempt to bolster FE-3 only underscores that Plaintiffs concede he was not involved in AML issues, and, in their telling, his "extensive direct communications" with "TD's C-Suite" amount to one annual budget email he received where Tran was copied and one virtual meeting he attended where Salom discussed budget initiatives, neither of which is even alleged to have involved AML issues at all.  Opp. at 31.

Purported History:   The Opposition's reference to TD's purported "history" of AML deficiencies does not cure the CAC's inadequate scienter allegations.  The actions the CAC identifies predate the first challenged statement by approximately a decade (Opp. at 33), and thus do not constitute "specific contradictory information" available to any Defendant "at the time" a challenged statement was made.  *Turquoise*, 625 F. Supp. 3d at 238.  Without a temporal linkage, these allegations cannot support scienter.  *Id.*

Terminations and Compensation Cuts:  Similarly, Plaintiffs' attempt to bootstrap a handful of personnel moves and discretionary pay decisions *after* TD entered the Pleas into a "strong inference" of scienter at the time of the challenged statements is unavailing, as such allegations do not remotely satisfy the PSLRA's rigorous scienter standard.  Mot. at 31-32.  The Opposition's speculation that the resignations were of individuals "closely related to the underlying fraudulent conduct" at most suggests that these issues were related to the AML deficiencies, *not investor fraud*, and is the sort of conjecture courts routinely reject.  *Id.*

Core Operations:  Finally, the Opposition's attempt to invoke the "core operations" concept by arguing that the Individual Defendants must have known of the AML deficiencies because TD's U.S. retail business generated 32-52% of TD's net income (Opp. at 35) does not relieve Plaintiffs

14

of their pleading obligations. Mot. at 31. As the Second Circuit has made clear, even where a business line is important, the complaint must still "specifically identify the reports or statements" containing contrary facts that were available to the speaker "at the time" the challenged statement was made. *Turquoise*, 625 F. Supp. 3d at 238; *see also In re Citigroup Sec. Litig.*, 2023 WL 2632258 at *22 (S.D.N.Y. Mar. 24, 2023) ("core operations" concept cannot "independently establish" or "bolster" scienter absent identification of "specific fact[s]" contradicting statements and known to speaker "at the time they were made"). Plaintiffs invite the Court to assume that any high-level executive must have known the operational details of a complex, multi-state compliance function, including deficiencies—but this is an inference the Second Circuit has rejected as "speculation." *Kalnit*, 264 F.3d at 142.

### C.    The Non-Fraudulent Inference Is Far More Compelling

Plaintiffs' legally insufficient "motive" allegations and purported circumstantial evidence of scienter do not provide a basis for the requisite "strong inference of scienter." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 323 (2007). Moreover, scienter allegations, viewed holistically, must present a specific inference of fraud that is not just "strong" but also at least as "cogent and compelling" as non-fraudulent inferences. *Id.* at 324. The Opposition confirms that the CAC does not meet this burden.

The most compelling inference from the CAC's factual allegations is that Defendants did not know the extent of TD's AML issues until they were gradually revealed by the investigations that resulted in the Pleas, and that Defendants disclosed what they could as they learned more about the scope of the issues. Mot. at 32-35. Plaintiffs' contrary theory—that Defendants chose to lie about AML issues while simultaneously pursuing a futile transaction that would subject TD to rigorous regulatory diligence—is illogical. The Opposition does not attempt to make it logical.

15

## III.   THE OPPOSITION CONFIRMS THE CAC FAILS TO PLEAD LOSS CAUSATION

Plaintiffs' Opposition does nothing to refute that the CAC fails to plead loss causation.  As the Motion established, the CAC fails to identify which of the 39 challenged statements was purportedly corrected by which corrective disclosure on even a categorical basis.  Mot. at 38.  This pleading failure pervades Plaintiffs' loss causation allegations as to each of the 6 alleged corrective disclosures and precludes Plaintiffs from satisfying their burden under the PSLRA of pleading loss causation as to "each" misstatement.[10]  *Id.* at 38-39.

Regardless, because Plaintiffs do not identify how any of the purported corrective disclosures in fact corrected any of the challenged statements they identify, the CAC fails to plead loss causation for any corrective disclosure date.  *Id.*

## IV.   THE OPPOSITION CONFIRMS PLAINTIFFS' SCHEME LIABILITY CLAIM IS DEFECTIVE FOR ADDITIONAL REASONS

Plaintiffs' "scheme liability" claim against TDBNA, TDBUSH, and Salom also suffers from multiple independently fatal defects.  Mot. at 36-38.[11]

*First*, the Opposition confirms that Plaintiffs do not—and cannot—plead that investors relied upon any of the alleged acts in furtherance of the purported scheme, as required to state a scheme liability claim.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 159 (2008).  The Opposition instead argues that the imposition of the flat cost paradigm made it "necessary or inevitable" that misstatements would result (Opp. at 41), but rote allegations that

---

[10]    Plaintiffs falsely claim that Defendants "waived" loss causation arguments as to two alleged corrective disclosures (Opp. at 43), but the Motion identified basic pleading infirmities as to all of Plaintiffs' loss causation allegations *and* specific inconsistencies in Plaintiffs' allegations as to four alleged corrective disclosures (Mot. at 38-41).

