**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAMES TIESSEN, Individually and on Behalf of All Others Similarly Situated, | Cons. C.A. No. 1:24-CV-8032 (AS) |
| Plaintiff, | |
| v. | Hon. Arun Subramanian |
| THE TORONTO-DOMINION BANK, TD BANK, N.A., TD BANK US HOLDING COMPANY, AJAI K. BAMBAWALE, MICHAEL BOWMAN, MIA LEVINE, BHARAT MASRANI, LEOVIGILDO SALOM, and KELVIN VI LUAN TRAN, | ORAL ARGUMENT REQUESTED |
| Defendants. | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT MIA LEVINE'S MOTION TO DISMISS**
<u>**THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**</u>

WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
(202) 682-7000

-and-

767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Counsel for Defendant Mia Levine*

August 28, 2025

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    I.       THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR THE
             REASONS SET FORTH BY THE TD DEFENDANTS ...................................... 2

    II.      THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TO MS.
             LEVINE FOR SEVERAL ADDITIONAL, INDEPENDENT REASONS ........... 2

          A.      Plaintiffs' Sole Section 10(b) Claim Against Ms. Levine Is
                 Fundamentally Flawed ............................................................................. 2

          B.      Plaintiffs Fail To Plead A Section 20(a) Claim Against Ms. Levine .......... 8

CONCLUSION ........................................................................................................................ 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re CarLotz, Inc. Sec. Litig.*,
  2024 WL 3924708 (S.D.N.Y. Aug. 23, 2024)....................................................................3, 7, 8

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
  2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018)......................................................................6, 8

*Eden Alpha CI LLP v. Polished.com Inc.*,
  763 F. Supp. 3d 270 (E.D.N.Y. 2025) ......................................................................................4

*In re Eletrobras Sec. Litig.*,
  245 F. Supp. 3d 450 (S.D.N.Y. 2017)........................................................................................6

*In re Enron Corp. Sec.*,
  529 F. Supp. 2d 644 (S.D. Tex. 2006) ......................................................................................4

*In re FirstEnergy Corp.*,
  2022 WL 681320 (S.D. Ohio Mar. 7, 2022)..............................................................................5

*In re Grupo Televisa Sec. Litig.*,
  368 F. Supp. 3d 711 (S.D.N.Y. 2019).......................................................................................7

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
  309 F. Supp. 3d 100 (S.D.N.Y. 2018).......................................................................................7

*Leykin v. AT&T Corp.*,
  423 F. Supp. 2d 229 (S.D.N.Y. 2006).......................................................................................4

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  277 F. Supp. 3d 500 (S.D.N.Y. 2017)...................................................................................3, 4

*In re Mindbody, Inc. Sec. Litig.*,
  489 F. Supp. 3d 188 (S.D.N.Y. 2020).......................................................................................5

*In re Scholastic Corp. Sec. Litig.*,
  252 F.3d 63 (2d Cir. 2001).........................................................................................................4

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)....................................................................................................................5

*U.S. Sec. & Exch. Comm'n v. Mintz*,
  723 F. Supp. 3d 386 (D.N.J. 2024) ...........................................................................................5

**PRELIMINARY STATEMENT**

Ms. Levine demonstrated in her motion to dismiss (the "Motion") that the Amended Complaint fails to plead the fundamental elements of the claims asserted against her.[1] Plaintiffs' opposition only underscores the inadequacies of Plaintiffs' attenuated theory of fraud.[2] Indeed, despite naming "All Defendants" in Count I of the Amended Complaint, Plaintiffs now confirm in the Opposition that only their "scheme liability" allegations in Count I are asserted against Ms. Levine. Of course, this makes perfect sense: Ms. Levine is not alleged to have been the "maker" of, nor a participant or otherwise involved in, any of the public disclosures upon which this action is premised.