[11]    The Opposition concedes that the CAC does not purport to state scheme liability claims against Defendants TD, Bambawale, Masrani, and Tran.  Opp. at 41.

undisclosed alleged wrongdoing "necessarily" or "inevitably" would result in misstatements cannot establish reliance. *See Turquoise*, 625 F. Supp. 3d at 254 (allegations of "retaliation" and "concealment and destruction of evidence" related to false statements that "made it easier" for misrepresentations to continue insufficient to establish reliance).[12]

*Second*, as noted above and demonstrated in the Motion, the CAC's failure to plead scienter is fatal to the "scheme liability" claim. Indeed, the Opposition further highlights that the CAC is devoid of any allegations suggesting that TDBNA, TDBUSH, or Salom implemented the flat cost paradigm (or any of its alleged consequences) *with the intent to deceive investors*. *See CarLotz*, 2024 WL 3924708, at \*5. For TDBNA and TDBUSH, Plaintiffs rely entirely on the Pleas (Supp. Opp. at 10-11), but the Pleas say nothing about investors or any intent to mislead them; and the Opposition does not argue otherwise. As for Salom, the sole allegations Plaintiffs identify in support of his purported scienter are based on anonymous purported sources in the *Capitol Forum* article and allegations sourced to an unidentified former employee, FE-3. Opp. at 20 n.6; Supp. Opp. at 11. But neither the *Capitol Forum* article nor the allegations Plaintiffs claim corroborate it state that Salom was informed of AML deficiencies (*supra*, at 8; Mot. at 19), and Plaintiffs' FE-3 allegations should not be credited and are irrelevant regardless (*supra*, at 14; Mot. at 31-32). These allegations are patently insufficient to support a strong inference that TDBNA, TDBUSH, or Salom intended to deceive investors.

---

[12]     Plaintiffs also fail to allege that each of the alleged acts in furtherance of the scheme was "inherently deceptive" to investors. Mot. at 36 n.50. The "acts" they challenge are the implementation of the so-called "flat cost paradigm" and the purported consequences thereof (Supp. Opp. at 4), and Plaintiffs allege the flat cost paradigm was implemented "to keep costs down" (¶234), not to deceive investors. Ordinary business conduct is not "inherently deceptive." *Cf. In re CarLotz, Inc. Sec. Litig.*, 2024 WL 3924708, at \*5 (S.D.N.Y. Aug. 23, 2024); *Turquoise*, 625 F. Supp. 3d at 253.

## V.    THE OPPOSITION CONFIRMS THE CAC DOES NOT STATE A SECTION 20(a) CLAIM

Plaintiffs' Section 20(a) claim must be dismissed because the CAC does not state a primary claim under Section 10(b) and for the independent reasons that the CAC does not allege that any Individual Defendant exercised "[a]ctual control" over an alleged primary violator or culpably participated in an alleged primary violation.  Mot. at 42.  Indeed, the Opposition does not even address this Circuit's culpable participation requirement, and, as to control, argues only that the CAC's conclusory allegations that certain Individual Defendants are senior officers should suffice.  Opp. at 46-47.  As set forth in the Motion, they do not.  Mot. at 42.

## CONCLUSION

For the foregoing reasons, and those set forth in the Motion, the CAC should be dismissed with prejudice.

Dated: August 28, 2025                                 Respectfully submitted,


By: */s/ Adam S. Hakki*_____
Adam S. Hakki (Lead Trial Counsel)
Jeffrey D. Hoschander
Samuel A. Stuckey
**ALLEN OVERY SHEARMAN STERLING US LLP**
599 Lexington Avenue
New York, NY 10022
Tel.: (212) 848-4000
adam.hakki@aoshearman.com
jeff.hoschander@aoshearman.com
sam.stuckey@aoshearman.com

*Attorneys for Defendants The Toronto-Dominion Bank, TD Bank, N.A., TD Bank US Holding Company, Ajai K. Bambawale, Bharat Masrani, Leovigildo Salom, and Kelvin Vi Luan Tran*

18

## CERTIFICATION OF WORD COUNT

I hereby certify pursuant to Southern District of New York Local Rule 7.1(a) and Section 8(C) of this Court's Individual Practices in Civil Cases, that the foregoing memorandum of law contains 5,596/5,600 words, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, table of abbreviations, and any required certificates, and accordingly complies with applicable word limitations as set forth in the Court's May 20, 2025 Order (ECF No. 67). In preparing this certification, I have relied on the word count of the word processing software used to prepare this memorandum.

Dated: August 28, 2025
   New York, New York

By:_____
     Samuel A. Stuckey