Nevertheless, even on their remaining scheme claim, the core deficiencies in the Amended Complaint remain: Plaintiffs' theory either is predicated on supposed "deceptive acts" that occurred well before the alleged fraud or, worse, on an impermissible repackaging of their disclosure claim. What is more, Plaintiffs advance *no* facts supporting a compelling inference of fraud with respect to Ms. Levine. Nor do Plaintiffs even try to salvage (or even acknowledge) their Section 20(a) claim against her. For each of these reasons, the claims against Ms. Levine should be dismissed in their entirety and with prejudice.

---

[1] Capitalized terms used but not defined herein have the meanings ascribed to them in Ms. Levine's opening brief in support of the Motion (the "Opening Brief" or "Op. Br."), ECF No. 79.

[2] Plaintiffs filed two briefs in opposition to the defendants' three separate motions to dismiss: (1) Plaintiffs' Memorandum of Law in Opposition to Defendant Bowman's and Defendant Levine's Motions to Dismiss (the "Opposition" or "Opp."), ECF No. 86; and (2) Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint, ECF No. 85. Because Plaintiffs claim to respond fully to Ms. Levine's Motion in the Opposition, this reply brief addresses only the arguments advanced in the Opposition. Accordingly, Ms. Levine reserves all rights and waives none to the extent Plaintiffs later rely on arguments not advanced in the Opposition with respect to Ms. Levine.

## ARGUMENT

### I.  THE AMENDED COMPLAINT SHOULD BE DISMISSED FOR THE REASONS SET FORTH BY THE TD DEFENDANTS

Ms. Levine expressly adopts and incorporates the arguments advanced by the TD Defendants in further support of their motion to dismiss the Amended Complaint. *See* TD Reply, ECF No. 89. These arguments apply equally to Ms. Levine and, thus, also necessitate her dismissal.

### II.  THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TO MS. LEVINE FOR SEVERAL ADDITIONAL, INDEPENDENT REASONS

In the Motion, Ms. Levine established several additional grounds that independently require the dismissal of Plaintiffs' claims against her. *See* Op. Br. at 4-14. The Opposition, not surprisingly, immediately concedes that Ms. Levine is not liable for making false and misleading statements in violation of Rule 10b-5(b). *See* Opp. at 1 n.1 ("The Complaint does not allege that Defendants Bowman and Levine are liable for making false and misleading statements and omissions under Rule 10b-5(b)."). Yet, even on their remaining claims, Plaintiffs cannot stave off dismissal.

#### A.  Plaintiffs' Sole Section 10(b) Claim Against Ms. Levine Is Fundamentally Flawed

##### 1.  Plaintiffs' Repackaged "Scheme Liability" Claim Against Ms. Levine Fails As A Matter Of Law

The Motion demonstrated that Plaintiffs' "scheme liability" claim improperly repackages Plaintiffs' misstatements claim, and that the Amended Complaint nonetheless fails to plead the scheme claim's necessary elements. *See* Op. Br. at 4-8. Beyond repeating their deficient allegations, Plaintiffs provide no meaningful response to Ms. Levine's showing. Accordingly, Plaintiffs' scheme claim should be dismissed for any of the following reasons (in addition to those set forth by the TD Defendants).

*First*, the Motion established that the actions that Ms. Levine allegedly took, many of which occurred *years before* the putative class period, are too attenuated and remote from the alleged scheme to give rise to liability. *See* Op. Br. at 6-7. Instead of addressing Ms. Levine's legal arguments, Plaintiffs merely copy and paste the Amended Complaint's deficient allegations into their Opposition, conspicuously avoiding Ms. Levine's showing as to such allegations' fundamental flaws. Opp. at 7-9. For example, Plaintiffs reiterate Ms. Levine's attendance at various meetings, her communications to the boards of TDBUSH and TDBNA and their committees, and her receipt of certain reports. *Id.* (citing AC ¶¶ 64, 178-79, 204-05). But putting aside that Plaintiffs do not (and cannot) explain *why* these "actions" were inherently deceptive, *see, e.g.*, *In re CarLotz, Inc. Sec. Litig.*, 2024 WL 3924708, at \*5 (S.D.N.Y. Aug. 23, 2024) (Subramanian, J.) (holding that a deceptive act was not adequately pled where the plaintiffs "d[id] not explain what about the SPAC or the amount of diligence was deceptive"), Plaintiffs do *nothing* to, as they must, point to allegations regarding whether and how these acts "coincide[d] with the sale of securities." *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518 (S.D.N.Y. 2017).[3] Plaintiffs simply contend that it is "immaterial" that some of the alleged conduct occurred before the putative class period (Opp. at 9), but this framing misapprehends controlling law.

---

[3] Plaintiffs' attempt to distinguish *Menaldi* is unavailing. *See* Opp. at 10. As in *Menaldi*, where the plaintiffs challenged the cover-up of an illegal bribery scheme, 277 F. Supp. 3d at 519, Plaintiffs here challenge TD Bank's purported attempt to conceal the true state of its global AML program. *Compare Menaldi*, 277 F. Supp. 3d at 518 (reasoning that, while an employee "may have engaged in extensive bribery, [] this case is not about bribery—it is about [the Company's] conduct in the aftermath to that bribery"), *with* AC ¶ 1 (alleging that "[t]his case arises from Defendants' false and misleading statements and omissions that concealed TD had a wholly inadequate, if not non-existent, AML compliance program").

As demonstrated in the Motion, a deceptive act must be "integral" to the fraud, *Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 242 (S.D.N.Y. 2006), and where, as here, the purported acts occurred before the putative class period and, still then, were, at best, tangential to the alleged fraud, Plaintiffs cannot "furnish the necessary link between [the] deceptive act and the purchase or sale of securities." *Menaldi*, 277 F. Supp. 3d at 518; *see also Leykin*, 423 F. Supp. 2d at 242 ("[A]n otherwise legitimate stock transaction that is antecedent, but not integral, to the alleged fraud does not meet the 'in connection with' requirement."). Nor do the cases cited in the Opposition support Plaintiffs' position. *See In re Enron Corp. Sec.*, 529 F. Supp. 2d 644, 706 (S.D. Tex. 2006) (adopting, at the class certification stage, the SEC's view that deceptive acts leading to a false statement may be independently actionable); *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (holding that pre-class period data may be relevant to establish the defendants' knowledge of falsity at the start of the class period).

Plaintiffs also retort generally that Ms. Levine "knew of TD's deficiencies during the Class Period, but did nothing" (Opp. at 9), and that she "failed to seek sufficient resources" (*id.* at 8). Yet, Plaintiffs do not identify a single authority for the proposition that an employee's *failure to act* may be actionable deception giving rise to scheme liability. In any event, these allegations wholly lack *particularized facts* necessary to satisfy Plaintiffs' substantial pleading burden. *See* Op. Br. at 5-6; *see also Eden Alpha CI LLP v. Polished.com Inc.*, 763 F. Supp. 3d 270, 318 (E.D.N.Y. 2025) (finding that no scheme was pled where the plaintiffs fail to "articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it").[4]

---

[4] Plaintiffs also offer no response to and therefore concede Ms. Levine's showing that the Amended Complaint's allegation that Ms. Levine "lied to OCC examiners" is premised on an unsupported assumption. Op. Br. at 6 n.4.

*Second*, although Plaintiffs agree that scheme claims must plead "something extra" to survive dismissal, the Opposition confirms that the alleged deception underlying Plaintiffs' scheme claim is that "Defendants" (without specifying who or how) "(i) willfully with[e]ld the investments necessary for a compliant AML program, and (ii) conceal[ed] the true state of TD's deficient Global AML Program from regulators." Opp. at 4. But Ms. Levine addressed these allegations in her Motion, confirming that this is precisely the type of alleged deception that cannot form the basis of a scheme claim. *See* Op. Br. at 7-8; *see In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 216 (S.D.N.Y. 2020) (noting that scheme liability is not "a back door into liability for those who help others make a false statement or omission in violation of subsection (b) of Rule 10b–5"). Plaintiffs' reliance on two out-of-circuit cases in this regard is also unavailing, as the individual defendants in those cases directly and personally engaged in unlawful conduct. *See U.S. Sec. & Exch. Comm'n v. Mintz*, 723 F. Supp. 3d 386, 407 (D.N.J. 2024) (alleging that the defendants disseminated misstatements, authorized the dissemination of misstatements, and concealed information from investors); *In re FirstEnergy Corp.*, 2022 WL 681320, at *13, *15 (S.D. Ohio Mar. 7, 2022) (alleging that the individual defendants directly participated in political corruption and a bribery scheme).

*Lastly*, Plaintiffs do not contend that they relied on any of Ms. Levine's purported deceptive acts. *See* Opp. at 5. Instead, Plaintiffs argue that reliance is sufficiently pled because the so-called "flat cost paradigm" made the alleged misstatements "inevitable." *Id.* But Plaintiffs are wrong: the Opposition does not plausibly explain how Ms. Levine's conduct—concerning the "flat cost paradigm" or otherwise—made it inevitable for *any* statement to be made, much less a false one. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 160-61 (2008) (rejecting plaintiffs' argument that a false financial statement was a "natural and expected

Case 1:24-cv-08032-AS    Document 91    Filed 08/28/25    Page 9 of 13

consequence of [the entities'] deceptive act[]" because "nothing [the entities] did made it necessary or inevitable for [the Company] to record the transactions as it did"). Plaintiffs' lone authority, which addressed whether an employee's but-for conduct—namely, the organization of an illegal kickback scheme that necessitated the company's falsehoods—could be imputed to the company, does not support such an end-run around the reliance requirement here. *See In re Eletrobras Sec. Litig.*, 245 F. Supp. 3d 450, 472 (S.D.N.Y. 2017). As set forth in the Motion, there are no allegations that Ms. Levine was involved in *any* capacity in *any* of the challenged public disclosures (*see* Op. Br. at 5), foreclosing any connection between Ms. Levine's conduct and the alleged misstatements upon which this action is premised.

**2. Plaintiffs Do Not Overcome Their Failure To Plead A "Strong Inference" Of Scienter With Respect To Ms. Levine**

In addition to lacking allegations of any actionable deception, the Motion demonstrated that the Amended Complaint fails to plead a "strong inference" of scienter with respect to Ms. Levine via allegations of either (a) motive and opportunity or (b) conscious misbehavior or recklessness. Op. Br. at 8-12. Plaintiffs' paltry one-paragraph response only underscores the inadequacy of Plaintiffs' allegations as to Ms. Levine. *See* Opp. 10-11.

Strikingly, the Opposition abandons any attempt to plead Ms. Levine's scienter through allegations of motive. Plaintiffs fail to address—let alone contest—that Ms. Levine did not receive *any* benefit from the alleged fraud. Op. Br. at 9; *see, e.g.*, *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("Numerous courts have held that a plaintiff's failure to address an issue in its opposition . . . amounts to a concession or waiver of the argument.").

Plaintiffs' concessions do not stop there. Plaintiffs offer no response to Ms. Levine's showing that her termination alone cannot support scienter. Op. Br. at 10. The Opposition likewise

does not address Ms. Levine's case law establishing that the receipt of generalized corporate directives is insufficient. *Id.* at 11. Plaintiffs do not dispute that the Amended Complaint alleges only that Ms. Levine was "charged with certain responsibilities as an employee and subsequently took certain actions," nor do they contest how she lacked decision-making authority over material issues relating to the AML program. *Id.* In fact, Plaintiffs allege that the "flat cost paradigm" was a corporate mandate implemented by the CEO and enforced by the CFO. Opp. at 1. And they do not even attempt to rebut that Ms. Levine believed she was effectuating the "flat cost paradigm" to the best of her abilities without increasing risk. Op. Br. at 11. These concessions, viewed individually and holistically, negate *any* inference of scienter, let alone overcome the compelling, non-fraudulent inference to be drawn from the facts alleged.

The sole rejoinder that Plaintiffs offer on scienter is that the plea agreements somehow demonstrate that "Defendants" engaged in "deliberately illegal behavior," which is "probative of scienter." Opp. at 10 (quoting *In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 722 (S.D.N.Y. 2019)). But Plaintiffs grossly mischaracterize the plea agreements. Ms. Levine has *never* admitted to *any* allegations concerning TD Bank's AML program, including any "deliberately illegal" conduct. And, of course, Ms. Levine is not bound by the statements in the plea agreements, to which she was not a party. Moreover, Plaintiffs' argument improperly lumps all defendants together, making it impossible to discern what illegal conduct Plaintiffs are even accusing Ms. Levine of committing. *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 309 F. Supp. 3d 100, 119 (S.D.N.Y. 2018) ("'Conclusory statements of associations' or generalized allegations of scienter against groups of defendants will not state a claim for securities fraud.").

At bottom, the Opposition does not identify any intent whatsoever on the part of Ms. Levine, proving fatal to scienter and, in turn, the claims asserted against her. *CarLotz*, 2024 WL

3924708, at *5 (finding no scienter where there are no allegations about what the individual defendant's intent was in disseminating the false and misleading statements).  Plaintiffs try and repeat their allegation that Ms. Levine "knew [about] long-term, pervasive, and systemic deficiencies" in TD Bank's AML program.  Opp. at 10-11.  But even if such allegations were true, knowledge of falsity or deception would not adequately substitute for the requirement that Plaintiffs *plausibly allege* a requisite intent to defraud investors.  *CarLotz*, 2024 WL 3924708, at *5 ("[E]ven if [the defendant] knew the statements he was disseminating were false and had a motive to defraud, . . . [t]here is therefore an opposing inference that [he] filed the transcripts with the SEC simply because he was required to and not because he had any intent to defraud investors.").

**B.**     **Plaintiffs Fail To Plead A Section 20(a) Claim Against Ms. Levine**

Plaintiffs entirely ignore Ms. Levine's showing with respect to Section 20(a).  As Ms. Levine established in the Motion, Plaintiffs' Section 20(a) claim must be dismissed for failure to plead (i) a primary violation or (ii) her actual control over and culpable participation in any such primary violation.  Op. Br. at 12-13.  Plaintiffs do not provide any response whatsoever to this showing and, thus, concede it.  *E.g.*, *Cole*, 2018 WL 4680989, at *7.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in the Motion, the Amended Complaint should be dismissed in its entirety and with prejudice.

Dated: August 28, 2025

Respectfully submitted,

*/s/ Chantale Fiebig*

Chantale Fiebig
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 682-7000
chantale.fiebig@weil.com

-and-

Joshua S. Amsel
Amber N. Venturelli
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
joshua.amsel@weil.com
amber.venturelli@weil.com

*Counsel for Defendant Mia Levine*

9

## CERTIFICATION OF WORD COUNT

I hereby certify pursuant to Local Rule 7.1(c) and Section 8(C) of this Court's Individual Practices in Civil Cases that the foregoing document contains 2,531 words, inclusive of point headings and footnotes and exclusive of pages containing the caption, table of contents, table of authorities, signature block, and any required certificates, and, accordingly, complies with the applicable word limitations set forth in Local Rule 7.1(c).  In preparing this certification, I have relied on the word count of the word processing software used to prepare this memorandum.

*/s/ Chantale Fiebig*
Chantale Fiebig